SULLIVAN & CROMWELL LLP
Alexa M. Lawson-Remer (268855)
(lawsonr@sullcrom.com)
1888 Century Park East, Suite 2100
Los Angeles, CA  90067-1725
Telephone:  (310) 712-6600
Facsimile:  (310) 712-8800

Theodore Edelman (*pro hoc vice application forthcoming*)
(edelmant@sullcrom.com)
Jessica Klein (*pro hoc vice application forthcoming*)
(kleinj@sullcrom.com)
Scott E. Blair (*pro hoc vice application forthcoming*)
(blairs@sullcrom.com)
Alexandra H. Moss (302641)
(mossa@sullcrom.com)
125 Broad Street
New York, NY  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

IMMIGRATION EQUALITY
Aaron C. Morris (*pro hoc vice application forthcoming*)
(amorris@immigrationequality.org)
40 Exchange Place
Suite 1300
New York, New York  10005-2744
Telephone:  (212) 714-2904

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW MASON DVASH-BANKS and ETHAN JACOB DVASH-BANKS, | ) ) ) ) |
| Plaintiffs, | ) ) **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | ) ) ) Docket No. 18-CV-_____ |
| THE UNITED STATES DEPARTMENT OF STATE, and THE HONORABLE REX W. TILLERSON, Secretary of State, | ) ) ) ) |
| Defendants. | ) ) |

### PRELIMINARY STATEMENT

1.     This action challenges a United States Department of State ("State Department") policy that hurts families and undermines the familial relationships of same-sex parents.  The agency's policy unconstitutionally disregards the dignity and sanctity of same-sex marriages by refusing to recognize the birthright citizenship of the children of married same-sex couples.  Plaintiffs are members of a family who have suffered and continue to suffer harm because of the State Department's policy.    The family includes Andrew Mason Dvash-Banks ("Andrew")—a United States citizen, who was born and raised in this country; Andrew's husband, Elad Dvash-Banks ("Elad"), an Israeli citizen; and their twin sons, Ethan Jacob Dvash-Banks ("Ethan") and Aiden James Dvash-Banks ("Aiden") (collectively, the "twins").

2.     Both Ethan and Aiden were conceived and born during Andrew's marriage to Elad.  Andrew and Elad conceived the twins using their own sperm and eggs from the same anonymous donor.  They used Elad's sperm to conceive Ethan and Andrew's sperm to conceive Aiden.  A surrogate carried the twins to term together in her womb and gave birth to them moments apart on September 16, 2016, in Canada.  Andrew and Elad are the only parents Ethan and Aiden have, and the only people Canadian law[1] recognizes as Ethan and Aiden's parents. Accordingly, Andrew and Elad have been the twins' legal parents from the day they came into this world together.

3.     At birth, both Ethan and Aiden qualified for United States citizenship pursuant to Section 301(g) of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. § 1401(g)).  That clause entitles a person born abroad to citizenship at birth if one of that person's married parents is a United States citizen

---

[1]     To the extent necessary to introduce or address issues of non-U.S. law in connection with this action, this hereby constitutes Plaintiffs' notice pursuant to Federal Rule Civil Procedure 44.1 of reliance on foreign law.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

and the other is a foreign national, as long as the citizen parent satisfies certain statutorily prescribed periods of residency in the U.S.  Andrew is a U.S. citizen who has lived in the United States for over twenty-four years, and so clearly satisfies the residency requirements of Section 301(g).  Because Andrew and Elad were married to each other when Ethan and Aiden were born, Ethan and Aiden have been U.S. citizens since birth under Section 301(g).

4.     The State Department, through the United States Embassy in Toronto, Canada, however, failed to apply Section 301 to Ethan and Aiden.  Instead, it applied Section 309 of the INA (codified at 8 U.S.C. § 1409), a provision of the statute which applies only to children born "out of wedlock."  Because the State Department wrongly considered Ethan and Aiden to have been born "out of wedlock," it erroneously concluded that they could qualify for citizenship at birth only pursuant to provisions applicable to the children of unwed parents.  It then incorrectly determined that the twins could acquire citizenship at birth only pursuant to Section 309 and only if Andrew's sperm had been used to conceive them both.

5.     Focusing improperly on the biological relationship between each child and the parent who conceived him, the State Department then recognized Aiden's citizenship and denied Ethan's.  The State Department's application of Section 309 instead of Section 301 is an unlawful, unconstitutional refusal to recognize the validity of Andrew's and Elad's marriage and, therefore, that a child born to them during their marriage is the offspring of that marriage.  The fact that the State Department's policy has led children identified by their birth certificates as twins with the same parents to have different nationalities listed on their passports crystallizes both the indignity and absurdity of the policy's effect.

6.     The State Department's failure to recognize and give effect to the marriage between Andrew and Elad also denies Ethan the rights and privileges that accompany U.S. citizenship, including the right to reside permanently in the U.S.,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

the right to obtain a U.S. passport, and, when he is older, the right to run for political office. Because the State Department does not recognize Ethan's U.S. citizenship, he cannot visit or live in the United States freely as other members of his family can.

