# EXHIBIT B

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nathine Frances Day on 12/20/2018
Case 2:18-cv-00523-JFW-JC   Document 83-1   Filed 01/07/19   Page 2 of 39   Page ID
#:1450

```
 1              UNITED STATES DISTRICT COURT

 2         FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3

 4   ANDREW MASON DVASH-BANKS       )
     and E.J. D.-B.,               )
 5                                  )
                 Plaintiffs,        ) Case No.
 6                                  ) 2:18-cv-00523-JFW-JCx
           vs.                      )
 7                                  )
     THE UNITED STATES DEPARTMENT   )
 8   OF STATE, and THE HONORABLE    )
     MICHAEL R. POMPEO,             )
 9   Secretary of State,           )
                                    )
10              Defendants.         )

11

12   VIDEOTAPED DEPOSITION OF TERRI NATHINE FRANCES DAY

13                 (Taken by Plaintiffs)

14              Charlotte, North Carolina

15              Thursday, December 20, 2018

16

17

18

19

20

21

22

23
                 Reported in Stenotype by
24               Cindy A. Hayden, RMR-CRR

25
```

Plaintiffs' Partial Summary Judgment Exhibit B
Page 70

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Frances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-1   Filed 01/07/19   Page 3 of 39   Page ID
#:1451

```
 1                    APPEARANCES

 2

     ON BEHALF OF THE PLAINTIFFS:
 3
             LAUREN M. GOLDSMITH, Esquire
 4           Sullivan & Cromwell LLP
             125 Broad Street
 5           New York, New York 10004-2498
             (212) 558-4023
 6           goldsmithl@sullcrom.com

 7               ~ and ~

 8           REBEKAH T. RAYBUCK, Esquire
             Sullivan & Cromwell LLP
 9           1870 Embarcadero Road
             Palo Alto, California 94303-3308
10           650.461.5674
             raybuckr@sullcrom.com
11

12   ON BEHALF OF THE DEFENDANTS:

13           LISA ZEIDNER MARCUS, Esquire
             Senior Counsel
14           U.S. Department of Justice
             Civil Division, Federal Programs Branch
15           P.O. Box 883
             Washington, DC 20044
16           202.514.3336
             lisa.marcus@usdoj.gov
17
                 ~ and ~
18
             Jeremy Weinberg, Esquire (Via telephone)
19           U.S. Department of State
             Attorney-Adviser
20           Office of the Legal Adviser
             600 19th Street NW
21           SA-17 Suite 5.550
             Washington, DC  20036
22           202.485.8649
             weinbergjm@state.gov
23

24   Also Present:  Bruce Weekly, Videographer

25
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Plaintiffs' Partial Summary Judgment Exhibit B
Page 71

Case 2:18-cv-00523-JFW-JC   Document 83-1   Filed 01/07/19   Page 4 of 39   Page ID
#:1452

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nathine Frances Day on 12/20/2018                                    Page 3

1          VIDEOTAPED DEPOSITION OF TERRI NATHINE

2    FRANCES DAY, a witness called on behalf of the

3    Plaintiffs, before Cindy A. Hayden, RMR-CRR, Notary

4    Public, in and for the State of North Carolina,

5    held at the Hyatt Place Charlotte Airport/Tyvola

6    Road, 2950 Oak Lake Boulevard, Charlotte, North

7    Carolina, on Thursday, December 20, 2018,

8    commencing at 10:03 a.m.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

www.huseby.com              Huseby, Inc.  Regional Centers              800-333-2082
            Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Plaintiffs' Partial Summary Judgment Exhibit B
Page 72

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nahme Frances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC Document 83-1 Filed 04/07/19 Page 5 of 39 Page ID #:1453

```
 1                    I N D E X

 2                                              PAGE

 3    EXAMINATION BY MS. GOLDSMITH                  7

 4    EXAMINATION BY MS. MARCUS                   182

 5    EXAMINATION BY MS. GOLDSMITH                272

 6

 7              PREVIOUSLY MARKED EXHIBITS

 8

 9    NUMBER              DESCRIPTION           PAGE

10    EXHIBIT 1  Letter dated 3/2/17 to Andrew   145
                 Mason Dvash-Banks
11
      EXHIBIT 2  Document titled Do any of these  177
12               circumstances apply to you and
                 your family?
13
      EXHIBIT 3  Email dated 1/9/17, Subject:      64
14               Welcome to ACS!

15    EXHIBIT 5  CRBA application and supporting  151
                 documents
16
      EXHIBIT 6  ACS Activity Log                 162
17

18

19

20              (Index continued on next page.)

21

22

23

24

25
```

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Frances Day on 12/20/2018                                    Page 5

```
 1                    NEWLY MARKED EXHIBITS

 2
        DAY
 3      NUMBER            DESCRIPTION                    PAGE

 4
        EXHIBIT 1   Emails, top one dated 9/25/17,       123
 5                  Subject:  DVASH-BANKS (REP.LIEU)

 6      EXHIBIT 2   Email dated 1/24/17, Subject:        126
                    Conversation with Reffett,
 7                  Larilyn

 8      EXHIBIT 3   Letter dated 1/24/17 to Andrew       135
                    Dvash-Banks
 9
        EXHIBIT 4   CRBA application and supporting      154
10                  documents (color copy)

11      EXHIBIT 5   Consular Report of Birth Abroad      165

12      EXHIBIT 6   Emails, top one dated 9/25/17,       254
                    Subject:  DVASH-BANKS (REP.LIEU)
13
        EXHIBIT 7   Emails, top one dated 9/25/17,       255
14                  Subject:  DVASH-BANKS
                    (REP.LIEU), with attachment
15

16

17

18

19

20

21

22

23

24

25
```

Case 2:18-cv-00523-JFW-JC Document 83-1 Filed 01/07/19 Page 7 of 39 Page ID #:1455

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nathine Frances Day on 12/20/2018

Page 7

```
 1   trial attorney, U.S. Department of Justice, Civil

 2   Division, Federal Programs Branch.  I represent the

 3   United States.  And in this action, I represent the

 4   Department of State and the Secretary of State, who

 5   is sued in his official capacity.

