# EXHIBIT E

In the Matter Of:

Andrew Mason Dvash-Banks, et al v.

The United States Department of State, et al

---

LARILYN REFFETT

December 06, 2018

---

neesons

77 King Street West, Suite 2020
Toronto, ON M5K 1A2
1.888.525.6666 | 416.413.7755

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al
LARILYN REFFETT on December 06, 2018
Case 2:18-cv-00523-JFW-JC  Document 83-8   Filed 01/07/19   Page 3 of 28   Page ID #:1558

```
1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3

4   ANDREW MASON DVASH-BANKS and)

5   E████ J████ D████-B████,    ) COMPLAINT FOR

6                Plaintiffs, ) DECLARATION AND

7                            ) INJUNCTIVE RELIEF

8           v.              )

9   THE UNITED STATES DEPARTMENT) Docket No. Case

10  OF STATE, and THE HONORABLE ) 2:18-cv-00523-JFW-JCx

11  MICHAEL R. POMPEO, Secretary) JFW

12  of State,                   )

13              Defendants.)

14  ---------------------------)

15

16  --- This is the Transcript of the Audio-Recorded

17  Deposition of LARILYN REFFETT, taken at the U.S.

18  Consulate, 360 University Avenue, Toronto, Ontario,

19  MSG 1S4, on the 6th day of December, 2018.

20

21              --------

22  Reported By:  Deana Santedicola, CSR (Ont.), RPR,

23              CRR

24

25
```

Plaintiffs' Partial Summary Judgment Exhibit E
Page 175

Page 2

```
 1    A P P E A R A N C E S:

 2    FOR THE PLAINTIFFS, ANDREW MASON DVASH-BANKS

 3    and E██████ J██████ D███████-B██████:

 4    SULLIVAN & CROMWELL LLP

 5    PER:  Jessica Klein, Esq.

 6          Lauren M. Goldsmith, Esq.

 7          125 Broad Street

 8          New York, New York 10004-2498

 9    Tel.  1-212-558-4000

10    Email:  goldsmithl@sullcrom.com

11            kleinj@sullcrom.com

12

13    FOR THE DEFENDANTS, THE UNITED STATES DEPARTMENT

14    OF STATE, AND THE HONOURABLE MICHAEL R. POMPEO,

15    SECRETARY OF STATE:

16    UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION

17    FEDERAL PROGRAMS BRANCH

18    PER:  Lisa Zeidner Marcus, Esq.

19          1100 L Street NW, 11th Floor,

20          Washington, DC, 20530

21    Email:  lisa.marcus@usdoj.gov

22

23    Also Present:  Jeremy Weinberg, U.S. Department of

24    State, Office of the Legal Advisor

25
```

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al
LARILYN REFFETT on December 06, 2018
Case 2:18-cv-00523-JFW-JC   Document 83-8   Filed 01/07/19   Page 5 of 28   Page ID
#:1560

```
 1                    I N D E X

 2


 3    WITNESS:   LARILYN REFFETT

 4                                         PAGE

 5    EXAMINATION BY MS. KLEIN.............    6

 6    REDIRECT EXAMINATION BY MS. ZEIDNER

 7    MARCUS...............................  201

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

www.neesonsreporting.com
(416) 413-7755   (888) 525-6666

Page 6

1   Goldsmith of Sullivan & Cromwell.  I'm also

2   representing Andrew and B█████  D█████-B█████.

3                MS. ZEIDNER MARCUS:  I am Lisa Zeidner

4   Marcus, trial attorney, U.S. Department of Justice.

5   I represent the Defendants in this matter, the U.S.

6   Department of State and the Secretary of State who

7   was sued in his official capacity.

8                MR. WEINBERG:  Jeremy Weinberg,

9   Department of State, Office of the Legal Advisor,

10  also representing the U.S. government in this

11  matter, Department of State.

12               AUDIO-RECORDER:  Would the reporter

13  please swear or affirm the witness.

14               LARILYN REFFETT; AFFIRMED.

15               EXAMINATION BY MS. KLEIN:

16        Q.   Good morning, Ms. Reffett.

17        A.   Good morning.

18        Q.   As you heard, I am Jessica Klein

19  and I am representing the Plaintiffs in this

20  matter.  Have you ever been deposed before?

21        A.   No.

22        Q.   And have you ever testified in

23  Court?

24        A.   No.

25        Q.   Have you ever given testimony

Page 30

1          Q.    Did your training that you have

2    received in your career include training you in the

3    policies of the Toronto Consulate in adjudicating

4    applications for U.S. passports?

5               A.    There is nothing Toronto-specific

6    in training.

7               Q.    So is it correct then that the

8    policies of the United States State Department are

9    one and the same with the policies of the Toronto

10   Consulate in the adjudication of applications for

11   U.S. passports?

12              A.    The adjudications here in Toronto

13   are done solely based on the guidance and the

14   references that we are provided by the Department

15   of State.

16              Q.    Is there any Toronto

17   Consulate-specific guidance concerning

18   adjudications of U.S. passports?

19              A.    No.

20              Q.    What about Canada-specific?

21              A.    No.

22              Q.    So is it correct then that the

23   training you have received on the adjudication of

24   passport applications has been training that, to

25   your understanding, would apply in any consular

Plaintiffs' Partial Summary Judgment Exhibit E
Page 179

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al
MARILYN REFFETT on December 06, 2018

Page 34

