# EXHIBIT G
# Part 2 of 2

released from all obligations under this Agreement;

(b)    the Gestational Carrier will be entitled to terminate this Agreement and retain any reimbursement of any Special Expense Amounts paid or payable up to and including the date of Early Miscarriage, Miscarriage, Requested Termination or Still-Birth; and

(c)    the Gestational Carrier shall be entitled to reimbursement of the Special Expenses for TWO (2) weeks after the date of an Early Miscarriage or FOUR (4) weeks after the date of a Miscarriage, Requested Termination or Still-Birth.

25.2    If the Intended Parents choose not to terminate this Agreement after an Early Miscarriage, Miscarriage, Requested Termination or Still-Birth, the Term of the Agreement shall continue and not be at an end, but the period for reimbursement of the Special Expense Amount shall be as set out above and shall be reset to the maximum Special Expense reimbursement of Twenty Thousand Dollars ($20,000) and shall resume TWO (2) weeks prior to the next Transfer. If the Pregnancy ends in a Full Term Still-Birth without the fault of the Gestational Carrier, the Agreement shall terminate on the day which is SIX (6) weeks after the date of the Full Term Still-Birth.

25.3    Notwithstanding anything set out in this Agreement, if the Pregnancy is terminated, results in a Still-Birth, results in a Full-Term Still Birth, or produces a Child that has a congenital abnormality or defect as a result of the negligent action or omission of the Gestational Carrier, or if the Gestational Carrier materially breaches this Agreement, the Gestational Carrier shall return to the Intended Parents an amount equal to the Special Expenses reimbursed to the Gestational Carrier within FIVE (5) days of a demand therefor, without prejudice to the Intended Parents' rights at law and pursuant to this Agreement to seek damages from the Gestational Carrier.

## PART XXVI
## SPECIAL EXPENSES

26.1    The Intended Parents will reimburse the Gestational Carrier for the following out of pocket expenses incurred by the Gestational Carrier in connection with the surrogacy to a maximum of Twenty Thousand Dollars ($20,000.00 CDN) inclusive of all taxes (the "**Special Expense Amount**") for all such expenses:

(a)    medical, pharmaceutical and laboratory expenses incurred by the Gestational Carrier as a result of the Transfer, Pregnancy or Birth not otherwise covered by the Ontario Health Insurance Plan ("**OHIP**") or any private health care insurance plan under which she is covered. However, it is understood and agreed that the Intended Parents will pay all expenses for the I.V.F. treatment directly to the Clinic and this cost will not be included in the Special Expense Amount;

(b)    the amount actually expended by the Gestational Carrier for groceries, prepared food and meals for her own consumption commencing two weeks prior to the date

Dvash-Banks and Adams Surrogacy Agreement | Final Version

**TERRI N. DAY**
VICE CONSUL OF THE
UNITED STATES OF AMERICA

**Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 043**

of the first Transfer and ending on the expiration or earlier termination of the Agreement;

(c) a reasonable amount for automobile expenses incurred for local travel at the request of the Intended Parents or made necessary for the performance of her obligations under this Agreement calculated at a rate of $0.54 per kilometre travelled and all related parking costs;

(d) communication costs including, without limitation, the costs of an internet account, cellular telephone charges, and the costs of acquiring a cellular telephone, and long distance telephone charges, all incurred by the Gestational Carrier in connection with the performance of her obligations under this Agreement;

(e) vitamins and supplements required to maintain a healthy Pregnancy;

(f) child care costs for the Gestational Carrier's ONE (1) dependent child incurred by the Gestational Carrier in connection with the performance of her obligations under this Agreement;

(g) housekeeping, snow shovelling and lawn care costs incurred by the Gestational Carrier in order to reduce the physical strain and incurred by the Gestational Carrier in connection with the performance of her obligations under this Agreement;

(h) counselling for the Gestational Carrier and her ONE (1) dependent child, if so required;

(i) all expenses incurred by the Gestational Carrier for suitable maternity clothing to be worn throughout the Pregnancy and following the Birth, up to a maximum amount of Seven Hundred and Fifty Dollars ($750.00);

(j) a reasonable amount for the Gestational Carrier's wellness expenses including, without limitation, costs incurred for acupuncture, massage, physiotherapy, naturopath, reflexology, chiropractic care, foot care, yoga membership and fitness membership, provided that participation in any of such activities is approved by the Transfer Physician and/or the Attending Physician;

(k) the cost of a private Hospital room for the Gestational Carrier at the time of Birth, if one is available and which expense is not otherwise covered by OHIP or any private health care insurance plan under which the Gestational Carrier is covered; and

(l) such other expenses as may be incurred by the Gestational Carrier as a result of the Pregnancy and as may be approved by the Intended Parents. The Parties agree that if the Gestational Carrier has already incurred expenses to the maximum limit

Dvash-Banks and Adams Surrogacy Agreement | Final Version

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 044

set out in this Section 26.1, the Intended Parents may, in their sole discretion, agree to pay the cost of any such other allowable expenses in addition to the Special Expense Amount.

26.2

(a)     The Parties acknowledge that for the purposes of Section 26, the Gestational Carrier's expenses incurred during the Reimbursable Period (as hereinafter defined) shall be reimbursed to her in accordance with Schedule "A" attached hereto and Part XXVI.

(b)     For the purposes of Section 26.2(c), the **"Reimbursable Period"** shall commence on the date of confirmation of the Pregnancy by blood test results and shall end on the earlier of: (i) the day of termination of the Agreement; (ii) TWO (2) weeks after a Pregnancy ends in Early Miscarriage; (iii) FOUR (4) weeks after a Pregnancy ends in Miscarriage, Requested Termination or Still-Birth; or (iv) SIX (6) weeks after the Birth of a Child.

(c)     The Reimbursable Period shall be divided into TEN (10) stages (individually referred to as a **"Stage"**):

    (i)      the first month after the Second Beta (the **"First Month"**);

    (ii)     the second month after the Second Beta (the **"Second Month"**);

    (iii)    the third month after the Second Beta (the **"Third Month"**);

    (iv)     the fourth month after the Second Beta (the **"Fourth Month"**);

    (v)      the fifth month after the Second Beta (the **"Fifth Month"**);

    (vi)     the sixth month after the Second Beta (the **"Sixth Month"**);

    (vii)    the seventh month after the Second Beta (the **"Seventh Month"**);

    (viii)   the eighth month after the Second Beta (the **"Eighth Month"**);

    (ix)     the ninth month after the Second Beta (the **"Ninth Month"**); and

    (x)      the period commencing on the day after Birth and ending SIX (6) weeks thereafter (the **"Post-Pregnancy"**).

(d)     Notwithstanding anything contained herein to the contrary, the amount of the Special Expenses incurred by the Gestational Carrier and which are eligible for reimbursement by the Intended Parents shall be subject to the maximum amounts set out in the schedule attached hereto as Schedule "A", and subject to Section 25.1, if this Agreement is terminated, the current Stage shall end on the day of

Dvash-Banks and Adams Surrogacy Agreement | Final Version

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

**Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 045**

ADR    FDR

termination.

(e)     If the Special Expenses incurred by the Gestational Carrier in any Stage are less than the maximum set for that Stage, the difference between the maximum allowable and the amount claimed shall be added to the maximum available for the next Stage. By way of an example, the Parties agree that if the maximum Special Expense Amount for the Fourth Month is Three Thousand Dollars and the Gestational Carrier claims expenses of One Thousand Dollars, the unused balance of Two Thousand Dollars will be added to the maximum available to be claimed in the Fifth Month.

(f)     If the Special Expenses incurred by the Gestational Carrier in any Stage exceed the maximum set for that Stage, and if there is no unused balance to be carried forward pursuant to Section 26.2(e) or if there is insufficient unused balance to cover the excess, the amount of the excess can be claimed in the next Stage. By way of an example, the Parties agree that if the maximum Special Expense Amount for the Sixth Month is Three Thousand Dollars, and if there is no unused balance to be added to the Sixth Month maximum, and the Gestational Carrier claims expenses of Four Thousand Dollars, the excess of One Thousand Dollars may be claimed in the Seventh Month.

(g)     If, without fault of the Gestational Carrier, the Child is born: (i) prior to the beginning of the Eighth Month, the current stage shall end on the date of Birth and the post-Birth period shall commence on the day after the Child's Birth. The balance of the Special Expense Amount available for reimbursement for the period commencing on the date of Birth and ending on the last day of the Ninth Month, shall not be available to be claimed and shall be deducted from the cap on the Special Expense Amount on the understanding that the Gestational Carrier's total out of pocket expenses related to the Pregnancy will be available only during the Pregnancy and the recovery period after Birth; or (ii) during the Eighth or Ninth Months of the Pregnancy, the current Stage shall end on the date of Birth and the balance of the Special Expense Amount available for reimbursement for the period commencing on the date of Birth and ending on the last day of the Ninth Month, shall be added to the Post-Pregnancy Stage.