7. Andrew and Aiden may reside in the U.S. permanently because they are U.S. citizens. Elad may legally reside in the U.S. permanently because he has a family-based immigrant visa through his marriage to Andrew. The State Department's policy, however, renders Ethan the only member of his family without the freedom to live in the U.S. permanently. The State Department's decision to withhold from Ethan the same rights granted to his twin brother means that he will experience the indignity and stigma of unequal treatment imposed and endorsed by the U.S. government. No governmental purpose could justify imposing these indignities on a child of a valid marriage or restricting a family's freedom to live as a family—together.

8. The State Department's policy is not only wrong and harmful, it is also contrary to the INA as well as the guarantees of due process and equal protection enshrined in the Fifth Amendment. To the extent that the State Department's policy was adopted before the Supreme Court's recent precedents guaranteeing equality to same-sex married couples and their families, its continued enforcement violates that precedent. The Supreme Court has made clear that the Constitution requires that same-sex marriages receive the same legal effects and respect as opposite-sex marriages. The State Department's policy, or at least its application to Ethan, violates that mandate by restricting eligibility for citizenship under Section 301 of the INA solely to children whose parents are in opposite-sex marriages. These violations create real and significant hardships for the Dvash-Banks family and others like them. Soon, Ethan will be old enough to realize that the U.S. government views him as an alien with no enforceable connection to his father or brother, and discriminates against him based on the sex and sexual

4

1    orientation of his parents.

2        9.    The State Department's policy is arbitrary and capricious and serves
3    no rational, legitimate, or substantial governmental interest.    The State
4    Department's policy drives families apart by treating the children of the same
5    married parents differently depending upon which father's sperm was used during
6    fertilization.  The threat that this policy poses to family unity confirms that it is
7    contrary to the legislative intent of the INA, which enshrines the preservation of
8    the family unit as a paramount consideration.    Neither the INA nor the U.S.
9    Constitution permits the State Department's unlawful policy to stand.

10        10.    Plaintiffs bring this action both to challenge the State Department's
11    policy as well as to request that this Court, pursuant to Section 360 of the INA
12    (codified at 8 U.S.C. § 1503), declare that Ethan is a U.S. citizen at birth.

13                                   **THE PARTIES**

14        11.    Plaintiff Andrew is a 36-year-old citizen of the United States.  He was
15    born in Santa Monica, California, and currently resides with his husband and their
16    children in Los Angeles, California.

17        12.    Plaintiff Ethan is one year old.  He was born in Mississauga, Ontario,
18    Canada, and currently resides with his parents Andrew and Elad and twin brother
19    Aiden in Los Angeles—although, as explained below, Ethan's permission to
20    remain in the U.S. recently has expired.

21        13.    Andrew brings this action in his individual capacity and on behalf of
22    his son Ethan.

23        14.    Defendant the State Department is a department of the government of
24    the United States of America, whose headquarters office is located at the
25    Department of State, 2201 C St. NW, Washington, D.C. 20520.    The State
26    Department oversees all U.S. embassies and sets the policy U.S. embassy
27    employees follow in determining whether to recognize the citizenship of the
28    children of U.S. citizens.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

15.     Defendant The Honorable Rex Tillerson is the Secretary of State, whose office is located at the Department of State, 2201 C St. NW, Washington, D.C. 20520, and is being sued in his official capacity.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

17.     This Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

18.     This Court is authorized to issue a judgment and injunctive relief pursuant to 5 U.S.C. § 702.

19.     This Court is authorized to make a *de novo* determination and judgment of citizenship pursuant to 8 U.S.C. § 1503(a).

20.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(e).

## STATUTORY AND REGULATORY BACKGROUND

### A.     United States Citizenship at Birth

21.     There are two pathways to become a United States citizen at birth: one pursuant to the Constitution and another by statute, the INA.  The "Citizenship Clause" of the Fourteenth Amendment of the Constitution provides, in part, that anyone born in the United States is a citizen at birth.  Under the INA, persons born outside the United States may be considered citizens at birth under certain statutorily prescribed circumstances.  If a person born outside the United States does not acquire citizenship at birth, that person can acquire citizenship only through naturalization, and therefore can never be eligible for the presidency as birthright citizens are.

22.     The provisions governing eligibility for U.S. citizenship at birth by individuals born outside the United States are set forth in Sections 301 through 309 of the INA.  Section 301 is titled "Nationals and citizens of United States at birth." Under Section 301(g), a baby born abroad is a U.S. citizen at birth when (1) one of

6

1    the child's parents is a married United States citizen and (2) the U.S. citizen parent

2    lived in the U.S. for at least five years, at least two of which were after the parent's

3    fourteenth birthday.

4         23.    Section 309 is titled "Children born out of wedlock," and its

5    provisions explicitly apply only to a person "born out of wedlock." The

6    requirements for citizenship at birth under that provision differ substantially from

7    those in Section 301, which has long been regarded as applicable to anyone whose

8    parents were lawfully married when the child was born.