 6           It's possible that at some point during

 7   today's deposition, I may be joined telephonically

 8   by an attorney colleague at the Department of

 9   State.  If so, if that does occur, I will have that

10   person introduce him or herself on the record at

11   that time.  Thank you.

12                       * * *

13           TERRI NATHINE FRANCES DAY,

14    having been first duly sworn, was examined and

15             testified as follows:

16                       * * *

17                   EXAMINATION

18   BY MS. GOLDSMITH:

19       Q.   Ms. Day, thank you so much for being

20   here with us today.

21           Have you ever been deposed before?

22       A.   No.

23       Q.   Have you ever testified in court?

24       A.   No.

25       Q.   Have you ever given testimony under
```

Plaintiffs' Partial Summary Judgment Exhibit B
Page 75

Andrew Mason Dyash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Frances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-1   Filed 01/07/19   Page 8 of 39   Page ID
#:1456

```
 1   you explain a little bit?

 2        Q.   Is it your understanding that the

 3   policies that the Toronto consulate follows with

 4   respect to how to adjudicate passport and CRBA

 5   applications are the same policies that the State

 6   Department follows?

 7        A.   According to my understanding, yes,

 8   they are the same policies, as far as what I've

 9   seen in the Foreign Affairs Manual, which is the

10   only thing I can attest to, really.  And the

11   guidelines that have been given to me by Consular

12   Affairs, yes, they are the same.

13        Q.   So I'd like to talk about your job

14   responsibilities when you were a Vice Consul at the

15   Toronto consulate.  I know that you said -- my

16   understanding is that you said you were working in

17   the nonimmigrant visa unit; is that correct?

18        A.   I worked in several different -- I

19   worked in several different units during that time.