```
 1    for Consular Reports of Birth Abroad?
 2            A.   Yes, when I mentioned the
 3    adjudication piece, we don't separate.  Those
 4    appointments are all at the same time.  You just
 5    take whatever comes as it comes in.
 6            Q.   So am I correct that in addition
 7    to adjudications randomly selected for your review,
 8    you sometimes adjudicate applications for Consular
 9    Reports of Birth Abroad?
10            A.   I do.
11            Q.   And do you make determinations of
12    who is a U.S. citizen?
13            A.   Yes, that is part and parcel of
14    the adjudication.
15            Q.   Is a determination of who is a
16    U.S. citizen part and parcel of adjudicating a
17    Consular Report of Birth Abroad?
18            A.   That is the purpose of the
19    Consular Report of Birth Abroad, is to determine
20    whether someone is a U.S. citizen.
21            Q.   And is the purpose of a Consular
22    Report of Birth Abroad to determine whether someone
23    is a U.S. citizen from birth?
24            A.   Correct.
25            Q.   And is the determination of U.S.
```

Plaintiffs' Partial Summary Judgment Exhibit E
Page 180

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al
Case 2:18-cv-00523-JWS Document 83-8 Filed 01/07/19 Page 9 of 28 Page ID
#:1564
MARILYN REFFETT on December 06, 2018

Page 60

1    I mean, it is just a chart that just kind of has

2    the relevant scenario and then the FAM section that

3    you would consult for that.

4            Q.    Okay.  Is it accurate to say that

5    in adjudicating U.S. passport applications, the

6    Toronto Consulate applies the Foreign Affairs

7    Manual?

8            A.    Well, we comply with the

9    instructions in the Foreign Affairs Manual, yes.

10           Q.    All right.  Is there any way in

11   which you are aware that the Toronto Consulate does

12   not comply with the Foreign Affairs Manual in the

13   adjudication of U.S. passport applications?

14           A.    No.

15           Q.    And is that also the case for the

16   application of Consular Reports for Birth Abroad?

17           A.    Correct.

18           Q.    So the Toronto Consulate applies

19   the Foreign Affairs Manual in adjudicating Consular

20   Reports for Birth Abroad?

21           A.    We consult the Foreign Affairs

22   Manual and follow all of the relevant guidance that

23   we are required to follow.

24           Q.    Is there any way in which you are

25   aware that the Toronto Consulate does not follow

Plaintiffs' Partial Summary Judgment Exhibit E
Page 181

Page 61

1    the Foreign Affairs Manual in adjudicating

2    applications for Consular Reports of Birth Abroad?

3              A.    No.

4              Q.    And am I correct that the same is

5    true for U.S. passport applications?

6              A.    Correct.

7              Q.    Is there a practice in the Toronto

8    Consulate of an officer placing her initials on

9    each page of a passport application that she

10   adjudicates?

11             A.    Not on each page that you

12   adjudicate, but we are required when we have

13   certified true copies, we are required as the

14   officer to put our initials to verify that we saw

15   the original document and that it matches the copy.

16             Q.    So am I correct that if an officer

17   places her initials on a page of a U.S. passport

18   application file, that means to you that she has

19   consulted the original document and compared it to

20   the copy for accuracy between the two?

21             MS. ZEIDNER MARCUS:  I would like to

22   consult with my colleague about a potential

23   privilege and briefly go off the record.

24             AUDIO-RECORDER:  We are going off the

25   record at 11:39 a.m.

Plaintiffs' Partial Summary Judgment Exhibit E
Page 182

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al
MARILYN KEFFER on December 03, 2018
Case 2:18-cv-00523-JFW-JC   Document 83-8   Filed 01/07/19   Page 11 of 28   Page
ID #:1566

Page 65