26.3     Subject to the cap set out in Section 26.1, the Gestational Carrier may be reimbursed for all Special Expenses incurred by her for the period commencing on the date of execution of this Agreement by the Gestational Carrier, and ending on the earlier of the date of termination of this Agreement, TWO (2) weeks after a Pregnancy ends in Early Miscarriage, FOUR (4) weeks after a Pregnancy ends in Miscarriage, Requested Termination or Still-Birth or SIX (6) weeks after the Birth of a Child, as the case may be. No receipts may be submitted to the Intended Parents after the end of the Term of the Agreement, and notwithstanding anything contained herein to the contrary, the Intended Parents will have no obligation to reimburse the Gestational Carrier for any Special Expenses which are submitted to the Intended Parents for reimbursement after the expiration of the Term of the Agreement, regardless of when such

Dvash-Banks and Adams Surrogacy Agreement | Final Version

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 046

expenses were incurred.

26.4      In addition to the amounts set out in Section 26.1 (the "**Additional Expense Amount**"), the Intended Parents shall directly cover, or shall reimburse the Gestational Carrier for, all expenses related to the Pregnancy or in the event of the circumstances described below, or so that the Gestational Carrier can fulfill her obligations under this Agreement as follows:

(a)      legal fees and disbursements incurred for obtaining independent legal advice relating to this Agreement to the date of execution of the Agreement, up to a maximum of One Thousand Three Hundred Dollars ($1,300.00) plus HST;

(b)      life insurance premiums as set out in Section 21;

(c)      travel medical insurance premiums as set out in Section 9.10(c);

(d)      all travel costs incurred by the Gestational Carrier in order to attend at the Clinic at the request of the Intended Parents before the Pregnancy and for each Transfer, including the cost of mileage, parking, meals and child care;

(e)      all expenses incurred and related to the Gestational Carrier's participation in any Transfer which she undergoes at the request of the Intended Parents to a maximum of Five Hundred Dollars ($500.00) for general reimbursable expenses, including prenatal vitamins and wellness expenses;

(f)      if the Child is delivered by way of Caesarean delivery, the sum of Three Thousand Five Hundred Dollars ($3,500.00) shall be added to the maximum available for reimbursement in the Post-Pregnancy Stage;

(g)      if a Pregnancy results in a multiple Birth of two or more Children, the sum of Three Thousand Five Hundred Dollars ($3,500.00) shall be added to the maximum available for reimbursement in the period commencing on the first day of the Seventh Month and ending on the last day of the Post-Pregnancy Stage. (Such Additional Expense Amounts shall increase the maximum amount of Special Expenses which may be incurred by the Gestational Carrier in recognition of the additional physical toll which a multiple Pregnancy or Caesarean delivery will exert on the Gestational Carrier and the increased need for assistance which will increase the Gestational Carrier's out of pocket expenses. In the interests of clarity, if two or more Children are born by Caesarean delivery, an additional total of Seven Thousand Dollars ($7,000.00) shall be available for maximum reimbursement under Section 26.4(f) and (g)); and

(h)      if, in the written opinion of the Transfer Physician or the Attending Physician and, at the option of the Intended Parents, in the written opinion of a second physician of their choice, complete bed rest is required in order to protect the health of the Gestational Carrier or the Fetus (the "**Disability**"), the Gestational Carrier will be entitled to reimbursements for the period commencing on the date of the

Dvash-Banks and Adams Surrogacy Agreement | Final Version

**TERRI N. DAY**
VICE CONSUL OF THE
UNITED STATES OF AMERICA

Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 047

physician's order and ending on the earlier of: (i) the date on which the physician lifts the order for bed rest; (ii) the date of Birth, Early Miscarriage, Miscarriage, Requested Termination or Still-Birth; or (iii) the date of termination of this Agreement, for housekeeping and child care expenses for the Gestational Carrier's ONE (1) dependent child to a maximum of Four Hundred Dollars ($400.00) per week under this Section 26.4(h).

26.5    Notwithstanding anything to the contrary, the Parties acknowledge that regulations to Section 12 of the *Assisted Human Reproduction Act*, S.C. 2004, c.2, which govern the reimbursements to the Gestational Carrier under this Agreement, may come into full force and effect during the Term of the Agreement. If so, then all Parties agree to abide by these regulations even where they are not in accordance with this Agreement, so as not to contravene the law. The Gestational Carrier acknowledges and agrees that, as a result, she may not be entitled to reimbursement of all of the categories of expenses set out above.

## PART XXVII
## ADMINISTRATION AND PAYMENT OF SPECIAL EXPENSES

27.1    The Gestational Carrier will obtain receipts for all expenditures and will deliver these receipts to the Intended Parents or to an agent on their behalf on a monthly basis and in any event within FIVE (5) days of a request therefor. If required by law, the Intended Parents will instruct the Clinic, or their agent, to reimburse the Gestational Carrier for all Special Expenses in accordance with the terms of this Agreement. The Parties acknowledge and agree that no Special Expenses will be reimbursed to the Gestational Carrier unless a receipt is provided to the Intended Parents or to their agent for the expenditure.

## PART XXVIII
## REMEDIES FOR BREACH

28.1    If the Gestational Carrier materially fails to perform any of her obligations under this Agreement, or if any of the warranties made by the Gestational Carrier in this Agreement are not true then, without limiting the Intended Parents' remedies in equity or at law, and in addition to such remedies, the Gestational Carrier will, within THIRTY (30) days of request, refund to the Intended Parents all allowable expenses pursuant to the section called SPECIAL EXPENSES, above, which have been reimbursed to the Gestational Carrier by the Intended Parents, to the time of such failure.

28.2    If any Party materially violates any provision contained in this Agreement without legal excuse, such violation will constitute a material breach of this Agreement and, in addition to all other remedies available at law or equity, this Agreement may be terminated forthwith at the option of the aggrieved Party, without further liability on the part of the aggrieved non-breaching Party. If the Intended Parents terminate this Agreement pursuant to this provision, then not only will the Gestational Carrier refund all Special Expenses reimbursed to that date, the Intended Parents will be under no obligation to reimburse the Gestational Carrier for any expenses incurred after the date of the breach.

Dvash-Banks and Adams Surrogacy Agreement | Final Version

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 048

28.3     If the Intended Parents materially breach this Agreement without legal excuse, but the Gestational Carrier has performed her obligations under this Agreement then she will be entitled to have all Special Expenses reimbursed in accordance with this Agreement and the Intended Parents will be responsible for the support of the Child and all of the Child's needs until the Child is no longer entitled to support pursuant to the laws in which the Child is habitually resident. Further, if the Gestational Carrier has made physical custody of the Child available to the Intended Parents, the Intended Parents shall indemnify the Gestational Carrier for any and all amounts she pays in connection with the support of the Child, including without limitation, any legal or other fees and disbursements incurred in connection with the defence thereof.

28.4     A breach will not be considered to be a material breach of contract if it is capable of being cured. If so, the Party committing the breach will be given written notice of the alleged breach and will be given a reasonable period of time to cure it, if possible.

28.5     A breach by either of the Intended Parents will constitute a breach by both of them.

28.6     Without limiting the generality of the foregoing, any breach of warranty contained in this Agreement will constitute a material breach of this Agreement.

28.7     Any breach of this Agreement by the Intended Parents on their part, or the Gestational Carrier on her part, will cause the other of them significant damages, including emotional suffering and trauma and shall provide a cause of action for damages to the wronged Party. Each of the Parties acknowledges that because of the nature of this Agreement, monetary damages may not suffice to remedy a breach of this Agreement and that an injunction and/or any other interim judicial relief may properly be obtained to enjoin and/or address a breach of this Agreement in addition to damages.

## PART XXIX
## ASSUMPTION OF RISK

29.1     The Gestational Carrier assumes and accepts all risks related to the Transfer, Pregnancy and Birth, including but not limited to, the possibility of contracting AIDS, or other transmittable diseases, as a result of the exchange of body fluids and substances and all medical treatments, examinations and procedures involved, and any postpartum complications, and she hereby releases, indemnifies and saves harmless the Intended Parents (and each of them) from all liability, losses, costs and expenses arising, directly or indirectly, from the fulfilment of their obligations under this Agreement including, without limitation, any claim for illness, disfigurement, disability, death, funeral expenses, loss of the Gestational Carrier's future earnings or support for the Gestational Carrier's dependants, damages for loss of enjoyment of life and any other general damages, and for any legal expenses resulting from any dispute of this Agreement by the Gestational Carrier. The Gestational Carrier warrants and represents that she has independently consulted with a physician specializing in fertility procedures and has been made aware of all medical risks (including death), which may result from the procedures contemplated by this Agreement and further acknowledges that she understands these risks. The Gestational Carrier has undergone a thorough medical examination before undergoing any

Dvash-Banks and Adams Surrogacy Agreement | Final Version

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 049

procedure contemplated by this Agreement.