9         24.    For unwed fathers, Section 309(a) specifies, in part, that certain

10    provisions of Section 301—including Section 301(g)—"shall apply as of the date

11    of birth to a person born out of wedlock if—(1) a blood relationship between the

12    person and the father is established by clear and convincing evidence." In

13    addition, Section 309(a) requires that, for citizenship under Section 301 to be

14    available to an unwed father's child, the father must have (2) acquired U.S.

15    nationality by the time the person seeking citizenship was born, (3) agreed in

16    writing to provide financial support to that person until the age of 18, and (4) while

17    the person is under 18 years old, (a) legitimated the person under the law of that

18    person's residence or domicile, (b) acknowledged paternity in writing under oath,

19    or (c) had paternity established by a court of competent jurisdiction.

20         25.    As a result of the different requirements for the children of wed and

21    unwed U.S. citizens, it is possible for people to qualify for citizenship at birth

22    under Section 301 even if they would not qualify under Section 309. Thus, the

23    determination of whether a child is born in or out of wedlock can be dispositive of

24    the ultimate question of whether or not a child acquired U.S. citizenship at birth.

25         26.    Since its enactment in 1952, the INA has neither included nor been

26    amended to include definitions of the terms "parent" and "person," as used in

27    Section 301, or the terms "mother," "father," and "out of wedlock," as used in

28    Section 309.

7

27.    Before and after the enactment of the INA, the majority of U.S. states have followed the common law in presuming that every child born in wedlock is the legitimate offspring of the child's married parents.  In general, including in California, that presumption applies even when only one spouse is the child's biological parent.  The structure of the INA effectively codifies the common law presumption of parentage for married couples by making Section 301 applicable to any person except for children who are born "out of wedlock."

28.    Congress has made clear that the legislative intent behind the INA should be construed liberally because the INA was designed to make it easier—not harder—for families of citizens and non-citizens to stay together.  According to Congress, "the legislative history of the Immigration and Nationality Act clearly indicates that the Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of United States Citizens and Immigrants united."  H.R. Rep. 85-1199, at 2020 (1957).  Congress has also declared that "the statutory language makes it clear that the underlying intent [is] to preserve the family unit upon immigration to the United States." *Id.*

29.    In amending the INA, Congress recognized that the hardships faced by families fractured along citizenship lines were overwhelmingly greater than any harm that could come from the liberal treatment of children with respect to citizenship.

### B.    The Constitutional Rights of Same-Sex Couples

30.    As the Supreme Court has recognized, same-sex couples have long been subjected to illegal institutional discrimination and social stigmatization.  The Supreme Court's precedent makes clear that the Constitution compels equal protection and recognition of, and respect for, the rights of same-sex spouses, including their right to have autonomy over the most personal and intimate of choices—decisions about starting a family and sustaining a partnership in which to raise and nurture a child.  Accordingly, the State Department must recognize the

8

1  "equal dignity of same-sex marriages."  *United States* v. *Windsor*, 133 S. Ct. 2675,

2  2693 (2013).

3       31.    After *Windsor* overturned the statute excluding same-sex marriages

4  from federal recognition, the federal government announced that it would

5  recognize same-sex marriages for immigration purposes.  *See* Statement from

6  Homeland Security Secretary Janet Napolitano on July 1, 2013, available at

7  https://www.uscis.gov/family/same-sex-marriages ("As a general matter, the law

8  of the place where the marriage was celebrated determines whether the marriage is

9  legally valid for immigration purposes.  Just as [the United States Citizenship and

10  Immigration Services] applies all relevant laws to determine the validity of an

11  opposite-sex marriage, we will apply all relevant laws to determine the validity of

12  a same-sex marriage.").

13       32.    Following *Windsor*, the Supreme Court overturned state laws that

14  barred same-sex couples from marrying as inconsistent with the Constitution's

15  guarantees of due process and equal protection, including rights central to an

16  individual's autonomy and dignity, such as one's choice of intimate life partner.

17  *Obergefell* v. *Hodges*, 135 S. Ct. 2584 (2015).

18       33.    The Court further warned that failure to recognize same-sex marriages

19  "harm[s] and humiliate[s] the children of same-sex couples."  *Id.* at 2590.  The

20  Court also recognized that "[w]ithout the recognition, stability, and predictability

21  marriage offers, children suffer the stigma of knowing their families are somehow

22  lesser." *Id.*

23       34.    In *Pavan* v. *Nathaniel Smith*, the Supreme Court held that married

24  couples must receive the same "constellation of benefits . . . linked to marriage,"

25  regardless of whether the marriage is between spouses of the same or opposite

26  sexes.  137 S. Ct. 2075, 2077 (2017).  Those benefits include the legal recognition

27  that same-sex spouses may both be the parents of a child born during their

28  marriage, even if only one spouse is the child's biological parent.

### C. The State Department's Restrictive Classification of Eligible Children

35. The INA does not define or limit the class of persons born in wedlock who are eligible for citizenship at birth pursuant to Section 301. Nevertheless, the State Department is restricting the class to exclude *all* children of same-sex married couples.

36. The State Department has imposed that policy by inserting a definition of terms into an Appendix to the Foreign Affairs Manual ("FAM"), available at https://fam.state.gov/. Specifically, 1140 Appendix E of the FAM, titled "'IN WEDLOCK' AND 'OUT OF WEDLOCK,'" includes subsection (c), which states that "[t]o say a child was born 'in wedlock' means that the child's biological parents were married to each other at the time of the birth of the child." (A copy of the relevant portion of the appendix is appended to this Complaint at Exhibit A.)