20        Q.   Can you describe that?

21        A.   Working in the nonimmigrant visa unit

22   or working --

23        Q.   What other units did you work for?

24        A.   I also worked in the American Citizens

25   Services Unit.
```

Plaintiffs' Partial Summary Judgment Exhibit B
Page 76

Andrew Mason Dyash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Frances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 01/07/19   Page 9 of 39   Page ID
#:1457

Page 29

1    interviewing at the same time as I was.

2              Now, because of transfer season and

3    things like that, people coming and going,

4    sometimes there would be gaps in the -- not gaps,

5    but sometimes there would be times when we needed

6    more adjudicators.  So we would borrow adjudicators

7    from the fraud unit or we'd borrow them from the

8    nonimmigrant visa unit to help supplement our

9    interviews that we did upstairs and to get the wait

10   times down, because we had wait times for passports

11   and -- for CRBAs and things like that.

12        Q.   You stated that your job

13   responsibilities at the consulate included the

14   adjudication of applications for U.S. passports and

15   CRBAs; is that correct?

16        A.   Yes.

17        Q.   And what was your role in adjudicating

18   those applications?

19        A.   My role was to determine if the

20   applicant had a claim to U.S. citizenship either

21   through their parent or their place of birth or

22   whatever reason they were -- you know, whatever

23   reason they were claiming was their purpose for

24   getting it -- acquiring U.S. citizenship.  So that

25   was my -- my job was to determine if that was --

Case 2:18-cv-00523-JFW-JC   Document 83.5   Filed 03/07/19   Page 10 of 39   Page ID #:1458

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nathine Frances Day on 12/20/2018          Page 30

1    according to Foreign Affairs Manual and the

2    guidelines that we had, if that was -- if they were

3    entitled to that citizenship.

4         Q.   So am I correct in understanding, then,

5    that when you say "determine if an applicant had a

6    claim to U.S. citizenship," you mean that the

7    applicant was a citizen?

8         A.   I will say -- I will restate and say

9    that it was to determine if the applicant would

10   qualify for U.S. citizenship and then approve or

11   deny that application accordingly.

12        Q.   And did your job ever require you to

13   determine whether an applicant for a CRBA was a

14   U.S. citizen at birth?

15        A.   Could you -- could you repeat that one

16   time?  Sorry.

17        Q.   Sure.  Was part of your role as a

18   consular officer to make determinations as to

19   whether applicants were citizens at birth?

20        A.   Yes.

21             MS. GOLDSMITH:  So there has been a

22   request for a quick bathroom break.  So let's go

23   off the record for a few minutes, and we'll

24   reconvene.

25             THE VIDEOGRAPHER:  We're going off the

Plaintiffs' Partial Summary Judgment Exhibit B
Page 78

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nathine Pances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 03/03/19   Page 11 of 39   Page ID #:1459

 1   10:59.  We are back on the record.

 2            MS. GOLDSMITH:  So to address defense

 3   counsel's statement before we took our break,

 4   plaintiffs are fine with Ms. Marcus's suggestion

 5   that defendants review the transcript after the

 6   deposition and designate any portions confidential

 7   that they intend to at that time.  We just ask that

 8   they do so promptly and that they do so within

 9   seven days, so that we can meet any other

10   court-ordered deadlines.

11            MS. MARCUS:  I agree.  And thank you.

12   BY MS. GOLDSMITH:

13       Q.   Okay.  So we were talking about the

14   process for adjudicating applications for passports

15   and CRBAs, and you were talking earlier about the

16   interview process; is that correct?

17       A.   I -- yes, that sounds correct.

18       Q.   And did you typically make the

19   determination whether to approve or deny an

20   application during the interview?

21       A.   I can't say for certain.  I don't

22   remember 100 percent of my cases.  So I can't say

23   what was more prevalent than not, but I can say

24   that quite often there was -- there was -- before I

25   can make a determination, it would be pending for

www.huseby.com            Huseby, Inc.  Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Plaintiffs' Partial Summary Judgment Exhibit B
Page 79

1    further documentation, which would mean that the

2    decision, the determination, was not made during

3    the interview.

4         Q.   And can you explain what you mean by

5    "pending"?

6         A.   "Pending," meaning in process, not

7    determined yet.

8         Q.   And was it common to put applications

9    into this pending status?

10        A.   Could you be a bit more specific?  What

11   do you mean by "common"?

12        Q.   Sure.  In your experience, adjudicating

13   applications for U.S. passports and CRBA, was it

14   your typical practice to put an application into

15   pending status?

16        A.   If the application called for it, yes,

17   without a doubt I would have put it in a pending

18   status, which -- so pending -- pending

19   documentation could include a birth certificate, a

20   photo, a signature that needed to be done.  It

21   could mean a whole list of things.  So it was

22   definitely something that was -- that happened

23   fairly frequently.

24        Q.   And is the -- is the process that

25   you're describing of adjudicating applications for

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Faneca Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 01/03/19   Page 13 of 39   Page
ID #:1461

1    this?  If somebody gives me a Sunday school list or

2    Sunday school graduation document, is that enough

3    to determine that they were in the United States

4    from the time that they said they were?  Those

5    things are more judgment based, but -- so when I

6    talk about making the determination and making

7    judgment on that, it's definitely physical presence

8    concerns, but a lot of the things -- you know, your

9    name, the parents' name, the parents' citizenship,

10   those things are yes or no.  There's no judgment

11   required with those.

12       Q.   And I think before you referred to

13   there's a checklist you go through.  Is that a

14   metaphorical checklist or is that a physical

15   checklist?

16       A.   That is a metaphorical checklist.  We

17   know based on the FAM what documents are required,

18   what things we need to know about the parent and

19   about the parents' relationship with the child.  We

20   know that, but you're not going to go through the

21   FAM, you know, line by line.  You're going to know

22   what it's asking you, and then you're going to --

23   you're going to say, "Okay, have I seen this?"

24   Yes.  "Have I seen this?"  No.  Et cetera.

25       Q.   And you may have touched on this

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Plaintiffs' Partial Summary Judgment Exhibit B
Page 81

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Frances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 03/08/19   Page 14 of 39   Page ID #:1462

Page 48

```
 1    before, but who -- who specifically makes the final

 2    decision whether to approve or deny an application?

 3          A.   The consular officer who does the

 4    interviews makes the decision, the final decision

 5    of whether to approve or deny the application.

 6          Q.   So in that window from January 2017 to

 7    March 2017 when you were working at the Toronto

 8    consulate, did you have authority to make a final

 9    decision whether to approve or deny applications?

10          A.   Yes.

11          Q.   Who communicates to the applicant the

12    final decision to approve or deny the application?

13          MS. MARCUS:  Objection.  Compound.

14    BY MS. GOLDSMITH:

15          Q.   You can answer.

16          A.   I would say -- I'm sorry.  Could you

17    repeat the question?

18          MS. GOLDSMITH:  Can you just read back

19    the question, please.

20          (The following question was read back:

21          Q:   Who communicates to the applicant

22    the final decision to approve or deny the

23    application?)

24          THE WITNESS:  I would say that the --

25    that comes from -- there is a letter of -- there is
```

Plaintiffs' Partial Summary Judgment Exhibit B
Page 82

```
 1   BY MS. GOLDSMITH:

 2        Q.    Did you ever consult any other

 3   documents or guidance of any kind during the course

 4   of your adjudication of U.S. passport and CRBA

 5   applications?

 6        A.    I would say no.

 7        Q.    Did you ever consult the FAM?

 8        A.    Yes.

 9        Q.    Was there anything else that you ever

10   consulted?

11        A.    I can't -- I can't say with 100 percent

12   certainty.  I don't remember specifically, but in

13   my experience, the FAM is the -- is the guideline

14   that is followed.  If there are changes and they

15   are communicated to us through our managers, be it

16   in NIV, IV or ACS.

17        Q.    And can you clarify what those

18   abbreviations mean?  I think I know, but --

19        A.    Sorry.  Through nonimmigrant visas,

20   immigrant visas and American Citizens Services.  So

21   those are just the units that handle whatever that

22   thing is.  So NIV means the unit that handles

23   nonimmigrant visas, et cetera.