```
 1    looks like it.

 2                 Q.   And whose name is listed as the

 3    person sending or writing this letter?

 4                 A.   The letter was signed by Terri

 5    Day.

 6                 Q.   And is it your understanding that

 7    B████ D████-B████'s applications for U.S. passport

 8    and Consular Report of Birth Abroad were denied?

 9                 A.   Yes.

10                 Q.   Who adjudicated those

11    applications?

12                 A.   It is my understanding that Terri

13    Day adjudicated those two cases.

14                 Q.   And did Ms. Day have authority to

15    make the ultimate determination of whether to deny

16    those applications?

17                 A.   Yes, she did.

18                 Q.   And was she employed at the

19    Toronto Consulate on March 2nd, 2017?

20                 A.   Yes.

21                 Q.   Okay.  And what reason or reasons

22    does this document cite as the basis for those

23    denials?

24                 MS. ZEIDNER MARCUS:  Objection, form,

25    foundation.
```

Plaintiffs' Partial Summary Judgment Exhibit E
Page 183

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al
MARILYN REFFETT on December 06, 2018
Case 2:18-cv-00523-JFW-JC   Document 83-8   Filed 01/07/19   Page 12 of 28   Page ID #:1567

Page 67

1  a U.S. passport and Consular Report of Birth

2  Abroad?

3          A.    Making the determination?  What do

4  you mean by that?  The case was adjudicated by

5  Frankie Day -- Terri Day in this case.

6          Q.    Am I correct that it is your

7  understanding that Ms. Day interviewed E███ and

8  the Dvash-Bankses concerning these applications?

9          A.    My understanding is that Terri Day

10 did in fact interview the Dvash-Banks family, and

11 based on her interview and based on the follow-up

12 information that she requested, she denied these

13 applications.

14         Q.    And from the period of when the

15 applications were initiated through March 2nd,

16 2017, when this letter was dated, were you

17 personally involved at all in these applications or

18 their adjudication?

19         A.    The day of the interview, Frankie

20 asked me about -- she told me that she was going to

21 request DNA testing.  She asked me how she went

22 about doing that.  I explained to her that she just

23 needs to ask a local staff to draft the letter.

24 There is standard language that explains how to

25 obtain a DNA test that is -- that meets the

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al
MARILYN REFFETT on December 06, 2018

Page 68

1    requirements of the Department of State.

2              She asked for that letter and then

3    presented it to the family, so I was aware at that

4    point that she was requesting the DNA evidence.  At

5    that point, a case will go into pending status.

6    Cases generally are allowed to remain in that

7    status for up to 90 days without any further

8    action.  At the 90-day mark, we will review again

9    to see whether or not we have received the

10   information we have requested and try and proceed

11   with the case.

12             Q.   Ms. Day spoke to you on the date

13   when the Dvash-Banks family came in about

14   requesting DNA testing; is that correct?

15             A.   Yes, she asked me to verify how

16   the procedure works, what documentation needs to

17   happen, because we aren't in charge of the DNA

18   program as the adjudicating officers, so she wanted

19   to verify that she was getting the right letter,

20   giving them the right information about how to

21   proceed with that testing.

22             Q.   Did Ms. Day share with you the

23   facts surrounding these applications for E██████?

24             A.   She told me that she had a case

25   that involved artificial reproductive technology.

Page 69

1    She said that it was not clear from the

2    documentation who was biologically related to who

3    in the case and she was requesting the DNA in order

4    to establish that.

5                   Q.   Did you ever meet any members of

6    the Dvash-Banks family?

7                   A.   No.

8                   Q.   Did you ever see any members of

9    the Dvash-Banks family?

10                  A.   I might have seen them through the