## PART XXX
## CONFIDENTIALITY

30.1

(a)     The Gestational Carrier warrants and represents that she will keep strictly confidential all information respecting the identity of the Intended Parents and the Child, the terms of this Agreement, and information respecting the activities contemplated or carried out under this Agreement (the "**Confidential Information**") forever. The Parties shall be entitled to discuss the terms of this Agreement with their legal advisors and with their counsellor, each of whom shall be advised of and requested to abide by the confidentiality provision in this Agreement. However, the Gestational Carrier shall be entitled to disclose that the Gestational Carrier intends to carry (or is carrying, if she is already Pregnant) a Child for a same-sex couple who require third party reproduction to have a Child, provided that no Confidential Information is disclosed. The Intended Parents also warrant and represent that they will keep strictly confidential all Confidential Information. However, the Gestational Carrier acknowledges and agrees that the Intended Parents shall disclose the existence and nature of this Agreement to the individual(s) whom they have named as Guardian(s) under their respective Wills.

(b)     Except as required by law and except as set out in this Agreement, none of the Parties will disclose the Confidential Information to any person or distribute it in any public forum whatsoever including, without limitation, newspapers, magazines, Internet, television or radio at any time. This covenant will survive the Birth of any Child conceived pursuant to this Agreement and the Parties acknowledge that a claim for damages, as well as injunctive relief may be sought if there is a breach of the warranties contained herein.

30.2     In order to maintain the confidentiality contemplated by this Agreement, if litigation arises out of this Agreement including, but not limited to, court applications for a custody proceeding, each of the Parties to this Agreement and their legal counsel, their heirs and representatives, agree to make all efforts to maintain such confidentiality as is intended by this Agreement including, but not limited to, requesting that the court records be sealed, requesting the court to invoke non-publication orders, requesting the court in its procedures and in the conduct of hearings to maintain confidential the identity of all of the Parties.

## PART XXXI
## ENTIRE AGREEMENT

31.1     This Agreement sets forth the entire Agreement between the Parties pertaining to the subject matter of the Agreement and supersedes all prior agreements, understandings, negotiations and communications, whether written or oral of the Parties.

Dvash-Banks and Adams Surrogacy Agreement | Final Version

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 050

## PART XXXII
## SEVERABILITY

32.1      If any provision of this Agreement is held by the Court to be invalid or unenforceable, the remainder of the provisions of this Agreement will continue in full force and effect and will not be affected, impaired or invalidated thereby.

32.2      If a provision of this Agreement is held by the Court to be invalid or unenforceable due to its scope or breadth then it will be deemed to be valid to the extent permitted by the Court.

## PART XXXIII
## SURVIVAL

33.1      Notwithstanding any termination of this Agreement pursuant to the terms herein, or the expiration of the Term of the Agreement, the Parties agree that the provisions of the sections called REMEDIES FOR BREACH, ASSUMPTION OF RISK and CONFIDENTIALITY, above, will remain in full force and effect after the termination or expiration of the Term of the Agreement, as the case may be.

## PART XXXIV
## WAIVER

34.1      No supplement or modification of this Agreement will be binding unless executed in writing by the Party to be bound. No provision of this Agreement will be deemed waived and no breach excused, unless such waiver or consent excusing the breach is executed in writing by the Party to be charged with such waiver or consent. No waiver by a Party of any provision of this Agreement will be construed as a waiver of a further breach of the same provision and no waiver will be construed as a waiver of any other provision of this Agreement.

## PART XXXV
## GOVERNING LAW

35.1      This Agreement will be governed by, subject to and construed in accordance with the laws of the Province of Ontario.

35.2      The Parties to this Agreement acknowledge and agree that it is their express intention and desire to comply with the laws of the Province of Ontario and the Federal Laws of Canada. If during the Term of this Agreement any obligation of any Party becomes prohibited, the Parties agree that such obligation shall be severed from the Agreement (including, but not limited to, the financial obligations set out in this Agreement) and, so long as all Parties are agreeable, this Agreement shall remain in full force and effect.

35.3      The Parties to this Agreement acknowledge and agree that the procedure contemplated by this Agreement are novel and new and that the law applicable to such procedures and relationships is developing and unsettled. Although the possibility exists that this

Dvash-Banks and Adams Surrogacy Agreement | Final Version

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

**Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 051**

Agreement may be declared void as against public policy, in whole or in part, and may be held unenforceable, in whole or in part, by an Ontario Court, all Parties nonetheless agree that they are entering into this Agreement with the intention of being fully bound by its terms. It is the intention of all Parties to comply with the provisions of the *Assisted Human Reproduction Act*, S.C. 2004, c.2, to the extent such Act has been proclaimed into force.

## PART XXXVI
## INDEPENDENT LEGAL ADVICE

36.1     The Gestational Carrier acknowledges that she has received independent legal advice in respect of this Agreement and acknowledges that she fully understands the intent and the purpose of this Agreement and her obligations under it.

36.2     The Gestational Carrier acknowledges that no coercion, force, pressure or undue influence has been used by any Party against her in making this Agreement.

36.3     The Gestational Carrier believes this Agreement to be fair, just and reasonable, that it will not result in circumstances that are unconscionable to any Party, and that it is in the best interests of the Child.

36.4     Each Party to this Agreement fully understands the Agreement and the legal consequences of this Agreement, and is signing the same freely and voluntarily. No Party to this Agreement has any reason to believe that the other Parties did not freely and voluntarily execute this Agreement.

## PART XXXVII
## INTERPRETATION OF AGREEMENT

37.1     No provision of this Agreement is to be interpreted for or against any Party to this Agreement merely because that Party, or that Party's solicitor drafted the provision.

## PART XXXVIII
## FACSIMILE TRANSMISSION AND
## EXECUTION IN COUNTERPART

38.1     The Parties hereby acknowledge that this Agreement may be executed through facsimile transmission and agree to treat these documents in the same manner and with the same legal effect as if they were original documents.

38.2     This Agreement may be executed in any number of counterparts and each such counterpart shall, for all purposes, constitute one agreement binding on all Parties hereto, notwithstanding that all Parties are not signatories to the same counterpart, provided that each Party has signed at least one counterpart.

Dvash-Banks and Adams Surrogacy Agreement | Final Version

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

**Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 052**

## PART XXXIX
## NOTICE

39.1     All communications which may be or are required to be given by any Party to the other herein will be in writing and delivered or sent by prepaid registered mail, by personal delivery, by facsimile transmission (where possible), or by electronic mail, to the Parties at the following respective addresses:

Gestational Carrier:                    ▓▓▓▓▓▓ Avenue, Apartment ▓▓▓▓
                                        Mississauga, Ontario  L5A 2K7

                                        Cell: 647▓▓▓▓▓
                                        Email: ▓▓▓▓▓▓▓@gmail.com

Intended Parents:                       ▓▓▓▓▓ Avenue, Apartment ▓▓▓▓
                                        Toronto, Ontario  M6B 4C6

                                        Elad Cell: 647▓▓▓▓
                                        Andrew Cell: 647.▓▓▓▓
                                        Email: ▓▓▓▓@gmail.com
                                        Email: ▓▓▓▓▓@gmail.com

39.2     If any communication is sent by prepaid registered mail, it will, subject to the following sentence, be conclusively deemed to have been received on the TENTH (10th) business day following the mailing thereof and if delivered, sent by facsimile transmission, or sent by electronic mail, it will conclusively be deemed to have been received at the time of delivery or transmission.

39.3     Notwithstanding the foregoing provisions with respect to mailing, if it may be reasonably anticipated that, due to any strike, lock-out or similar event involving an interruption in postal service, communication will not be received by the addressee by no later than the TENTH (10th) business day following the mailing thereof, then the mailing of any such communication as aforesaid will not have been an effective means of sending the notice, but rather any communication must then be sent by an alternative method which it may reasonably be anticipated will cause the payment or communication to be received reasonably expeditiously by the addressee.  Any Party may from time to time change its address or facsimile number hereinbefore set forth by notice to the other of them in accordance with this Section.

## PART XL
## ARBITRATION

40.1     In the interests of the confidential nature of this Agreement and except as otherwise set out in this provision, if any dispute arises between the Parties in connection with any amounts referred to in Sections 26 or 27 of this Agreement and all matters related thereto, including, without limitation, enforcement of such provisions, the Parties agree that it shall be

Dvash-Banks and Adams Surrogacy Agreement | Final Version

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

**Case No. 2:18-cv-00523-JFW-JCx (C.D.  Cal.) - Administrative Record - AR 053**

Page 132

resolved by binding arbitration in accordance with the *Arbitrations Act* (Ontario).