37. 1140 Appendix E of the FAM has never been submitted to notice and comment rulemaking. However, it forms the basis for the State Department's conclusion that the children were born out of wedlock.

38. That definition has the effect of limiting birthright citizenship to children who are biologically related to a U.S. citizen parent, which the United States Court of Appeals for the Ninth Circuit has rejected in two separate decisions. *See Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005) (citing *Scales* v. *INS*, 232 F.3d 1159, 1166 (9th Cir. 2000)).

## FACTUAL ALLEGATIONS

### A. The Dvash-Banks Family

39. Andrew is a U.S. citizen who was born, raised, and has lived as an adult in the United States. He was born in 1981 in Santa Monica, California, where he lived continuously with his family from birth through the time of his high school graduation in 1999. Andrew's parents were both born and raised in Toronto, Canada, and as a result, Andrew is also a citizen of Canada.

40.     After graduating from high school, Andrew attended the University of California at Santa Barbara, graduating with a bachelor's degree in June 2003. Andrew then moved to New York City, where he lived for three years while working for a translation company.  In 2005, Andrew moved to Israel; and in July 2007, he enrolled in a master's program at Tel Aviv University.  In March of 2008, Andrew met Elad Dvash at a holiday party at Tel Aviv University.

41.     Elad is an Israeli citizen, born in Ramat Gan, Israel, on March 20, 1985.  Elad had lived in Israel for his entire life when he met and began dating Andrew.  Thereafter, the two moved to Toronto, Canada, where they were married by a judge on August 19, 2010.  (A copy of Elad and Andrew's marriage certificate is appended to this Complaint at Exhibit B.)

42.     Then, as now, Canadian law recognizes the validity and equality of same-sex marriages.  Although Andrew and Elad wanted to move to the United States to start their family in California, where four of Andrew's five siblings live with their families, at the time of their marriage in August 2010, the Defense of Marriage Act had not yet been ruled unconstitutional by the Supreme Court.  The Defense of Marriage Act precluded the United States government from recognizing the validity of Andrew and Elad's marriage, and therefore barred Elad from obtaining permanent residence through his marriage to Andrew.

43.     Unlike the U.S. government, the Canadian government recognized the validity of Andrew and Elad's marriage.  As a result, Elad could become a legal resident of Canada on the basis of his marriage to Andrew.  Thus, Andrew and Elad decided to move to Toronto, Canada to begin building their lives—and family—as a married couple.

44.     In the summer of 2015, Andrew and Elad selected an anonymous egg donor to enable them to have and raise children as a couple.

45.     In February 2016, the surrogate became pregnant with one embryo created using sperm from Andrew and one embryo created using sperm from Elad.

1   Andrew and Elad intended to be the sole parents of the resulting children.

2   46.   On September 16, 2016, Andrew and Elad's children—Ethan and

3   Aiden—were born in Mississauga, a city in Ontario, Canada.  Andrew and Elad,

4   *and only* Andrew and Elad, are listed as the parents on both of their sons' birth

5   certificates, and recognized as their sons' parents under Canadian law.

6   47.   Ethan and Aiden are part of the same family, with the same parents,

7   who are married to each other now, as they were at the time both children were

8   born.  In terms of their relationship to Andrew, the only distinction between Ethan

9   and Aiden is that sperm from Andrew's husband instead of from Andrew was used

10   to conceive Ethan.   That distinction should make no difference to Ethan's

11   eligibility for U.S. citizenship at birth because Ethan demonstrably was ***not*** born

12   out of wedlock.  But to the State Department, this is all the difference in the world.

13   **B.   The Application of the State Department's Policy to the Dvash-**
        **Banks Family**
14

15   48.   Shortly after Ethan and Aiden were born, their parents took them to

16   the U.S. consulate in Toronto to apply for their Consular Reports of Birth Abroad

     and U.S. passports.  Andrew and Elad brought both boys' birth certificates, their
17
     marriage certificate, declarations of parentage, and payment for the application
18
     fees.
19

20   49.   After hours of waiting, Andrew and Elad finally spoke with a consular

21   official.  Notwithstanding Andrew's U.S. citizenship, his status as Elad's husband,

22   and his status as a parent of both Ethan and Aiden, the official informed Andrew

     and Elad that further questions would be required.   The official then began to
23
     inquire into the highly personal details of how Andrew and Elad—a married
24
     couple—had children together.  The official asked how the spouses had come to
25
     create fertilized embryos with their sperm, the identity of the egg donor, and which
26
     spouse had provided sperm for which child.  Andrew and Elad had planned to keep
27
     the genetic identity of their children private so that both children would feel
28
     equally connected to each of their parents.  In the hope of ensuring that the U.S.

12

government would recognize their children's citizenship, however, they disclosed the genetic links they had to Ethan and Aiden.