24        Q.    Are you aware of whether the State

25   Department follows the law of the U.S. Supreme
```

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nathine Pances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 01/03/19   Page 16 of 39   Page
ID #:1464

1          MS. MARCUS:  For the record, if -- if

2     you ask a lot of questions distinguishing between

3     the two, you may also consider -- I'd ask you also

4     to consider referring to them generally as the

5     approved child's applications or the denied child's

6     applications, in case --

7               THE WITNESS:  That would be very

8     helpful.

9               MS. MARCUS:  -- in case Ms. Day gets

10    mixed up, because the initials E.J. and A.J. are

11    not completely dissimilar.  So it's my view that

12    it's possible for any person reading the record or

13    hearing the questions to be confused as to which

14    specific child is being referred to at a given

15    time.  So I'd put that on the record for

16    Ms. Goldsmith's consideration.

17               I would also put on the record for

18    Ms. Day's hearing that you -- if you don't know at

19    a given time which child is being referred to, you,

20    of course, are free to ask for clarification

21    regarding that.  Thank you.

22    BY MS. GOLDSMITH:

23          Q.   So you stated earlier that you were

24    personally involved in the adjudication of A.J.'s

25    and E.J.'s applications for U.S. passports and

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Plaintiffs' Partial Summary Judgment Exhibit B
Page 84

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 02/07/19   Page 17 of 39   Page ID #:1465

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Pances Day on 12/20/2018                                    Page 85

1  CRBAs; is that correct?

2        A.   Yes.

3        Q.   And what was your role?

4        A.    I was the adjudicating officer.  So I

5  took in the -- I -- after the local staff took in

6  the documents, I reviewed them and I certified

7  copies.  I gave an oath to the parents and had them

8  sign the documents.  I interviewed them, and then I

9  was ultimately responsible for approving or denying

10  those applications.

11        Q.   Was anyone else involved in that

12  adjudication?  And we'll start with E.J.

13        A.   Can I just say for both of them --

14        Q.   Sure.

15        A.    -- because they were -- they were

16  treated as -- I mean, all the information that's

17  true for one -- in the initial interview phase, as

18  far as I knew, it would have been true for the

19  other.  So no one was -- I mean, I consulted with

20  my manager about the case, and she brought in

21  Maggie Ramsay as well.  But during the -- and

22  during the interview, at a certain point, Maggie

23  Ramsay did speak to the family.  So in that way,

24  people were involved, but the ultimate decision was

25  mine.

Plaintiffs' Partial Summary Judgment Exhibit B
Page 85

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nattline Pances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83.5   Filed 03/08/19   Page 18 of 39   Page
ID #:1466

 1    correct?

 2          A.    That is correct, yes.

 3          Q.    And do you recall in general what sorts

 4    of documents you reviewed?

 5          A.    I don't recall that, no.

 6          Q.    And you may have answered this before,

 7    but do you recall whether you consulted with anyone

 8    before the family came in?

 9          A.    I don't recall that.  Like I said

10    before, if their -- if their -- if they had

11    presented documents to us that said they used

12    assisted reproductive technology, especially Maggie

13    might have seen that and, you know -- because I was

14    fairly new in the section.  So if -- if I don't

15    have a lot of experience doing cases like that,

16    then she's going to send me the FAM -- you know,

17    the FAM section and send me documents that could --

18    you know, those documents that would help me, you

19    know, any training -- you know, here's some review

20    of some training that you may have had about ART or

21    whatever, but I don't remember specifically.

22          Q.    And then when you first met the

23    Dvash-Banks family, did you meet them in the

24    waiting room?

25          A.    No.  So I would call the family up to

Plaintiffs' Partial Summary Judgment Exhibit B
Page 86

Case 2:18-cv-00523-JFW-JC   Document 83.5   Filed 03/07/19   Page 19 of 39   Page ID #:1467

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Pances Day on 12/20/2018     Page 110

1    my window.  I -- we have an intercom.  I would say,

2    "Dvash-Banks family to window C."

3            Q.   And then I think you testified earlier

4    that at that point, you would have sworn the

5    parents; is that correct?

6            A.   Uh-huh.

7            Q.   And then what would happen next?  What

8    happened next?

9            A.   What would happen next is we would

10   begin the interview.  They would sign documents,

11   specifically.  We would get all the clerical stuff

12   out of the way, and they would sign documents.  We

13   would -- I would -- I would confirm their identity

14   to the photos.  I would look at the kids.  All of

15   that -- those things that you have to do at the

16   very beginning are all clerical things.

17            And then I would determine -- now, the

18   section of the law that they would fall under is

19   already -- you know, we already know the situation.

20   So I'm coming into it with that mind-set.  If

21   during the course of the interview I find something

22   out different, then, obviously, I would change.

23   But for the most part, you know, I would ask them

24   questions along the lines of, okay, you know, your

25   marriage certificate, when did you get married, et

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Frances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 01/03/19   Page 20 of 39   Page ID #:1468   Page 112

1   cetera, and then talking about the kids, how they

2   were conceived.  If I have any questions about

3   that, I would ask that at that time.  And then

4   we -- and then that's when we would get into, okay,

5   how they were conceived, who -- you know, who's

6   biologically related to whom, and then -- and on

7   through.

8          Q.   And to the best of your recollection,

9   is this what happened on the day that you

10   interviewed the Dvash-Banks family?

11         A.   I would say yes.

12         Q.   So after you called the family up to

13   the window, you got all of the clerical work out of

14   the way, is it correct then that you began to ask

15   them questions related to the documents that they

16   had presented you with?

17         A.   I would say that normally that's how

18   that happens, yes.

19         Q.   And to the best of your recollection,

20   is that what happened here?

21         A.   I don't recall, but I don't -- unless

22   there was something else that -- you know, that

23   stuck out, I would -- that's the order I would have

24   followed.

25         Q.   And I understand that you don't recall

Plaintiffs' Partial Summary Judgment Exhibit B
Page 88

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Frances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 03/27/19   Page 21 of 39   Page
ID #:1469

Page 1

 1    that bubble of their kids and their family, which I

 2    totally get.  And so they were feeling -- possibly

 3    feeling a little bit attacked because I was asking

 4    for this information that is very personal,

 5    extremely personal.

 6              So it was probably around then that

 7    they -- that the mood sort of changed into the

 8    heightened emotional state that it got to.

 9         Q.   Do you remember anything that Andrew

10    and Elad said to you that made you feel like they

11    thought they were being attacked?

12              MS. MARCUS:  This is going to maybe be

13    the last question before we take a break because

14    it's pretty -- three minutes left on the tape.

15              MS. GOLDSMITH:  We'll finish the tape.

16              THE WITNESS:  Do I remember -- can you

17    repeat the question?  I'm sorry.

18              MS. GOLDSMITH:  Can you read the

19    question back, please.

20              THE WITNESS:  I'm sorry.

21              (The following question was read back:

22              Q:  Do you remember anything that

23    Andrew and Elad said to you that made you feel like

24    they thought they were being attacked?)

25              THE WITNESS:  I do remember them --

Plaintiffs' Partial Summary Judgment Exhibit B
Page 89

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nathine Frances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC    Document 83-5    Filed 03/07/19    Page 22 of 39    Page
ID #:1470

Page 120

 1  especially Andrew saying, you know, these are our

 2  children.  These are our sons.  I'm the dad, and

 3  this is -- you know, and Elad, I think is his name,

 4  Elad is the dad.  You know, we're the parents of

 5  these boys.  You know, they're -- those kinds of

 6  things, which made me kind of feel like -- I mean,

 7  they were feeling that they were, you know, being

 8  attacked.  And it was directed at me, you know, no

 9  doubt, not -- not necessarily at the FAM.  They

10  probably don't -- have never heard of it until now.

11  But, you know -- so, yeah, that was -- those were

12  the kinds of things that they were saying.

13  BY MS. GOLDSMITH:

14        Q.   And do you remember asking Andrew and

15  Elad how they created their family?

16        A.   Those specific words or --

17        Q.   Or in substance how they created their

18  family.

19        A.   I don't remember asking that.  If I had

20  questions about the surrogate or about the

21  surrogacy, about the ART, I would have asked those

22  questions, yes.  It's an awkward thing to try to

23  say, "Which of you donated sperm to put in an egg

24  for a baby?"  So I might have said, like, you know,

25  "So how were the boys conceived?"  Something like

Plaintiffs' Partial Summary Judgment Exhibit B
Page 90