11   interview windows.  I generally walk up and down my

12   section to check on how things are going and, you

13   know, what is moving and what is not moving.

14                  If they need additional assistance, for

15   example, if there are too many cases and we need

16   more interviews, I might be sort of checking on

17   that, but nothing that would have stood out to me

18   or that I realized, I mean, that I had seen this

19   particular family, no.

20                  Q.   Did Ms. Day inform you that the

21   Dvash-Banks family includes a same-sex couple?

22                  A.   She did.

23                  Q.   What did Ms. Day tell you?

24                  A.   She told me that she, as I

25   mentioned, she had a case involving artificial

Plaintiffs' Partial Summary Judgment Exhibit E
Page 186

Andrew Mason Dyash-Banks, et al v. The United States Department of State, et al
MARILYN REFFETT on December 06, 2018

Page 72

1    Oftentimes in those situations, the

2  officers will make sure that all of the other

3  officers know that this is pending because if, for

4  example, the documentation came in while, for

5  example, Frankie was on leave, we would need to be

6  sure that we understood what we were waiting for.

7    Q.   I would like to focus on your

8  conversations with Ms. Day about these applications

9  for the next several questions.

10    When Ms. Day first spoke with you about

11  E█████'s applications, had she already decided to

12  give them pending status?

13    A.   When she came to me, she explained

14  to me that the documentation did not establish the

15  biological relationship, so she was going to

16  request the DNA testing and she asked me about the

17  proper procedure for doing that.

18    Q.   And did she ask you only what the

19  procedure was or also whether to seek DNA testing?

20    A.   I don't recall the specific

21  details of the conversation, but what the result

22  was, and what -- I mean, what I recall was that I

23  explained to her how to do this and this is -- you

24  know, she told me I don't have in front of me in

25  this interview or this application the information

Plaintiffs' Partial Summary Judgment Exhibit E
Page 187

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al
CARILYN REFFETT on December 06, 2018
Case 2:18-cv-00523-JFW-JC   Document 83-8   Filed 01/07/19   Page 16 of 28   Page
ID #:1571

Page 77

1          Q.    And are you referring to being

2    notified of an inquiry that was made with

3    congressional staff?

4          A.    Generally speaking, if

5    congressional staff have received an inquiry from a

6    member of the public about a case or a consular

7    service that is taking place at your post, that

8    staff will email you and ask you either for comment

9    or will just give you the just FYI this is what we

10   have received.

11         I know we did have correspondence from

12   a congressional office, but I don't remember the

13   date of it.

14         Q.    Is it your understanding that when

15   Ms. Day signed this letter on March 2nd, 2017, the

16   adjudication was final?

17         A.    Yes, that is my understanding.

18         Q.    And sitting here today, do you

19   remember any involvement you had in the

20   adjudication or processing of E█████'s applications

21   for a passport or Consular Report of Birth Abroad

22   other than the three brief conversations with Ms.

23   Day that you described?

24         A.    No.

25         Q.    Okay.  Have you read E█████'s

1    application materials?

2               A.   No.

3               Q.   So you don't have any view as to

4    the authenticity or completeness of the application

5    that was filed?

6               A.   I have not seen the application.

7    I have only heard what Frankie told me about the

8    facts that she was presented.

9               Q.   So sitting here today, what is

10   your understanding of why Frankie Terri Day denied

11   E█████'s applications for a U.S. passport and

12   Consular Report of Birth Abroad?

13              A.   My understanding is that the

14   applicants did not establish the biological

15   relationship between the American citizen parent

16   and the child, which is required by the Immigration