## PART XLI
### ENUREMENT

41.1        The rights and obligations under this Agreement shall enure to and bind each of the Parties and their respective heirs, executors, administrators and assigns.

**[The remainder of this page is intentionally blank.]**

Dvash-Banks and Adams Surrogacy Agreement | Final Version

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

**Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 054**

Page | 33

TO EVIDENCE THEIR AGREEMENT, each of the Parties has signed this Agreement under seal before a witness.

SIGNED, SEALED AND DELIVERED in the presence of

_____
Witness Signature

_____
Witness Signature

_____
Witness Signature

_____
ANDREW DVASH-BANKS
Date of Execution: _12/21/15_

_____
ELAD DVASH-BANKS
Date of Execution: _Dec. 21, 2015_

_____
AMANDA MARIE ANNE ADAMS
Date of Execution: _Dec 21 2015_

Dvash-Banks and Adams Surrogacy Agreement | Final Version

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

SCHEDULE "A"

Attached to and forming part of
an Agreement dated the 21ˢᵗ day of December, 2015 between
Andrew Dvash-Banks, Elad Dvash-Banks and Amanda Marie Anne Adams

| Maximum Reimbursements – Special Expenses | |
|---|---|
| Stage 1:  First Month Following Second Beta Test | $1,000.00 |
| Stage 2:  Second Month Following Second Beta Test | $1,000.00 |
| Stage 3:  Third Month Following Second Beta Test | $1,000.00 |
| Stage 4:  Fourth Month Following Second Beta Test | $2,000.00 |
| Stage 5:  Fifth Month Following Second Beta Test | $2,000.00 |
| Stage 6:  Sixth Month Following Second Beta Test | $2,500.00 |
| Stage 7:  Seventh Month Following Second Beta Test | $2,500.00 |
| Stage 8:  Eighth Month Following Second Beta Test | $3,000.00 |
| Stage 9:  Ninth Month Following Second Beta Test | $3,000.00 |
| Stage 10:  Post-Pregnancy | $2,000.00 |
| TOTAL MAXIMUM REIMBURSEMENT: | $20,000.00 |

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

**Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 056**

| Form **8879** | IRS e-file Signature Authorization | OMB No. 1545-0074 |
|---|---|---|
| Department of the Treasury
Internal Revenue Service | ▶ Do not send to the IRS. This is not a tax return.
▶ Keep this form for your records.
▶ Information about Form 8879 and its instructions is at www.irs.gov/form8879 | **2015** |

Submission Identification Number (SID) ▶

| Taxpayer's name | Social security number |
|---|---|
| ANDREW BANKS | -4354 |
| Spouse's name | Spouse's social security number |
| ELAD DVASH-BANKS | -6984 |

| **Part I** | **Tax Return Information – Tax Year Ending December 31, 2015** (Whole Dollars Only) | | |
|---|---|---|---|
| 1 | Adjusted gross income (Form 1040, line 38; Form 1040A, line 22; Form 1040EZ, line 4) | 1 | 5. |
| 2 | Total tax (Form 1040, line 63; Form 1040A, line 39; Form 1040EZ, line 12) | 2 | |
| 3 | Federal income tax withheld (Form 1040, line 64; Form 1040A, line 40; Form 1040EZ, line 7) | 3 | |
| 4 | Refund (Form 1040, line 76a; Form 1040A, line 48a; Form 1040EZ, line 13a; Form 1040-SS, Part I, line 13a) | 4 | |
| 5 | Amount you owe (Form 1040, line 78; Form 1040A, line 50; Form 1040EZ, line 14) | 5 | |

**Part II**    **Taxpayer Declaration and Signature Authorization (Be sure you get and keep a copy of your return)**

Under penalties of perjury, I declare that I have examined a copy of my electronic individual income tax return and accompanying schedules and statements for the tax year ending December 31, 2015, and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts from my electronic income tax return. I consent to allow my intermediate service provider, transmitter, or electronic return originator (ERO) to send my return to the IRS and to receive from the IRS (a) an acknowledgement of receipt or reason for rejection of the transmission, (b) the reason for any delay in processing the return or refund, and (c) the date of any refund. If applicable, I authorize the U.S. Treasury and its designated Financial Agent to initiate an ACH electronic funds withdrawal (direct debit) entry to the financial institution account indicated in the tax preparation software for payment of my federal taxes owed on this return and/or a payment of estimated tax, and the financial institution to debit the entry to this account. This authorization is to remain in full force and effect until I notify the U.S. Treasury Financial Agent to terminate the authorization. To revoke (cancel) a payment, I must contact the U.S. Treasury Financial Agent at 1-888-353-4537. Payment cancellation requests must be received no later than 2 business days prior to the payment (settlement) date. I also authorize the financial institutions involved in the processing of the electronic payment of taxes to receive confidential information necessary to answer inquiries and resolve issues related to the payment. I further acknowledge that the personal identification number (PIN) below is my signature for my electronic income tax return and, if applicable, my Electronic Funds Withdrawal Consent.

**Taxpayer's PIN: check one box only**

[X] I authorize   DEBORAH SCHWARTZ INC      to enter or generate my PIN
                   ERO firm name                                           Enter five digits, but do
                                                              not enter all zeros

    [ ] I will enter my PIN as my signature on my tax year 2015 electronically filed income tax return. Check this box only if you are entering your own PIN **and** your return is filed using the Practitioner PIN method. The ERO must complete Part III below.

Your signature ▶                                             Date ▶   9/23/2016

**Spouse's PIN: check one box only**

[X] I authorize   DEBORAH SCHWARTZ INC      to enter or generate my PIN
                   ERO firm name                                           Enter five digits, but do
                                                               not enter all zeros

    [ ] I will enter my PIN as my signature on my tax year 2015 electronically filed income tax return. Check this box only if you are entering your own PIN **and** your return is filed using the Practitioner PIN method. The ERO must complete Part III below.

Spouse's signature ▶                                            Date ▶   9/23/2016

---

**Practitioner PIN Method Returns Only — continue below**

**Part III**    **Certification and Authentication – Practitioner PIN Method Only**

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN.
                                                       Do not enter all zeros

I certify that the above numeric entry is my PIN, which is my signature for the tax year 2015 electronically filed income tax return for the taxpayer(s) indicated above. I confirm that I am submitting this return in accordance with the requirements of the Practitioner PIN method and **Publication 1345**, Handbook for Authorized IRS e-file Providers of Individual Income Tax Returns.

ERO's signature ▶   Deborah Schwartz, E.A.                            Date ▶   9/23/2016

---

**ERO Must Retain This Form – See Instructions**
**Do Not Submit This Form to the IRS Unless Requested To Do So**    TERRI N. DAY

BAA For Paperwork Reduction Act Notice, see your tax return instructions.
                 FDIA1701L   11/18/15                 VICE CONSUL OF THE   Form 8879 (2015)
                                                    UNITED STATES OF AMERICA

**Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 057**

410R1G4F000

Citibank Client Services    000
PO Box 6201
Sioux Falls, SD 57117-6201

000
CITIBANK, N. A.
**Account**

ANDREW MASON BANKS
        STREET APT
LOS ANGELES CA      90035-2947

**Statement Period**
Nov 3 - Dec 4, 2016

Page 1 of 4

## CITIBANK ACCOUNT AS OF DECEMBER 4, 2016

Relationship Summary:

| | |
|---|---|
| Checking | $5,412.12 |
| Savings | $0.00 |
| Investments (not FDIC Insured) | ----- |
| Loans | ----- |
| Credit Cards | $0.00 |

| Checking | Balance |
|---|---|
| Regular Checking | $5,412.12 |

| Savings | Balance |
|---|---|
| Preferred Money Market | $0.00 |

| Total Checking and Savings at Citibank | $5,412.12 |
|---|---|

| Credit Cards | As of date | Credit Line | Amount Available | Amount You Owe |
|---|---|---|---|---|
| Citi®/AAdvantage® Account XXXXXXXXXXXX8393 | 11/10/16 | $4,500.00 | $4,500.00 | $0.00 |

## SUGGESTIONS AND RECOMMENDATIONS

Effective February 1, 2017, Citibank will no longer issue counter checks. We will continue to offer pre-printed checks and bill payment services.

## CITIBANK ACCOUNT RATES AND CHARGES

When determining your rates and charges for this statement period, Citibank considered your average balances during the month of November in all of your qualifying accounts that you asked us to combine. If you have a Citibank secured credit card, then Citibank will also include the balance in your Collateral Holding Account or your Certificate of Deposit that secures your Citibank credit card. These balances may be in accounts that are reported on other statements.

| Rates and Charges | Your Combined Balance Range $6,000-$9,999 |
|---|---|
| Rates | Standard |
| Monthly Service Fee | $25.00(Waived) |

Ask about accounts eligible for preferred rates.