50.    When Andrew and Elad explained that Ethan was conceived using Elad's sperm, the consular official required that the children undergo a DNA test to determine whether either child was genetically linked to Andrew.  She stated that without the biological link, neither child would qualify for U.S. citizenship at birth. The official did not identify any statutory, regulatory, or other authority supporting this demand.

51.    Andrew and Elad left the consulate shocked, humiliated, and hurt. They were also deeply offended by the ramifications of what they had heard.  The U.S. government did not recognize Andrew as the parent of his son Ethan, regardless of what Ethan's birth certificate and applicable Canadian law said, and regardless of the daily reality of Andrew and Ethan's parent-child relationship.

52.    Andrew and Elad submitted DNA tests for both Ethan and Aiden to the consulate.  Soon thereafter, Andrew and Elad received two letters in the mail, both dated March 2, 2017.  One letter granted Aiden's application for his Consular Report of Birth Abroad and a U.S. passport.  The other letter (the "Letter") notified Andrew that Ethan's application had been denied.  (A copy of this letter is appended to this Complaint at Exhibit C.)  It was then that Andrew and Elad finally realized that although they were the legal parents of two boys who were born on the same day, minutes apart from each other, the State Department considered only one of their boys to be a U.S. citizen.  To the U.S. government, Ethan was an alien.

53.    The Letter denying Ethan's application, addressed to Andrew, stated that "after careful review of the evidence you submitted with your child's application, it has been determined that his claim to U.S. citizenship has not been satisfactorily established, as you are not his biological father."  The Letter went on to reference the "Immigration and Nationality Act (INA) of 1952," which

13

1    according to the Letter "requires among other things, a blood relationship between
2    a child and the U.S. citizen parent in order for the parent to transmit U.S.
3    citizenship."   The letter did not include any further citation to more specific
4    statutory provisions or authority.

5        54.   The Letter provided Andrew and Ethan no mechanism to appeal the
6    State Department's denial, and merely suggested Andrew "contact the nearest
7    office of U.S. Citizenship and Immigration Services regarding [Ethan's]
8    citizenship status."

9        55.   Andrew reached out to his representative, Congressman Ted Lieu, for
10   assistance, and Congressman Lieu's office contacted the State Department.  In an
11   October 2, 2017 letter to Congressman Lieu, the State Department's Office of
12   American Citizen Services and Crisis Management also failed to cite any statute or
13   regulation to explain the reasons for the Dvash-Banks family's situation and the
14   denial of a Consular Report of Birth Abroad and U.S. passport for Ethan.  (A copy
15   of this letter is appended to this Complaint as Exhibit D.)  The State Department's
16   Office of American Citizen Services and Crisis Management merely suggested that
17   Andrew and Elad find "an immigration lawyer who can help explain the avenues"
18   through which Ethan could "acquire citizenship through naturalization," or that
19   they should "consider applying for a certificate of citizenship directly from
20   USCIS."

21       56.   The State Department's Office of American Citizen Services and
22   Crisis Management did not explain how, or why, USCIS would recognize that
23   Ethan had acquired citizenship at birth when the consulate had not.  Furthermore,
24   the USCIS application for a certificate of citizenship requires the applicant to have
25   "at least one biological or adoptive U.S. citizen parent."  *Instructions for*
26   *Application for Certificate of Citizenship*, OMB No. 1615-0057.  Because Ethan
27   does not have at least one biological or adoptive U.S. citizen parent, Andrew and
28   Elad could not complete an application for citizenship on Ethan's behalf that

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    would satisfy the requirements of USCIS.

2        57.    The denial of Ethan's Consular Report of Birth Abroad meant that

3    Ethan was denied a U.S. passport as well.   This has caused difficulties and

4    humiliation for the Dvash-Banks family.  After the Supreme Court's decision in

5    *Windsor* reversed the Defense of Marriage Act, ensuring that Andrew and Elad's

6    marriage would be recognized and respected in the U.S., Andrew and Elad decided

7    to fulfill their long-held hope of moving to California so that they could live near

8    Andrew's family, and moved to Los Angeles on June 24, 2017.

9        58.    Andrew, Elad, Ethan, and Aiden all live in Los Angeles, California

10   together.  Both Andrew and Elad work in Los Angeles and they have no intention

11   of moving from Los Angeles.   They must keep their home in Toronto as a

12   contingency because although Andrew and Aiden both have U.S. Citizenship and

13   Elad has permanent residency in the U.S., immigration officials would allow Ethan

14   to enter the United States only on a tourist visa.  The stay authorized upon that

15   entry expired on December 23, 2017.  All of Andrew and Elad's professional,

16   personal, and familial commitments are in constant jeopardy of being undone if the

17   Department of Homeland Security deports Ethan.

18       59.    Given the severity of these consequences, Andrew and Elad have

19   submitted an application for a green card on Ethan's behalf to minimize the risk of

20   deportation proceedings and having to face the choice of staying together as a

21   family or staying in this country.  However, Andrew and Elad should not have to

22   bear these additional burdens simply to ensure they can continue to raise their sons

23   together in this country.  Their current need to do so highlights the inequality and

24   indignity imposed by the State Department's classification of children born to

25   parents in same-sex marriages as children born out of wedlock.