```
 1    that, along those lines, yes.

 2                Might we have talked about, like, how

 3    they met or something?  I don't -- I don't recall.

 4                MS. GOLDSMITH:  Okay.  All right.  So

 5    we can go off the record.

 6                THE VIDEOGRAPHER:  Stand by.

 7                This marks the end of Disc 2.  We are

 8    going off the record.  The time on the monitor is

 9    1309.

10                          * * *

11                (Whereupon, there was a recess in the

12    proceedings from 1:09 p.m. to 2:44 p.m.)

13                          * * *

14                THE VIDEOGRAPHER:  This is the

15    beginning of Media Unit Number 3 for the video

16    deposition of Frankie Terri Day.  The time on the

17    monitor is 1424.  We are back on the record.

18    BY MS. GOLDSMITH:

19         Q.   Still discussing the day of the

20    interview, January 4th, 2017, your interaction

21    with -- January 24th -- excuse me -- your

22    interaction with the Dvash-Banks family on the day

23    of the interview, and we were talking before the

24    break about your conversation with the Dvash-Banks

25    family; is that correct?
```

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Naffine Frances Day on 12/20/2018                    Page 122

1        A.    Yes.

2        Q.    So during the interview, did you tell

3   Andrew and Elad that their family was different?

4        A.    Did I -- just for clarification, you're

5   asking if I used the exact words, "Your family is

6   different"?

7        Q.    We can start with that.

8        A.    To the best of my recollection, I don't

9   remember saying that.

10       Q.    Do you remember in substance stating

11  that the Dvash-Banks family was different?

12       A.    What do you mean "different"?

13  Different than what?

14       Q.    Different than the typical family

15  applying for a passport or CRBA for their minor

16  child born abroad?

17       A.    No, I don't recall saying that in

18  substance either.

19       Q.    Did you tell Andrew and Elad that

20  heterosexual couples were not required to get DNA

21  tests?

22       A.    No, I did not say that.

23       Q.    Do you recall in substance telling them

24  that heterosexual couples were not required to get

25  DNA tests?

Plaintiffs' Partial Summary Judgment Exhibit B
Page 92

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Pances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 01/03/19   Page 25 of 39   Page
ID #:1473

 1    included fraudulent materials?

 2                 MS. MARCUS:  Objection.  Vague as to

 3    the time of the concern that's being asked about.

 4    BY MS. GOLDSMITH:

 5         Q.    At any point during your adjudication

 6    of E.J.'s application for a U.S. passport or CRBA,

 7    did you have any concern that they had provided you

 8    with fraudulent materials?

 9         A.    To the best of my recollection, no.

10         Q.    And in adjudicating E.J.'s application

11    for a U.S. passport and for a CRBA, did you ever

12    consider or apply the law of Ontario, to the best

13    of your recollection?

14                 MS. MARCUS:  Objection.  Vague.

15    Compound.

16                 THE WITNESS:  You'll have to be more

17    specific than that.

18    BY MS. GOLDSMITH:

19         Q.    Did you consider Ontario law to

20    determine whether Andrew and Elad were a married

21    couple?

22         A.    In that I had a copy of their marriage

23    certificate from the Ontario government, I -- I

24    looked at that document as a -- as proof of their

25    marriage.

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nathlie Frances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 03/05/19   Page 26 of 39   Page
ID #:1474

Page 155

```
 1   passport on or before January 24th, 2017?