17   and Nationality Act.

18              Q.   And are you aware of any other

19   reason why E█████'s applications were denied?

20              A.   No.

21              Q.   And as you read the document

22   marked DVASH-BANKS30, Plaintiffs Deposition Exhibit

23   1, do you read it to state that there was no other

24   reason for the denial of the applications?

25              A.   That is correct.  I read it to

Case 2:18-cv-00523-JLR Document 83-8 Filed 01/07/19 Page 18 of 28 Page ID #:1573

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al.
MARILYN REFFETT on December 06, 2018

Page 79

1    state that the denial was based on the

2    non-establishment of the blood relationship

3    required by the Immigration and Nationality Act.

4               Q.   Do you know if anyone was involved

5    in the adjudication of those applications other

6    than Ms. Day?

7               A.   In the adjudication, no.

8               Q.   Do you know if anyone was involved

9    in processing the applications other than Ms. Day?

10              A.   I do know that the same way that I

11   provided guidance on how to request a DNA test,

12   that my colleague Margaret Ramsay also provided the

13   relevant FAM citations, the Foreign Affairs Manual,

14   so that Frankie could consult if she wanted to, if

15   she needed to, the appropriate sections of the

16   Foreign Affairs Manual.

17              Q.   Do you know of anyone else who was

18   involved?

19              A.   No.  Well, I mean, if you are

20   talking about the adjudication, I mean, there would

21   have been the receipt of the DNA, which that gets

22   received by the Fraud Prevention Officer, but it is

23   kind of a moving the mail.

24              Q.   And do you know in what month and

25   year E████'s applications were submitted to the

Page 87

1    citizen was the parent, that application was

2    approved.

3              Q.   And were you personally involved

4    in the adjudication of that application?

5              A.   No.

6              Q.   Did Ms. Day ever speak with you

7    concerning the adjudication of that application?

8              A.   Not separately.  The two

9    applications were part of the same set of

10   circumstances, so when she informed me that she was

11   requesting DNA for one, she informed me she was

12   requesting DNA for the other as well.  When the DNA

13   results came back and she informed me of the

14   results, she told me the results for each child.

15             Q.   Is it your understanding that Ms.

16   Day was the person who granted A█████'s application

17   for a U.S. passport?

18             A.   It is my understanding that she

19   approved that application.

20             Q.   And is the same true for A█████'s

21   application for a Consular Report of Birth Abroad?

22             A.   Yes.

23             Q.   Under what circumstances does the

24   consulate ask for DNA evidence in support of an

25   application for a U.S. passport?

1    adjudicating that case would then have reference

2    material.  They would be able to reference the

3    previous application so that they could see what

4    happened and where that case was -- how it

5    terminated.

6              Q.   Does Ms. Day's letter dated March

7    2nd, 2017, reflect a final adjudication of B████'s

8    applications for a U.S. passport and Consular

9    Report of Birth Abroad?

10             A.   As far as the applications that

11   were submitted here in Toronto, that letter

12   absolutely is a final determination.  In the

13   second-to-last paragraph:

14                  "[...] therefore the

15             applications are denied."

16             That is the termination of that case

17   from that point forward.

18             Q.   So how would you describe the

19   status of that case for the Toronto Consulate

20   today?

21             A.   The case was denied and it is

22   closed.

23             Q.   And does your office prepare

24   additional paperwork concerning the adjudication of

25   a U.S. passport application beyond this letter?

Case 2:18-cv-00523-JWS   Document 83-8   Filed 01/07/19   Page 21 of 28   Page ID #:1576
Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al.
CARILYN REFFETT on December 06, 2018

Page 121