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

**Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 058**

UniversalTranscript - Printable Version

🖨 Print this window    ✖ Close this window

University of California, Santa Barbara                1/24/2017 12:47:14 PM

## Unofficial Transcript

Andrew Banks
Perm Number

| | College/Objective/Major | Degree Status | Conferral Date |
|---|---|---|---|
| | L&S/ BA/ GLOBL | Awarded | 6/13/2003 |
| | L&S/ BA/ ITALS | Awarded | 6/13/2003 |

### Fall 1999

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| EEMB 25 -HUMAN ANATOMY | P | 13805 | 4.0 | 4.0 | 0.0 | 0.00 | |
| ITAL 1 -ELEMENTARY ITALIAN | A- | 23069 | 4.0 | 4.0 | 4.0 | 14.80 | |
| POL S 1 -POL IDEAS MOD WORLD | C+ | 51821 | 4.0 | 4.0 | 4.0 | 9.20 | |
| **Quarter Total (Undergrad)** | **GPA 3.00** | | 12.0 | 12.0 | 8.0 | 24.00 | |
| **Cumulative Total (Undergrad)** | **GPA 3.00** | | 12.0 | 12.0 | 8.0 | 24.00 | |

### Winter 2000

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| FR 8B -FRENCH CONVERSATION | A | 17889 | 2.0 | 2.0 | 2.0 | 8.00 | |
| GLOBL 1 -GLOBL HIS/CUL/IDEOL | A- | 48306 | 4.0 | 4.0 | 4.0 | 14.80 | |
| HIST 4B -WESTERN CIVILIZATIO | B- | 21253 | 4.0 | 4.0 | 4.0 | 10.80 | |
| MS 8 -20TH CENTURY WAR | A | 31005 | 2.0 | 2.0 | 2.0 | 8.00 | |
| POL S 7 -INTRO TO IR | B+ | 38695 | 4.0 | 4.0 | 4.0 | 13.20 | |
| **Quarter Total (Undergrad)** | **GPA 3.42** | | 16.0 | 16.0 | 16.0 | 54.80 | |
| **Cumulative Total (Undergrad)** | **GPA 3.28** | | 28.0 | 28.0 | 24.0 | 78.80 | |

### Spring 2000

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| FR 5 -INTERMEDIATE FRENCH | W | 52027 | 4.0 | 0.0 | 0.0 | 0.00 | |
| HIST 4C -WESTERN CIVILIZATIO | B- | 21154 | 4.0 | 4.0 | 4.0 | 10.80 | |
| ITAL 2 -ELEMENTARY ITALIAN | A- | 23218 | 4.0 | 4.0 | 4.0 | 14.80 | |
| POL S 6 -INTRO COMP POLITICS | B- | 37697 | 4.0 | 4.0 | 4.0 | 10.80 | |
| **Quarter Total (Undergrad)** | **GPA 3.03** | | 12.0 | 12.0 | 12.0 | 36.40 | |
| **Cumulative Total (Undergrad)** | **GPA 3.20** | | 40.0 | 40.0 | 36.0 | 115.20 | |

### Summer 2000

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| ENV S 2 -INTRO ENV SCIENCE | P | 09670 | 4.0 | 4.0 | 0.0 | 0.00 | |
| HIST 132 -WAR AND SOCIETY | B- | 04465 | 4.0 | 4.0 | 4.0 | 10.80 | |
| ITAL 3 -ELEMENTARY ITALIAN | A+ | 04671 | 4.0 | 4.0 | 4.0 | 16.00 | |
| **Quarter Total (Undergrad)** | **GPA 3.35** | | 12.0 | 12.0 | 8.0 | 26.80 | |
| **Cumulative Total (Undergrad)** | **GPA 3.22** | | 52.0 | 52.0 | 44.0 | 142.00 | |

### Fall 2000

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| FR 5 -INTERMEDIATE FRENCH | B+ | 48793 | 4.0 | 4.0 | 4.0 | 13.20 | |
| ITAL 8A -ITALIAN CONVERSATN | P | 23291 | 2.0 | 2.0 | 0.0 | 0.00 | |
| POL S 121 -INTERNATL POLITICS | A- | 38596 | 4.0 | 4.0 | 4.0 | 14.80 | |
| POL S 186A -INTRO INTL POL ECON | A | 54163 | 4.0 | 4.0 | 4.0 | 16.00 | |

Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 059

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| Quarter Total (Undergrad) | GPA 3.66 | | 14.0 | 14.0 | 12.0 | 44.00 | |
| Cumulative Total (Undergrad) | GPA 3.32 | | 66.0 | 65.0 | 56.0 | 186.00 | |

## Spring 2001

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| ITAL PV 23 -INTERMED ITALIAN | B+ | | 16.0 | 16.0 | 16.0 | 52.80 | |
| ITAL PV 30 -ITALIAN CULTURE | B+ | | 6.0 | 6.0 | 6.0 | 19.80 | |
| Quarter Total (Undergrad) | GPA 3.30 | | 22.0 | 22.0 | 22.0 | 72.60 | |
| Cumulative Total (Undergrad) | GPA 3.31 | | 88.0 | 88.0 | 78.0 | 258.60 | |

## Fall 2001

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| FR 6 -INTERMEDIATE FRENCH | P | 17764 | 4.0 | 4.0 | 0.0 | 0.00 | |
| GLOBL 124 -GLOBAL CONFLICT | A- | 20453 | 4.0 | 4.0 | 4.0 | 14.80 | |
| GLOBL 197 -SPECIAL TOPICS | C+ | 54783 | 4.0 | 4.0 | 4.0 | 9.20 | |
| ITAL 101 -ADV ITAL READ/COMP | B | 22954 | 4.0 | 4.0 | 4.0 | 12.00 | |
| Quarter Total (Undergrad) | GPA 3.00 | | 16.0 | 16.0 | 12.0 | 36.00 | |
| Cumulative Total (Undergrad) | GPA 3.27 | | 104.0 | 104.0 | 90.0 | 294.60 | |

## Winter 2002

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| GLOBL 2 -GLOBL SOC/ECON/POL | A- | 20446 | 4.0 | 4.0 | 4.0 | 14.80 | |
| ITAL 119 -ART OF TRANSLATION | A- | 45328 | 4.0 | 4.0 | 4.0 | 14.80 | |
| ITAL 114X -DIVINE COMEDY | B- | 23119 | 4.0 | 4.0 | 4.0 | 10.80 | |
| ITAL 8B -ITALIAN CONVERSATN | A- | 23077 | 2.0 | 2.0 | 2.0 | 7.40 | |
| Quarter Total (Undergrad) | GPA 3.41 | | 14.0 | 14.0 | 14.0 | 47.80 | |
| Cumulative Total (Undergrad) | GPA 3.29 | | 118.0 | 118.0 | 104.0 | 342.40 | |

## Spring 2002

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| ART HIS 185 -HIST OF MODERNISM | B+ | | 4.0 | 4.0 | 4.0 | 13.20 | |
| INT 192DC-WASH CTR INTERNSHIP | P | 22038 | 8.0 | 8.0 | 0.0 | 0.00 | |
| INT 199DC-WASH CTR INDEP RES | A- | 22046 | 4.0 | 4.0 | 4.0 | 14.80 | |
| Quarter Total (Undergrad) | GPA 3.50 | | 16.0 | 16.0 | 8.0 | 28.00 | |
| Cumulative Total (Undergrad) | GPA 3.30 | | 134.0 | 134.0 | 112.0 | 370.40 | |

## Summer 2002

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| GEOL 4 -INTRO OCEANOGRAPHY | P | 13771 | 4.0 | 4.0 | 0.0 | 0.00 | |
| Quarter Total (Undergrad) | GPA 0.00 | | 4.0 | 4.0 | 0.0 | 0.00 | |
| Cumulative Total (Undergrad) | GPA 3.30 | | 138.0 | 138.0 | 112.0 | 370.40 | |

## Fall 2002

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| GLOBL 194 -GROUP STUDIES | B | 54619 | 4.0 | 4.0 | 4.0 | 12.00 | |
| ITAL 144BB-GENDER & SEXUALITY | B+ | 53942 | 4.0 | 4.0 | 4.0 | 13.20 | |
| ITAL 161AX-EUROPEAN UNION | B+ | 55384 | 4.0 | 4.0 | 4.0 | 13.20 | |
| MS 12 -WMN/MIN IN THE ARMY | A | 46201 | 3.0 | 3.0 | 3.0 | 12.00 | |
| Quarter Total (Undergrad) | GPA 3.36 | | 15.0 | 15.0 | 15.0 | 50.40 | |
| Cumulative Total (Undergrad) | GPA 3.31 | | 153.0 | 153.0 | 127.0 | 420.80 | |

Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 060

### Winter 2003

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| GPS 196 -GPS SEMINAR | B | 22103 | 4.0 | 4.0 | 4.0 | 12.00 | |
| ITAL 109 -ADV. CONVERSATION | A | 58438 | 4.0 | 4.0 | 4.0 | 16.00 | |
| ITAL 142X -WOMEN IN ITALY | B+ | 52944 | 4.0 | 4.0 | 4.0 | 13.20 | |
| WRIT 109SS-WRIT SOC SCIENCE | A | 47076 | 4.0 | 4.0 | 4.0 | 16.00 | |
| Quarter Total (Undergrad) | GPA 3.57 | | 16.0 | 16.0 | 16.0 | 57.20 | |
| Cumulative Total (Undergrad) | GPA 3.34 | | 169.0 | 169.0 | 143.0 | 478.00 | |

### Spring 2003

| Course | Grade | EnrlCd | Att Unit | Comp Unit | GPA Unit | Points | Additional Info |
|---|---|---|---|---|---|---|---|
| ITAL 112 -ITAL NARRATIVE FICT | B+ | 23523 | 4.0 | 4.0 | 4.0 | 13.20 | |
| ITAL 121 -ITALIAN DRAMA | A+ | 23531 | 4.0 | 4.0 | 4.0 | 16.00 | |
| ITAL 199 -INDEPENDENT STUDIES | A | 66480 | 4.0 | 4.0 | 4.0 | 16.00 | |
| SPAN 2 -ELEMENTARY SPANISH | A- | 42705 | 4.0 | 4.0 | 4.0 | 14.80 | |
| Quarter Total (Undergrad) | GPA 3.75 | | 16.0 | 16.0 | 16.0 | 60.00 | |
| Cumulative Total (Undergrad) Dean's Honors (L&S ) | GPA 3.38 | | 185.0 | 185.0 | 159.0 | 538.00 | |

Transfer Work Undergraduate Total: 28.0

UC & Transfer Work Undergraduate Total: 213.0

**Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 061**

Plaintiffs' Partial Summary Judgment Exhibit G
Page 261



Tel: 1877-842-4827 Fax: 1855-897-2528
E-mail: immigration@sponsordna.com Web: www.aabbimmigration.com

30 January 2017

Petitioner: BANKS, ANDREW MASON
Beneficiary: D████ B████ E████ █
Our reference: ████████

Collection Facility
VIAGUARD ACCU-METRICS
1232 Kingston Road
Toronto, ON
M1N 1P3
4166914167

A paternity test was performed to prove a parent / child relationship between alleged
father: BANKS, ANDREW MASON and child: D████ B████ E████ █

This is to confirm that the probability of paternity percentage of 0% represents a
negative result.

The client contacted us directly. No third party vendor was used. This account is paid in
full.

*[signature]*

Thank you, Harvey Tenenbaum, Director of Operations

**VIAGUARD** ACCU-METRICS
Immigration and Citizenship Relationship Testing
immigration@sponsordna.com
Toll Free: 1-877-842-4827
Fax: 1-855-897-2528



1232 Kingston Road    Tel: 416-691-4167 Fax: 416-691-8112
Toronto, Ontario      E-mail: immigration@sponsordna.com
Canada, M1N 1P3       Web: www.sponsordna.com

## DNA Test Report

This test was conducted in accordance with Standards for DNA analysis set forth by the American Association of Blood Banks.

| | Case ID: | **Alleged Father** | **Child** |
|---|---|---|---|
| | Track ID: | ANDREW MASON BANKS | E     D |
| | Report Date: 2017-01-30 | 1 | B |
| | Collection Date: | 2017-01-24 | 2 |
| | | | 2017-01-24 |

| Locus | Index | Allele Sizes | Allele Sizes |
|---|---|---|---|
| CSF1PO | | | |
| TPOX | | | |
| TH01 | | | |
| vWA | | | |
| D16S539 | | | |
| D7S820 | | | |
| D13S317 | | | |
| D5S818 | | | |
| FGA | | | |
| D8S1179 | | | |
| D18S51 | | | |
| D21S11 | | | |
| D3S1358 | | | |
| PENTA E | | | |
| PENTA D | | | |
| AMEL | | | |

Interpretation:

Combined Index: 0    **Probability of Paternity: 0%**

The Alleged Father is excluded as the biological father of the tested Child. Based on the testing results obtained from the analysis of the DNA loci listed, _____ and the Probability of Paternity is 0%. This Probability of Paternity was calculated by comparing to an untested, random individual of the Caucasian population (assumes prior probability equals 0.50).

Subscribed and sworn before me 2017-01-30

I, the undersigned Laboratory Director, verify that the interpretation of the results is correct as reported on 2017-01-30

Sheldon Tenenbaum
Notary Public, Province of Ontario
Barrister and Solicitor

Harvey Tenenbaum, Ph.D.        Kyle Tsui, Ph.D.

This DNA test was performed utilizing the PowerPlex16 PCR amplification and the AB13730 DNA Analyser

- Page 1/2



**VIAGUARD** ACCU-METRICS
DNA Analysis / fingerprinting / forensics  aa Accredited

New York, United States of America / Ontario, Canada Toll Free: 1-877-842-4827 Fax:1-855-897-2528
E-mail: sponsordna@immigration.com Web: www.aabbimmigrationdna.com

USE A SEPARATE FORM FOR EACH DONOR SAMPLE

**DONOR IDENTIFICATION**
FULL NAME E▇▇ J▇▇ O▇▇ B▇▇         FILE#
TELEPHONE ▇▇▇▇▇▇▇         EMAIL
ADDRESS
IDENTIFICATION PRESENTED
DATE OF BIRTH 2016 / 09 / 16         GENDER (CIRCLE) MALE   FEMALE
DONOR (CIRCLE) ALLEGED FATHER   MOTHER   CHILD   AUNT/UNCLE   OTHER
ETHNICITY (CIRCLE)   ASIAN   CAUCASIAN   BLACK   OTHER
I (CIRCLE) HAVE / HAVE NOT UNDERGONE A BLOOD TRANSFUSION OR STEM/BONE MARROW CELL TRANSPLANT
IN THE LAST 3 MONTHS. IF SO EXPLAIN
CONSENT AND CERTIFICATION
I AGREE TO HAVING MY BIOLOGICAL SAMPLES UNDERGO DNA EXTRACTION AND ANALYSIS. I HEREBY CONSENT TO THE USE OF THE SPECIMEN
PROVIDED FOR DNA ANALYSIS AND CERTIFY THAT IT REPRESENTS A TRUE AND ACCURATE SAMPLE OF A BODY FLUID/SECRETION FROM THE
ABOVE NAMED DONOR.
(PARENTS OR LEGAL GUARDIANS MUST SIGN ON BEHALF OF CHILDREN UNDER THE AGE OF 18 YEARS).
DONOR/PARENT/GUARDIAN NAME Andrew Mason Quash-Banks
SIGNATURE         DATE 24/1/17

**GUARANTOR IDENTIFICATION AND CERTIFICATION**
COLLECTION SITE Viaguard Accu-metrics
ADDRESS 1232 Kingston Road
TELEPHONE 1277 842 0227 FAX 1855 877 2528 EMAIL
I HAVE VERIFIED THE IDENTIFICATION OF THE DONOR REPRESENTED ON THIS FORM AND CERTIFY THAT THE SPECIMEN WAS TAKEN FROM THIS
DONOR, AND WAS COLLECTED, LABELED, AND SEALED IN MY AND DONOR'S PRESENCE. THE SAMPLES NEVER LEFT MY POSSESSION OR
CONTROL FROM THE TIME OF COLLECTION TO THE TIME OF DIRECTLY MAILING THEM TO VIAGUARD ACCU-METRICS, OR SUBMITTING THEM TO
A COURIER SERVICE FOR DELIVERY TO VIAGUARD ACCU-METRICS.
COLLECTOR'S NAME DR. H Tenenbaum         POSITION OR TITLE AUTHORIZED COLLECTOR
SIGNATURE Jenny Tannler         DATE 24/01/2017

TERMS AND CONDITIONS
Viaguard Inc./Accu-metrics maintains the privacy of our customers and never discloses personal information without prior customer knowledge and consent.
1. Provisions of services:
  1.1  Viaguard Inc./Accu-metrics reserves the right to perform or have performed the testing and analysis using methods and processes Accu-metrics deems appropriate.
  1.2  In the event that the samples provided are inadequate (by either/or quality or quantity) for the purpose of conducting an analysis, Viaguard Inc./Accu-metrics reserves the right to request further samples.
  1.3  Viaguard Inc./Accu-metrics will take all reasonable steps to ensure that reports are provided within the advertised time frames but cannot accept any responsibility for delay however caused.
2. Viaguard/Accu-metrics Disclaimers and Liabilities
  2.1  In no event, shall Viaguard/Accu-metrics, its employees, mandataries and /or associates be liable to the client for any indirect, incidental special, punitive, or consequential damages exceeding $100.00 for each test performed. Any such claim will not be accepted unless it is made in writing within six months of the test date.
3. The Client's Warranty and Indemnity
  3.1  The client will indemnify Viaguard/Accu-metrics from any liability in connection with this test and its results.