26       60.    Andrew and Elad have also suffered indignity and emotional pain

27   because the U.S. government recognizes neither their marriage nor their parental

28   rights in determining whether their children were born in or out of wedlock.

1  According to the U.S. government, Andrew and Elad could never have children in
2  wedlock because they could not both be married to each other and be the biological
3  parents of the same child. As a result, the U.S. government is undermining,
4  disrespecting, and rendering unequal the intimate relationship between same-sex
5  married couples and the children they have and raise together within family units
6  founded on the sanctity of marriage.  They also worry about the obvious inequity
7  the State Department's decision causes between their twin sons, the impact on
8  Ethan and Aiden of their different citizenship status and the awareness that the
9  U.S. government considers them illegitimate notwithstanding their parents' valid
10 marriage.

11
12
### C.     The State Department Erroneously Deemed Ethan to Have Been Born "Out of Wedlock"

13   61.    As alleged herein, Ethan acquired U.S. citizenship at birth under
14 Section 301(g) of the INA.  Pursuant to Section 301(g), a U.S. citizen at birth
15 includes:

16
17
18
> a person born outside the geographical limits of the United States and its outlying possessions of parents, one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years.

19
20   62.    Because Ethan is not a child born out of wedlock, his citizenship
21 status is governed by Section 301(g).  Ethan clearly satisfies the criteria for U.S.
22 citizenship at birth under Section 301(g).  That is so because his father Andrew has
23 lived in the U.S. for most of his life and clearly satisfies the statutory residence
24 requirements of physical presence in the U.S. for no less than five years, including
25 at least two after turning fourteen years old.

26   63.    The only way that Ethan would not be a citizen at birth under the INA
27 is if Ethan were a child born out of wedlock, as the State Department has deemed
28 him.  That determination was erroneous both as a matter of statutory interpretation
   and as a matter of the Constitution's guarantees of due process and equal

16

protection.

### D.    The State Department's Policy Unconstitutionally Discriminates on the Basis of Sex and Sexual Orientation

64.    The decision to marry—like the decision to have children—is one of the most deeply personal choices one can make.  For the liberty guaranteed by the Constitution to be meaningful and effective, individuals must be able to make these fundamental and personal life choices freely, with dignity and without unwarranted consequences for the individual and his family.  Accordingly, the Constitution's guarantees of due process and equal protection apply with full force to an individual's fundamental right to marry the spouse of his or her own choosing, including a spouse of the same sex.  The Constitution requires not only recognition and protection of the right to enter into same-sex marriages, but also affords same-sex marriages the full constellation of legal rights and benefits—including dignity and respect—that have traditionally flowed from opposite-sex marriages.

65.    The State Department's policy and its application to Ethan are unconstitutional because they violate Ethan's and Andrew's rights to due process and equal protection under the Fifth Amendment of the Constitution.  As discussed above, the State Department refuses to apply Section 301(g) of the INA to Ethan based on its erroneous and demeaning classification of him as a child born out of wedlock.   Apparently on that basis alone, it refuses to recognize Ethan's citizenship.

66.    Under the State Department's policy, citizenship through Section 301 is presumptively available to any person the State Department deems born "in wedlock"—a class the agency has construed to consist exclusively of children conceived and carried by women who are married to men.

67.    Nothing in the INA or the Constitution permits the State Department's limitation of birthright citizenship under Section 301 to the children of U.S. citizens in opposite-sex marriages.   The State Department's requirement is unfounded and ensures unconstitutionally unequal treatment of the children of

17

same-sex married couples.

68.    The government has provided no rationale for this discriminatory policy.  Furthermore, there is no legitimate governmental purpose that could justify limiting birthright citizenship in this way.  To the contrary, such an approach undermines the congressionally established, legitimate, and important government purposes that underlie the INA itself.  For example, the State Department's approach ultimately makes it harder, not easier, for families like the Dvash-Bankses to stay together.  This undermines the INA's statutory intent of "provid[ing] for a liberal treatment of children and . . . keeping families of United States Citizens and Immigrants united."  H.R. Rep. 85-1199, at 2020 (1957).

69.    In amending the INA, Congress recognized that no harm could come from the liberal treatment of children with respect to citizenship, and that the consequences of such treatment would fulfill "the clearly expressed legislative intention to keep together the family unit wherever possible."  *Id.* at 2021.

70.    Although the State Department's policy may in theory apply to marriages between spouses of opposite sexes, its overwhelming effect is to deprive spouses in same-sex marriages—and their children—of fundamental rights and equal dignity as citizens under the law.  The fact that *some* opposite-sex married couples *may* use assisted reproductive technology to conceive a child does not change the discriminatory nature or harmful effects of the government's policy on same-sex couples.

71.    In addition to discriminating against Ethan, the State Department's policy discriminates against Andrew by denying him the ability to transmit citizenship to a child conceived with his husband's sperm, born during their marriage, and raised as a child of that marriage.  This right is available to similarly situated citizens—*i.e.*, U.S. citizen women who are married to foreign national men.  A woman who is a U.S. citizen has the right to confer citizenship on a child conceived with her husband's sperm, born during their marriage and raised as a

18

1  child of that marriage, even if she did not conceive or carry the child.  Therefore, in

2  denying Andrew this right, the State Department's policy also discriminates

3  against him based on his sex and/or that of his spouse, Elad.