 2          A.   That, I cannot say for certain.  Just

 3   because I made -- because the copy was made and I

 4   stamped it doesn't mean that I received it on that

 5   day.

 6          Q.   Well, on or before January 24th, 2017?

 7          A.   It could -- I don't know.  If something

 8   was presented to us afterwards and put with the

 9   case file, it -- it could also be in here.

10          Q.   Would you have stamped it if you

11   received it after the interview?

12          A.   Possibly, if we made a copy of it.

13          Q.   Can you turn, please, to the document

14   that is Bates-stamped 00070270-1767.  And I'll

15   represent for the record that it's titled "Marriage

16   License."

17          A.   Yes.

18          Q.   What is this document?

19          A.   It seems to be a marriage license.

20          Q.   Thank you.

21          A.   Uh-huh.

22          Q.   Have you seen this document before?

23          A.   Yes.

24          Q.   And is this document Andrew and Elad's

25   Canadian marriage license?
```

Plaintiffs' Partial Summary Judgment Exhibit B
Page 94

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 01/03/19   Page 27 of 39   Page
ID #:1475
Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Frances Day on 12/20/2018
Page 156

1          A.    It would seem to be a marriage license

2    from Ontario, yes.   It has their names on it.

3          Q.    And did you consider this document to

4    be sufficient proof that Andrew and Elad were

5    married at the time of E.J.'s birth?

6          A.    Yes.

7          Q.    And does this document refresh your

8    recollection that you determined that Andrew and

9    Elad Dvash-Banks were a married couple?

10         A.    I don't believe you asked me

11   specifically if they were a married couple.  I --

12   yes, that would prove that they are a married

13   couple.

14         Q.    And in adjudicating E.J.'s application

15   for a U.S. passport, do you recall why you

16   determined that E.J. was born out of wedlock?

17         A.    I do not recall.

18         Q.    Ms. Day, you testified previously that

19   you have read INA Sections 301 and 309; is that

20   correct?

21         A.    Yes, that's correct.

22         Q.    And I believe you testified earlier

23   that it's your understanding that Section 309 of

24   the INA applies when a child is born out of

25   wedlock; is that correct?

Plaintiffs' Partial Summary Judgment Exhibit B
Page 95

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 01/03/19   Page 28 of 39   Page
Terri Nadine Frances Day on 12/20/2018                                    Page 168
ID #:1476

1              So am I correct in understanding that

2     although it was your typical practice to determine

3     whether a child's parents were married in the

4     course of adjudicating an application for a CRBA or

5     passport, that you do not recall whether you made

6     that determination with respect to Andrew and Elad

7     Dvash-Banks?

8         A.    No, that's incorrect.

9         Q.    Okay.  Can you clarify, please.

10        A.    I -- I would have made the decision

11    before adjudicating the case at -- at some point,

12    but I can't specifically say in this -- in this

13    case at which point it would have happened.

14        Q.    That's okay.  At any point during the

15    course of the adjudication is what I'm asking.

16        A.    At any point of the adjudication, did I

17    determine if they were in wedlock or out of

18    wedlock, the boys?  Is that what your question is?

19        Q.    First, at any point during the course

20    of the adjudication, did you determine that Andrew

21    and Elad Dvash-Banks were a married couple?

22        A.    Oh, if they were a married couple?  I

23    don't recall this specifically.

24        Q.    And the marriage license document that

25    is Bates-stamped 00070270-1767 and is marked as

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Frances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 01/03/19   Page 29 of 39   Page ID #:1477

Page 162

1    Day Exhibit 4, does that refresh your recollection?

2          A.   It -- it does.   It is a marriage

3    license that has Andrew and Elad's name on it.   So

4    if I saw this, I would -- at this point in time I

5    see this, and I would make the determination that

6    they are married, which is -- yeah.

7          Q.   And now, separately, in adjudicating

8    E█████ -- strike that.

9               In adjudicating E.J.'s application for

10   a U.S. passport and a CRBA, do you recall whether

11   you made the determination that E.J. was born in

12   wedlock or out of wedlock?

13         A.   I don't recall.

14         Q.   Is there anything that would refresh

15   your recollection as to whether you made the

16   determination that he was born either in wedlock or

17   out of wedlock?

18         A.   I don't know.   I'm not sure.

19              (PLAINTIFF EXHIBIT 6, ACS Activity Log,

20   was previously marked for identification.)

21   BY MS. GOLDSMITH:

22         Q.   So I've asked the court reporter to

23   hand you a document.   It was previously marked as

24   Plaintiffs' Deposition Exhibit 6, and it is not

25   Bates-stamped because of the manner in which it was

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Plaintiffs' Partial Summary Judgment Exhibit B
Page 97

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Pances Day on 12/20/2018
Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 01/03/19   Page 30 of 39   Page
ID #:1478
Page 100

```
 1              A.    I do.

 2              Q.    And what is this document?

 3              A.    It is a copy of a Consular Report of

 4    Birth Abroad.

 5              Q.    And is this a Consular Report of Birth

 6    Abroad for A.J. D███-B███?

 7              A.    It would seem to be, yes.

 8              Q.    And does this document state that the

 9    child was -- that the child acquired U.S.