```
1    earlier, and it is case-specific.  Medical
2    documentation is one way that we can try and get to
3    a point where we understand the biological
4    relationships, but also in the interview that will
5    be a question that will be asked.
6              Based on the answers and based on the
7    conversation that the officer has with the
8    applicant, that will determine whether -- what
9    steps need to be taken next and what that entails,
10   if it entails DNA or something else.
11             Q.   Is there any example or scenario
12   you are aware of in which two married men have
13   applied for a U.S. passport for their child born
14   abroad and not been asked to evidence the genetic
15   relationships of the child?
16             A.   The biological relationship has to
17   be established, as we noted in the letter that you
18   have provided as Exhibit 1, the Immigration and
19   Nationality Act requires a blood relationship.  We
20   have to establish that blood relationship in every
21   case.
22             Q.   What is your understanding of in
23   what cases the Immigration and Nationality Act
24   requires a blood relationship between a child born
25   outside of the United States and a U.S. citizen?
```

Page 122

1        **A.    If the U.S. citizen is**

2  **transmitting citizenship, there must be a**

3  **biological relationship between the child and the**

4  **parent, unless in the case of a female parent, if**

5  **you are the gestational parent, that also meets the**

6  **requirements.    There must be a biological or**

7  **gestational relationship.**

8              MS. ZEIDNER MARCUS:  Can we go off the

9  record for a moment for me to confer with my

10  colleague, please.

11              AUDIO-RECORDER:  We are going off the

12  record at 2:25 p.m.

13              -- RECESSED AT 2:25 P.M.

14              -- RESUMED AT 2:27 P.M.

15              AUDIO-RECORDER:  We are now back on the

16  record at 2:27 p.m.

17              BY MS. KLEIN:

18          Q.   Ms. Reffett, is it correct that

19  before we very briefly went off the record, you

20  testified that with the exception of a gestational

21  parent, a U.S. citizen must have a biological tie

22  to his child in order to transmit citizenship?

23          A.    To transmit citizenship from

24  birth, yes, that is correct.

25              Q.   And that is your understanding of

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al
MARILYN REFFETT on December 06, 2018

Page 124

1    allow that U.S. citizen to confer citizenship upon

2    his child?

3              A.   It is not the Toronto Consulate.

4    This would be the Immigration and Nationality Act.

5    It will require that the biological relationship is

6    established.  Without the biological relationship,

7    the American citizen parent cannot transmit

8    citizenship.

9              Q.   And you understand the Immigration

10   and Nationality Act to require that even if the

11   child's legal parents are married to each other?

12             A.   That is not my understanding that

13   that is the guidance from the Department of State.

14   The Department of State, as referenced on our

15   website, as in all of the information that is

16   publicly available, requires that there be a

17   biological relationship between the U.S. citizen

18   parent and a child who is not born in the United

19   States.

20             Q.   Regardless of whether the parents

21   are married?

22             A.   Correct.

23             Q.   And it is your understanding that

24   that is what the INA requires?

25             A.   That is the Department's guidance

Plaintiffs' Partial Summary Judgment Exhibit E
Page 195

Page 125

1    as to the Immigration and Nationality Act.  We must

2    establish a biological relationship between the

3    U.S. citizen parent and the child.

4              Q.   Are you aware of any difference

5    between the relevant provisions of the INA and of

6    the guidance from the State Department concerning

7    this issue?

8              A.   No.

9              Q.   And I believe you testified

10   earlier today that in adjudicating most passport

11   applications, the Toronto Consulate does not review

12   any legal or policy materials; is that correct?

13             A.   In many cases, it is not required.

14   Most of the cases that we see here fall within a

15   very limited range of, you know, circumstances, the

16   things that we see on a very regular basis, and

17   doesn't require us to reference the Foreign Affairs

18   Manual every time that we see that type of case.

19             Q.   And does the Toronto Consulate

20   ever reference the INA in adjudicating applications

21   for U.S. passports?

22             A.   As I previously stated, the INA is

23   one source of information.  If we have questions

24   about the case that is in front of us or the

25   parameters, we could consult with the INA.  Every

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al
CARILYN KEFFE43 on December 06, 2018

Page 156