| DATE | CHAIN OF CUSTODY | SEALED | POSITION |
|---|---|---|---|
| 2017/01/28 |   | ✓ | Collector |
| | | | Courier |
| 2017/01/28 | NJT | ✓ | Viaguard / Accu-metrics |

Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 064



New York, United States of America / Ontario, Canada Toll Free: 1-877-842-4827 Fax:1-855-897-2528
E-mail: sponsordna@immigration.com Web: www.aabbimmigrationdna.com

USE A SEPARATE FORM FOR EACH DONOR SAMPLE

**DONOR IDENTIFICATION**
FULL NAME Andrew Mason Dvash-Banks          FILE#
TELEPHONE 647 ▮▮▮          EMAIL ▮▮▮▮ @gmail.com
ADDRESS ▮▮▮ Ave # ▮▮▮
IDENTIFICATION PRESENTED
DATE OF BIRTH 198 / ▮▮▮          GENDER (CIRCLE) (MALE) FEMALE
DONOR (CIRCLE) ALLEGED FATHER> MOTHER CHILD AUNT/UNCLE OTHER
ETHNICITY (CIRCLE) ASIAN CAUCASIAN> BLACK OTHER
I (CIRCLE) HAVE / HAVE NOT UNDERGONE A BLOOD TRANSFUSION OR STEM/BONE MARROW CELL TRANSPLANT
IN THE LAST 3 MONTHS. IF SO EXPLAIN
**CONSENT AND CERTIFICATION**
I AGREE TO HAVING MY BIOLOGICAL SAMPLES UNDERGO DNA EXTRACTION AND ANALYSIS. I HEREBY CONSENT TO THE USE OF THE SPECIMEN
PROVIDED FOR DNA ANALYSIS AND CERTIFY THAT IT REPRESENTS A TRUE AND ACCURATE SAMPLE OF A BODY FLUID/SECRETION FROM THE
ABOVE NAMED DONOR.
(PARENTS OR LEGAL GUARDIANS MUST SIGN ON BEHALF OF CHILDREN UNDER THE AGE OF 18 YEARS)
DONOR/PARENT/GUARDIAN NAME Andrew Mason Dvash-Banks
SIGNATURE _____          DATE 24/1/17

**GUARANTOR IDENTIFICATION AND CERTIFICATION**
COLLECTION SITE Viaguard Accu-metrics
ADDRESS 1232 Kihasto Road
TELEPHONE 1877 842-4827          FAX 1855 897 2528 EMAIL
I HAVE VERIFIED THE IDENTIFICATION OF THE DONOR REPRESENTED ON THIS FORM AND CERTIFY THAT THE SPECIMEN WAS TAKEN FROM THIS
DONOR, AND WAS COLLECTED, LABELED, AND SEALED IN MY AND DONOR'S PRESENCE. THE SAMPLES NEVER LEFT MY POSSESSION OR
CONTROL FROM THE TIME OF COLLECTION TO THE TIME OF DIRECTLY MAILING THEM TO VIAGUARD.ACCU-METRICS, OR SUBMITTING THEM TO
A COURIER SERVICE FOR DELIVERY TO VIAGUARD. ACCU-METRICS.
COLLECTOR'S NAME DR H Tenenbaum          POSITION OR TITLE AUTHORIZED COLLECTOR
SIGNATURE Henry Tenenbaum          DATE 24/1/2017

**TERMS AND CONDITIONS**
Viaguard Inc./Accu-metrics maintains the privacy of our customers and never discloses personal information without prior customer knowledge and consent.
1.Provisions of services.
  1.1  Viaguard Inc./Accu-metrics reserves the right to perform or have performed the testing and analysis using methods and processes Accu-
        metrics deems appropriate.
  1.2  In the event that the samples provided are inadequate (by either for quality or quantity) for the purpose of conducting an analysis, Viaguard
        Inc./Accu-metrics reserves the right to request further samples.
  1.3  Viaguard Inc./Accu-metrics will take all reasonable steps to ensure that reports are provided within the advertised time frames but cannot
        accept any responsibility for delay however caused.
2.Viaguard/Accu-metrics Disclaimers and Liabilities
  2.1  In no event, shall Viaguard/Accu-metrics, its employees, mandates and /or associates be liable to the client for any indirect, incidental special,
        punitive, or consequential damges exceeding $100.00 for each test performed. Any such claim will not be accepted unless it is made in writing
        within six months of the test date.
3.The Client's Warranty and Indemnity
  3.1  The client will indemnify Viaguard/Accu-metrics from any liability in connection with this test and its results.

| DATE | CHAIN OF CUSTODY | SEALED | POSITION |
|---|---|---|---|
| 2017/01/24 | HT | — | Collector |
|  |  | — | Courier |
| 2017/01/24 | 1235 | ✓ | Viaguard / Accu-metrics |



NOT ISSUED

Unauthorized Reproduction or Disclosure Prohibited

## APPLICATION FOR A U.S. PASSPORT
*Please Print Legibly Using Black Ink Only*

OMB CONTROL NO. 1405-0004
OMB EXPIRATION DATE: 08-31-2019
ESTIMATED BURDEN: 85 MIN

Attention: Read WARNING on page 1 of instructions

**Please select the document(s) for which you are applying:**

☒ U.S. Passport Book ☐ U.S. Passport Card ☐ Both

The U.S. passport card is **not** valid for international air travel. For more information see page 1 of instructions.

☒ Regular Book (Standard) ☐ Large Book (Non-Standard)

*Note: The large book option is for those who frequently travel abroad during the passport validity period, and is recommended for applicants who have previously required the addition of visa pages.*

RS0109003

**1. Name** Last
D█████ - ████

☐ D ☐ O ☐ Dep **DOTS**
End. # _____ Exp. _____

First
E█████

Middle
J█████

**2. Date of Birth** *(mm/dd/yyyy)*
09 16 2016

**3. Sex**
☐ M ☒ F X

**4. Place of Birth** *(City & State if in the U.S., or City & Country as it is presently known.)*
MISSISAUGA, ON, CANADA

**5. Social Security Number**

**6. Email** *(Info alerts offered at travel.state.gov)*
█████@gmail.com

**7. Primary Contact Phone Number**
647 706 9556

**8. Mailing Address:** Line 1: Street/RFD#, P.O. Box, or URB.
█████ AVG.

Address Line 2: Clearly label Apartment, Company, Suite, Unit, Building, Floor, In Care Of or Attention if applicable. *(e.g., In Care Of - Jane Doe, Apt # 100)*
APT █████

City
TORONTO

State
ON

Zip Code
M6B4C6

Country, if outside the United States
CANADA

**9. List all other names you have used.** *(Examples: Birth Name, Maiden, Previous Marriage, Legal Name Change. Attach additional pages if needed)*

A. _____ B. _____

---

## STOP! CONTINUE TO PAGE 2

**DO NOT SIGN APPLICATION UNTIL REQUESTED TO DO SO BY AUTHORIZED AGENT**

**Identifying Documents - Applicant or Mother/Father/Parent on Second Signature Line (if identifying minor)**

☐ Driver's License ☐ State Issued ID Card ☒ Passport ☐ Military ☐ Other _____

Name
Elad Duash

Issue Date *(mm/dd/yyyy)*
09 21 2010

Exp. Date *(mm/dd/yyyy)*
09 20 2020

State of Issuance _____

ID No.

Country of Issuance
Israel

**Identifying Documents - Applicant or Mother/Father/Parent on Third Signature Line (if identifying minor)**

☐ Driver's License ☐ State Issued ID Card ☒ Passport ☐ Military ☐ Other _____

Name
Andrew Mason Banks

Issue Date *(mm/dd/yyyy)*
03 23 2010

Exp. Date *(mm/dd/yyyy)*
03 22 2020

State of Issuance _____

ID No.

Country of Issuance

☐ Acceptance Agent ☒ (Vice) Consul USA
☐ Passport Staff Agent

**TERRI N. DAY**
**VICE CONSUL OF THE**
**UNITED STATES OF AMERICA**

I declare under penalty of perjury all of the following: 1) I am a citizen or non-citizen national of the United States and have not, since acquiring U.S. citizenship or nationality, performed any of the acts listed under "Acts or Conditions" on page four of the instructions of this application (unless explanatory statement is attached); 2) the statements made on the application are true and correct; 3) I have not knowingly and willfully made false statements or included false documents in support of this application; 4) the photograph attached to this application is a genuine, current photograph of me; and 5) I have read and understood the warning on page one of the instructions to the application form.