4  **COUNT I – DECLARATORY JUDGMENT**
   **THE STATE DEPARTMENT'S POLICY VIOLATES THE DUE PROCESS**
5  **GUARANTEE OF THE FIFTH AMENDMENT**

6  72.  Plaintiffs repeat, reallege, and incorporate by reference the allegations

7  contained in paragraphs 1 through 71 as if fully set forth herein.

8  73.  The Fifth Amendment of the Constitution prohibits the federal

9  government from depriving individuals of their rights without due process of law.

10  74.  The Due Process Clause of the Fifth Amendment prohibits the federal

11  government from depriving any person of life, liberty, or property without due

12  process of law, as well as from depriving any person of equal protection under the

13  law.

14  75.  Section 301 of the INA entitles U.S. citizens to confer citizenship at

15  birth on their children born abroad in wedlock.  The INA does not require U.S.

16  citizens to be in opposite-sex marriages to confer citizenship under Section 301.

17  Nor does the INA require a child's biological parents to be married to each other

18  for the child to be considered born in wedlock, and therefore eligible for

19  citizenship under Section 301.  The INA merely requires that the child is ***not*** born

20  out of wedlock.

21  76.  Defendants have violated and continue to violate the Fifth

22  Amendment of the United States Constitution by enforcing a policy that excludes

23  U.S. citizens in same-sex marriages from conferring citizenship pursuant to

24  Section 301, while restricting access to citizenship under that provision to the

25  children of opposite-sex married couples.  Defendants' policy has deprived and

26  continues to deprive Plaintiffs of their rights to acquire and confer citizenship at

27  birth pursuant to INA Section 301.  As a result of Defendants' policy, Plaintiffs

28  have suffered, and will suffer, irreparable harm to their protected interest in

19

conferring, and having recognized, Ethan's U.S. citizenship.

77.     There is no rational, legitimate, or substantial government interest served by denying the children of same-sex married couples access to citizenship at birth pursuant to Section 301 of the INA based on the sex and/or sexual orientation of the child's citizen-parent.   Nor is there any rational, legitimate, or substantial government interest served by denying U.S. citizens in same-sex marriages the right to confer citizenship on children born abroad during their marriage based on the citizen's sex and/or sexual orientation or exercise of the protected right to enter into a same-sex marriage.   Defendants have offered no justification for precluding Andrew from conferring on Ethan citizenship pursuant to Section 301.

78.     As a result of Defendants' arbitrary, discriminatory, and unlawful implementation and enforcement of its policy prohibiting U.S. citizens in same-sex marriages from conferring U.S. citizenship on their children born in wedlock outside the United States, Plaintiffs have suffered injuries and will suffer further irreparable harm to their constitutional rights under the Fifth Amendment if the State Department's policy is not declared unconstitutional and enjoined.

79.     Plaintiffs have no adequate remedy at law.

**COUNT II – DECLARATORY JUDGMENT**
**THE STATE DEPARTMENT'S POLICY VIOLATES THE**
**CONSTITUTIONAL GUARANTEE OF EQUAL PROTECTION UNDER**
**THE LAW**

80.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 71 as if fully set forth herein.

81.     The Due Process Clause of the Fifth Amendment prohibits the federal government from denying persons the equal protection of its laws.

82.     Under the State Department's interpretation of Sections 301 and 309, no child could be considered born in wedlock to spouses in same-sex marriages, even if the child's parents are married to each other and are the sole individuals identified on the child's birth certificate as his or her parents.

20

83.   The State Department has offered no rationale to explain why it bars same-sex parents from relying upon Section 301.

84.   The State Department's interpretation has a disparate impact on same-sex married couples, because under that policy they can *never* confer upon a child U.S. citizenship pursuant to Section 301.

85.   Defendants' Letter, denying the application for a Consular Report of Birth Abroad by deeming Ethan to be a child born out of wedlock, discriminates against Ethan and Andrew based on sex and sexual orientation, without lawful justification, in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment.

86.   Defendants' above-described discrimination against people who desire to have an intimate relationship with a partner of the same sex—a discrete and insular group with a long history of discrimination and degradation including by those acting under the color of law—does not advance any rational, legitimate, or substantial governmental interest.

87.   As a result of Defendants' implementation and enforcement of its discriminatory policy of excluding the children of same-sex married couples from qualifying for citizenship at birth as children born in wedlock outside the United States, Plaintiffs have suffered injuries and will suffer further irreparable harm to their constitutional rights under the Fifth Amendment if the State Department's policy is not declared unconstitutional and enjoined.

88.   Plaintiffs have no adequate remedy at law.

## COUNT III – ADMINISTRATIVE PROCEDURE ACT

89.   Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 71 as if fully set forth herein.

90.   Plaintiffs have suffered a "legal wrong because of agency action." 5 U.S.C. § 702.

91.   The Administrative Procedure Act bars any agency action that is

1   "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with
2   law." 5 U.S.C. § 706(2)(A).