10    citizenship at birth?

11              A.    Acquired United States citizenship at

12    birth, yes.

13              Q.    And is this the CRBA that the consulate

14    issued to A.J. D███-B███?

15              A.    It would seem to be, yes.

16              Q.    So does this CRBA that the consulate

17    issued to A.J. reflect that he acquired U.S.

18    citizenship at birth?

19              A.    Yes.

20              Q.    Is this document, A.J.'s CRBA,

21    consistent, generally, with the form of a CRBA that

22    was in effect in March 2017, to the best of your

23    recollection?

24              A.    As far as I recall, yes.

25              Q.    And I believe you stated earlier today
```

Plaintiffs' Partial Summary Judgment Exhibit B
Page 98

```
 1              Q.    All right.   Can you return, please, to

 2      the passport file, the document that we labeled as

 3      Day Exhibit 4.

 4              A.    Yes.

 5              Q.    And can you turn, please, to the

 6      document that is Bates-stamped 00070270-1764.   And

 7      I'll represent for the record that the title of the

 8      document is "Statement of Live Birth."

 9              A.    1764.   Yes.

10              Q.    What is this document?

11              A.    It seems to be a Statement of Live

12      Birth for E████ J████ D████-B████.

13              Q.    And have you seen this document before?

14              A.    Yes, I have.

15              Q.    And is this document E.J.'s Canadian

16      birth certificate?

17              A.    It would seem to be, yes.   A copy of

18      that.

19              Q.    And in your review of this document

20      during the process of adjudicating E.J.'s

21      application, did you consider this document to be a

22      true and accurate copy of E.J.'s timely filed

23      Canadian birth certificate?

24              A.    Yes.

25              Q.    Did you consider this document to be
```

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nathine Pances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 03/08/19   Page 32 of 39   Page
ID #:1480

Page 175

1  adequate proof that Andrew and Elad Dvash-Banks

2  were E.J.'s parents?

3            MS. MARCUS:  Objection.  Vague as to

4  the term "parents."

5  BY MS. GOLDSMITH:

6       Q.   You can answer.

7       A.   I need clarification on the term

8  "parents."

9       Q.   Did you consider this document to be

10  adequate proof that Andrew and Elad Dvash-Banks are

11  E.J.'s legal parents?

12       A.   I would say yes.

13       Q.   And can you turn, please, to the

14  document titled "Final Order, Ontario Superior

15  Court of Justice."  And it's Bates-stamped

16  00070270-1768, and it continues on to the page

17  Bates-stamped 00070270-1769.

18       A.   Okay.

19       Q.   What is this document?

20       A.   It is an Ontario -- it seems to be a

21  copy of an Ontario court document that names Elad

22  and Andrew Dvash-Banks as the parents of E█████

23  J█████ D████-B█████.

24       Q.   And have you seen this document before?

25       A.   I have, yes.

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Frances Day on 12/20/2018
Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 03/08/19   Page 33 of 39   Page
ID #:1481
Page 174

1        Q.    Did you consider this document to be

2    adequate proof that Andrew and Elad were E.J.'s

3    parents at the time of E.J.'s birth?  And, again,

4    I'm referring to legal parents.

5        A.    I would say yes.

6        Q.    In the course of adjudicating E.J.'s

7    applications for a U.S. passport and CRBA, did you

8    determine that E.J. was the child of Andrew and

9    Elad Dvash-Banks?

10       A.    You have to specify "child."

11       Q.    Did you determine that Andrew and Elad

12   Dvash-Banks were E.J.'s legal parents?

13       A.    According to the documents that they

14   presented me, the courts of Ontario recognized E.J.

15   and Elad Banks [sic] as the legal parents of -- of

16   E███, according to these documents they presented

17   to me.

18       Q.    And during the course of the

19   adjudication, you determined that this was adequate

20   proof of his legal parentage?

21       A.    It was adequate proof that the people

22   who presented to me could sign his documentation --

23   could sign his application.

24       Q.    I'd like to turn again, please, to the

25   document that was marked previously as Plaintiffs'

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Frances Day on 12/20/2018
Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 01/03/19   Page 34 of 39   Page ID #:1482
Page 21

```
 1            A.   I do not recall that, no.

 2            Q.   Do you recall looking at the Foreign

 3    Affairs Manual -- let me be more clear.

 4                 Do you recall looking at any provisions

 5    of the Foreign Affairs Manual during the time that

 6    you were working on these applications?

 7            A.   I do not -- I don't remember.  I don't

 8    recall.

 9            Q.   You don't remember if you looked at the

10    Foreign Affairs Manual?

11            A.    I don't recall this specifically.  I do

12    know that -- I do recall that -- actually, I will

13    say that I do recall looking at this -- the -- the

14    FAM provision, specifically.  Because I got --

15    because -- it was either Maggie or Larilyn,

16    someone -- I don't remember who -- sent it to me.

17    And I was looking at it as -- as I conducted the

18    interview because you can kind of go step by step

19    and say, "Okay.  Does this apply to you?" or

20    whatnot.  So I -- I do remember having that up.

21            Q.   You specifically remember looking at a

22    FAM provision during the time that you were

23    interviewing the Dvash-Banks family's adults?