```
1              The reason that that requirement is
2    specifically listed is to remind people who may not
3    remember that one random date so that when they
4    need to look at it and say, wait, what was the date
5    that the law changed, it is right there for them.
6    They can see very quickly what the differences are
7    between those two requirements.
8              The blood relationship did not change
9    on that date.  It has always existed.
10             Q.   A blood relationship has always
11   been required for a child born in wedlock to one
12   U.S. citizen parent?
13             A.   If the U.S. citizen parent is --
14   yes, the one U.S. citizen parent has to have the
15   blood relationship in order to transmit the
16   citizenship to the child.  That is applicable
17   before November 14th, 1986, as well as after
18   November 14th, 1986, which is why it is not spelled
19   out here, because that was consistent.
20             Q.   And is there an exception for a
21   woman who is a gestational parent without a
22   biological relationship to the child?
23             A.   Well, when I say a "biological,"
24   because we have been talking about fathers and, you
25   know, this particular, the row that you have
```

Case 3:18-cv-00523-JLS-JLB Document 83-8 Filed 01/07/19 Page 26 of 28 Page
ID #:1581

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al.
CARILYN KEFFER on December 06, 2018

Page 157

1    highlighted "Amcit Father out of Wedlock," we

2    weren't discussing mothers.

3                For mothers, the relationship has to be

4    either biological or gestational.

5                Q.   And is the allowance for a

6    gestational mother who is not biologically related

7    to her child, as you understand it, in the INA?

8                A.   I have not referenced the section

9    of the INA that would spell that out in some time.

10   I have seen the guidance from the Department.  That

11   isn't one that I have had to pull up recently to

12   consult.  I can't say with any confidence that I,

13   again, can recite that section of the INA.

14               Q.   Is it the case that since you have

15   worked in the Toronto Consulate, there has been

16   allowance of a gestational mother U.S. citizen to

17   confer citizenship on a child who she is not

18   biologically related to?

19               A.   I don't know about the word

20   "allowance."  Whether somebody has transmitted and

21   had approved an application to transmit citizenship

22   as a gestational mother, I can't say for certain.

23   I suspect yes.  This wouldn't be something that was

24   out of the unusual.

25               But again, I don't keep statistics on

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al
MARILYN REFFETT on December 06, 2018

Page 183

1    about something that you are specifically looking

2    at that might have changed, because there have been

3    substantial changes.

4           Q.   Are you aware of any changes to

5    the biological relationship to a U.S. citizen

6    parent requirement that have changed during your

7    tenure at the Toronto Consulate?

8           A.   I don't know the exact dates of

9    changes as they have come and gone.  I do -- we

10   have touched on this issue earlier, but we have

11   talked about the fact that the biological

12   relationship does now include a gestational mother

13   role, for example.

14          Being a gestational mother does in fact

15   meet the biological -- does in fact qualify as a

16   biological relationship.  That has been a change,

17   but when it happened, I honestly don't know.  It is

18   not something I keep track of.

19          Q.   And other than the treatment of

20   gestational mothers who are not genetically related

21   to their children, are you aware of any other

22   changes that have been made at the State Department

23   in the requirements of a biological tie between a

24   U.S. citizen and his child?

25          A.   I am not specific -- I don't know

Andrew Mason Dvash-Banks, et al v. The United States Department of State, et al
LARILYN REFFETT on December 06, 2018

                                                                    Page 212
1                    REPORTER'S CERTIFICATE

2

3                    I, DEANA SANTEDICOLA, RPR, CRR,

4     CSR, Certified Shorthand Reporter, certify;

5                    That the foregoing proceedings were

6     taken before me at the time and place therein set

7     forth, at which time the witness was put under oath

8     by me;

9                    That the testimony of the witness

10    and all objections made at the time of the

11    examination were recorded stenographically by me

12    and were thereafter transcribed;

13                   That the foregoing is a true and

14    correct transcript of my shorthand notes so taken.

15

16

17                   Dated this 12th day of December, 2018

18

19    _____

                                       www.neesonsreporting.com
20    NEESON COURT REPORTING INC.     (416) 413-7755  (888) 525-6666

21    PER: DEANA SANTEDICOLA, RPR, CRR, CSR

22    CERTIFIED REAL-TIME REPORTER

23

24

25