Name of courier company (if applicable)

Facility ID Number

X _____
Applicant's Legal Signature - age 16 and older

Facility Name/Location
TORONTO

X _____
Mother/Father/Parent/Legal Guardian's Signature (if identifying minor)

Agent ID Number

X _____
Mother/Father/Parent/Legal Guardian's Signature (if identifying minor)

Signature of agent authorized to accept applications

Date
JAN 2 4 2017

* DS 11 C 09 2013 1 *

For Issuing Office Only → Bk ☐ Card ☐ EF ☐ Postage ☐ Execution ☐ Other ☐

DS-11 06-2016

Page 1 of 2



NOT ISSUED

Unauthorized Reproduction or Disclosure Prohibited

**Name of Applicant** *(Last, First, & Middle)*
D█-B█████, E█████ J████

**Date of Birth** *(mm/dd/yyyy)*
09/16/2016

**10. Parental Information**
Mother/Father/Parent - First & Middle Name
ANDREW MASON

**Last Name** *(at Parent's Birth)*
BANKS

**Date of Birth** *(mm/dd/yyyy)* █ 1981
**Place of Birth** Santa Monica, California, USA
**Sex** X Male ☐ Female
**U.S. Citizen?** X Yes ☐ No

Mother/Father/Parent - First & Middle Name
ELAD AUSTIN
**Last Name** *(at Parent's Birth)*
DVASH

**Date of Birth** *(mm/dd/yyyy)* █ 1985
**Place of Birth** Ramat Gan, ISRAEL
**Sex** X Male ☐ Female
**U.S. Citizen?** ☐ Yes X No

**11. Have you ever been married?** ☐ Yes X No  *If yes, complete the remaining items in #11.*
Full Name of Current Spouse or Most Recent Spouse | Date of Birth (mm/dd/yyyy) | Place of Birth

U.S. Citizen? ☐ Yes ☐ No | Date of Marriage (mm/dd/yyyy) | Have you ever been widowed or divorced? ☐ Yes ☐ No | Widow/Divorce Date (mm/dd/yyyy)

**12. Additional Contact Phone Number**
647 289 4389 ☐ Home X Cell ☐ Work
**13. Occupation** *(if age 16 or older)*
**14. Employer or School** *(if applicable)*

**15. Height** 23" | **16. Hair Color** Black | **17. Eye Color** Brown | **18. Travel Plans** Departure Date (mm/dd/yyyy) 02/08/2017  Return Date (mm/dd/yyyy) | Countries to be Visited USA, ISRAEL

**19. Permanent Address** - *If P.O. Box is listed under Mailing Address or if residence is different from Mailing Address.*
Street/RFD # or URB *(No P.O. Box)* | Apartment/Unit
City | State | Zip Code

**20. Emergency Contact** - *Provide the information of a person not traveling with you to be contacted in the event of an emergency.*
Name ANN BANKS | Address: Street/RFD # or P.O. Box ███ Cir | Apartment/Unit
City Port Saint Lucie | State FL | Zip Code 34986 | Phone Number 205-███-████ | Relationship Grand mother

**21. Have you ever applied for or been issued a U.S. Passport Book or Passport Card?** ☐ Yes X No  *If yes, complete the remaining items in #21.*
Name as printed on your most recent passport book | Most recent passport book number | Most recent passport book issue date (mm/dd/yyyy)

Status of your most recent passport book: ☐ Submitting with application ☐ Stolen ☐ Lost ☐ In my possession *(if expired)*
Name as printed on your most recent passport card | Most recent passport card number | Most recent passport card issue date (mm/dd/yyyy)

Status of your most recent passport card: ☐ Submitting with application ☐ Stolen ☐ Lost ☐ In my possession *(if expired)*

## PLEASE DO NOT WRITE BELOW THIS LINE - FOR ISSUING OFFICE ONLY

Name as it appears on citizenship evidence  E█████  J████  D█████  B█████

☐ Birth Certificate  SR  CR  City  Filed | Issued
☐ Nat. / Citz. Cert.  USCIS  USDC  Date/Place Acquired: | A#
☐ Report of Birth  Filed/Place: | DENIED
☐ Passport  C/R  S/R  Per PIERS  #/DOI:
☐ Other:
☐ Attached:

CLASS CLEARED

TORONTO  MAR 02 2017

* DS 11 C 09 2013 2 *

☐ P/C of Citz ☐ P/C of ID ☐ DS-71 ☐ DS-3053 ☐ DS-64 ☐ DS-5520 ☐ DS-5525 ☐ PAW ☐ NPIC ☐ IRL ☐ Citz W/S

DS-11  06-2016

Page 2 of 2

**Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 069**

00074590-0406

NOT ISSUED

Unauthorized Reproduction or Disclosure Prohibited

To whom it may concern:

I ██████ ████ ██ ██ ██ (print full name) declare under penalty of perjury under the laws of the United States of America that the following is true and correct: I have never been issued a Social Security Number by the Social Security Administration.

Executed on: 1/24/17
_____
(DATE)

Signature: _____
(Sign using full name as indicated on the passport application)

Case No. 2:18-cv-00523-JFW-JCx (C.D. Cal.) - Administrative Record - AR 070

Reproduction on Disclosure Prohibited

Last Name

First Name

Date of Birth (yyyy/mm/dd)
2016/09/16

Place of Birth (City/Town/Village/Township)
Mississauga

Name of hospital (if not hospital give exact location where birth occurred)
Credit Valley Hospital

(Regional municipality, county or district)
PEEL

| Section B - Father's Information - (see Instruction #2) | Section C - Father's Information - (see Instruction #3) |
|---|---|
| Current Legal Last Name<br>Dvash-Banks | Current Legal Last Name<br>Dvash-Banks |
| Legal Last Name at Birth<br>Banks | Legal Last Name at Birth<br>Dvash |
| First and Middle Name(s)<br>Andrew Mason | First and Middle Name(s)<br>Elad |
| Any Other Legal Last Name(s) | Any Other Legal Last Name(s) |
| Place of Birth (City/Town/Village Township)<br>Santa Monica | Place of Birth (City/Town/Village/Township)<br>Ramat Gan |
| Place of Birth (Province/Country)<br>California, USA   1981   35 | Place of Birth (Province/C...<br>Israel   19...   3... |

Marital Status of Parent in Section B    □ Single  ✓ Married  □ Common Law  □ Divorced  □ Widowed

**Section D - Birth Information**

Residence of Parent in Section B - Complete street address (City, town, village, township - if rural give Post Office or Rural Route address)
_____ Avenue, Toronto

Postal Code
M6B4C6

Mailing Address of Parent in Section B (if different from above - Complete street address (if rural give Post Office or Rural Route address)

Postal Code

| Duration of pregnancy (in weeks)<br>32 | Total number of children ever born to this parent including this birth   2 | Weight of child at birth<br>Grams 1350 | Kind of Birth | If multiple birth, state whether this child was born 1st, 2nd, 3rd, etc.<br>2nd |
|---|---|---|---|---|
| | Of this Total, Number born live   2 | | □ Single  ✓ Twin | |
| | Of this Total, Number stillborn   0 | | □ Triplet  □ Other | |

Name of Attendant at birth
Dr. Myckan, Kerry    ✓ Physician  □ Midwife  □ Other, specify

**Section E - Certification of Informant** (Please read instruction #1 before signing)

If you are completing a last name that is not one of the parent's last names or combination of those names, but is in accordance with the child's cultural, ethnic, or religious heritage, check one of the following boxes.

□ Cultural Heritage  □ Religious Heritage  □ Ethnic Heritage

I (We) certify the statements made on this form are true and ...     Signature of Father ✗ _____     Date (yyyy/mm/dd) 2016/10/06
correct. I am (We are) aware that it is an offence to make a false statement on this form.

I (We) have agreed that the child's last name will be as shown     Signature of Father ✗ _____     Date (yyyy/mm/dd) 2016/10/08
in section A.
✓ Yes  □ No                                                          ✗ _____     Date (yyyy/mm/dd)

**Section F - Office Use Only**

I approve this statement and register this birth by signing this statement.
Signature of Manager ✗ _____     Date (yyyy/mm/dd) 2016/11/03

Office Use Only

UPDATED GEO CODE

11132E (2016/06)   © Queen's Printer for Ontario, 2016

A True Copy of the Signed Original.

Prohibited

TERRI N. DAY
VICE CONSUL OF THE
UNITED STATES OF AMERICA

*Alexandria Schmidt*
Alexandria Schmidt
Deputy Registrar General
Registraire générale adjointe

11105033/10

---CERTIFIED COPY---
NOT VALID WITHOUT ALL PAGES



Plaintiffs' Partial Summary Judgment Exhibit G
Page 272