3      92.   Defendants' interpretation of Sections 301 and 309, as embodied in
4   the FAM, conflicts with the clear language and statutory purpose of the INA.  This
5   interpretation, published without any public comment, is arbitrary, capricious, and
6   not in accordance with the INA.

7      93.   Plaintiffs have suffered and continue to suffer legal wrongs because of
8   the U.S. Embassy's decision to deny the Consular Report of Birth Abroad
9   application submitted on behalf of Ethan.

10     94.   Plaintiffs have exhausted all administrative remedies available to them
11   as of right.

12     95.   Plaintiffs have no other recourse to judicial review other than this
13   action.

14     96.   Defendants' exclusion of children born abroad in same-sex marriages
15   from the category of children who qualify for citizenship at birth as born to valid
16   marriages lacks a rational basis, is arbitrary, and is contrary to law.

17     97.   Plaintiffs have no adequate remedy at law.

18   **COUNT IV – DECLARATION THAT ETHAN DVASH-BANKS IS A**
    **U.S. CITIZEN**
19

20     98.   Plaintiffs repeat, reallege, and incorporate by reference the allegations
    contained in paragraphs 1 through 71 as if fully set forth herein.
21

22     99.   8 U.S.C. § 1503(a) authorizes this Court to make a *de novo* judgment
23   as to the citizenship status of Ethan.

24     100.  Andrew is a U.S. citizen, who was born in the U.S. and physically
25   present in the U.S. for a period of 24 years, starting from the time he was born in
    California in 1981 until the time he moved to Israel in 2005.
26

27     101.  Andrew and Elad were legally married to each other by a judge in
    Canada on August 19, 2010.  They have been married to each other continuously
28   since that date.

22

102.    Their sons, Aiden and Ethan, were born on September 16, 2016 in Mississauga, Canada, during Andrew's and Elad's marriage.

103.    Andrew and Elad are Ethan's parents.  They are identified as Ethan's parents on his birth certificate and recognized as his parents under Canadian law.

104.    Section 301(g) of the INA is applicable to Ethan's citizenship claim because Ethan is the child of parents who were married to each other at the time of his birth, and one of Ethan's married parents is a U.S. citizen.  Section 309(a) of the INA is inapplicable to Ethan's citizenship claim because he is the child of married parents, and therefore is not a child born out of wedlock.

105.    Ethan is a U.S. citizen at birth pursuant to Section 301(g) because he was born:  (1) outside the geographical limits of the United States and its outlying possessions, (2) to parents one of whom is an alien, and the other a citizen of the United States, (3) to a parent who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

i.    Declare unconstitutional, and a violation of the INA, the State Department's policy of classifying the children of same-sex married couples as "children born out of wedlock," and its consequent refusal to recognize Ethan's citizenship status on that basis, both on its face and as applied to Plaintiffs, Andrew Mason Dvash-Banks, in his individual capacity, and on behalf of his son, Ethan Jacob Dvash-Banks;

ii.   Declare Ethan Jacob Dvash-Banks a U.S. citizen at birth;

iii.  Permanently enjoin Defendants from continuing to discriminate against Plaintiffs by classifying the children of same-sex married couples as "children born out of wedlock," and denying the children of same-sex married couples the right to acquire citizenship at birth pursuant to Section 301(g) on that basis; and

iv.   Award Plaintiffs attorneys' fees and costs as allowed by law, and such other relief as the Court deems just and proper, including an award of reasonable litigation costs incurred in this proceeding pursuant to 28 U.S.C. § 2412.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

Dated:      New York, New York
            January 22, 2018

2

                                        SULLIVAN & CROMWELL LLP

3

4                                       /s Alexa Lawson-Remer
                                        Alexa Lawson-Remer
                                        (*lawsonr@sullcrom.com*)
5                                       State Bar No. 268855
                                        1888 Century Park East
6                                       Los Angeles, CA  90067-1725
                                        Telephone:  (310) 712-6600
7                                       Facsimile:  (310) 712-8800

8                                       Theodore Edelman
                                        (*edelmant@sullcrom.com*)
9                                       (*pro hoc vice application forthcoming*)
                                        Jessica Klein (*kleinj@sullcrom.com*)
10                                      (*pro hoc vice application forthcoming*)
                                        Scott E. Blair (*blairs@sullcrom.com*)
11                                      (*pro hoc vice application forthcoming*)
                                        Alexandra H. Moss
12                                      (*mossa@sullcrom.com*)
                                        State Bar No. 302641
13                                      125 Broad Street
                                        New York, New York  10004-2498
14                                      Telephone:  (212) 558-4000
                                        Facsimile:  (212) 558-3588

15                                               -and-

16

17                                      IMMIGRATION EQUALITY

18                                      /s Aaron Morris
                                        Aaron C. Morris
19                                      (*amorris@immigrationequality.org*)
                                        (*pro hoc vice application forthcoming*)
20                                      40 Exchange Place
                                        Suite 1300
21                                      New York, New York  10005-2744
                                        Telephone:  (212) 714-2904
22

23                                      *Attorneys for Plaintiffs*

24

25

26

27

28

                                        25