24            A.   Yes.

25            Q.   Sitting here today, do you remember the
```

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nalline Pances Day on 12/20/2018

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 02/08/19   Page 35 of 39   Page
ID #:1483

Page 232

 1          Q.    Do you understand that it was -- it

 2    would have been necessary, and it was necessary,

 3    regardless of whether the children were born in

 4    wedlock or out of wedlock -- let me start over.

 5    I'm sorry.

 6               Regardless of whether the children were

 7    born in wedlock or out of wedlock, was it necessary

 8    for the children to have a biological connection to

 9    the AMCIT father in order for the children to

10    acquire citizenship at birth?

11          A.    Yes.

12          Q.    So is it your testimony that it would

13    not have made a difference to your final

14    adjudication decision for these cases whether you

15    had considered the children to be born in wedlock

16    or whether you had considered them to be born out

17    of wedlock?

18          A.    Yes, that's correct.

19          Q.    To be clear, it would not have made a

20    difference?

21          A.    Correct, it would not have made a

22    difference.

23          Q.    Would it have made a difference whether

24    you had adjudicated these applications under INA

25    301 versus INA 309 for these cases?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Plaintiffs' Partial Summary Judgment Exhibit B
Page 103

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 01/03/19   Page 36 of 39   Page ID #:1484

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nadine Frances Day on 12/20/2018                                    Page 233

1         A.    No, it would not have made a
2    difference.
3         Q.    Why not?
4         A.    Because the biological connection is
5    still required.
6         Q.    And your understanding that the
7    biological connection is required, what is that
8    understanding based on?
9         A.    It's based on the FAM, what I read in
10   the FAM.
11        Q.    Is it based on anything else?
12        A.    No.
13        Q.    Was that something that you needed to
14   seek clarity from, from your supervisor?
15        A.    No.
16        Q.    Was it something that you needed to
17   consult with Maggie Ramsay about?
18        A.    No.
19        Q.    Was that the -- would you describe the
20   lack of a -- sorry.  Let me start over.
21              When you're talking about the FAM --
22   when you've been talking today at various points
23   about the FAM, do you understand the FAM to be
24   something that is completely separated from the
25   Immigration and Nationality Act of 1952?

Plaintiffs' Partial Summary Judgment Exhibit B
Page 104

1    the legal guardians of the children, the legal

2    parents of the children the same individuals whose

3    names would appear on a CRBA that was issued by the

4    consulate?

5         A.   As far as my recollection goes, the

6    legal guardians would be listed on the CRBA in

7    common practice.

8         Q.   You stated earlier that you didn't

9    specifically remember the text of the provisions of

10   INA Sections 301 or 309; is that correct?

11        A.   Yes, that's correct.

12        Q.   And you also stated in response to one

13   of Ms. Marcus's questions that, in your opinion, it

14   would not have made a difference whether you had

15   adjudicated E.J.'s application under Section 301

16   versus Section 309?

17        A.   Based on my understanding, yes.

18        Q.   What is the basis for your opinion that

19   it would not have made a difference whether you had

20   adjudicated E.J.'s application under Section 301

21   versus 309?

22        A.   Because both require the biological

23   link -- both require the biological connection.

24        Q.   And is your understanding that the

25   basis for that requirement is a provision in the

Case 2:18-cv-00523-JFW-JC   Document 83-5   Filed 03/02/19   Page 38 of 39   Page ID #:1486

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Natline Frances Day on 12/20/2018                                    Page 278

1    FAM?

2          A.    Yes.

3          Q.    You stated earlier that you don't know

4    which FAM provisions you specifically consulted on

5    the day of the Dvash-Banks family's interviews; is

6    that correct?

7          A.    Correct.

8          Q.    And you also stated earlier that you

9    don't recall which provisions of the INA -- strike

10   that.

11               You also testified earlier that you

12   don't recall specifically which provisions of the

13   INA are incorporated into the FAM; is that correct?

14         A.    That's correct.

15         Q.    You also testified earlier in response

16   to one of Ms. Marcus's questions that you do recall

17   that the INA was incorporated into the FAM

18   provisions that you reviewed on the day of the

19   Dvash-Banks family's interview; is that correct?

20         A.    I don't recall saying that

21   specifically.  I think the question was more broad.

22   Were there parts of the INA in the FAM?  And there

23   are.

24         Q.    So is it possible -- if I were to

25   represent to you that you stated earlier in sum and

Andrew Mason Dvash-Banks, et al. vs The United States Dept. of State, et al.
Terri Nathine Frances Day on 12/20/2018                                Page 290

```
 1   STATE OF NORTH CAROLINA

 2   COUNTY OF MECKLENBURG

 3

 4              REPORTER'S CERTIFICATE

 5        I, Cindy A. Hayden, a Notary Public in

 6   and for the State of North Carolina, do hereby

 7   certify that there came before me on Thursday,

 8   December 20, 2018, the person hereinbefore named,

 9   who was by me duly sworn to testify to the truth

10   and nothing but the truth of his knowledge

11   concerning the matters in controversy in this

12   cause; that the witness was thereupon examined

13   under oath, the examination reduced to typewriting

14   under my direction, and the deposition is a true

15   record of the testimony given by the witness.

16        I further certify that I am neither attorney

17   or counsel for, nor related to or employed by, any

18   attorney or counsel employed by the parties hereto

19   or financially interested in the action.

20        IN WITNESS WHEREOF, I have hereto set my

21   hand, this the 21st day of December, 2018.

22

23

24   _____
     CINDY A. HAYDEN, RMR, CRR
25   Notary Public No. 20020910053
```

Plaintiffs' Partial Summary Judgment Exhibit B
Page 107