Alexa M. Lawson-Remer (SBN 268855)
lawsonr@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

Theodore Edelman (*pro hac vice*)
edleman@sullcrom.com
Jessica Klein (*pro hac vice*)
kleinj@sullcrom.com
Lauren M. Goldsmith (SBN 293269)
goldsmithl@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Aaron C. Morris (*pro hac vice*)
amorris@immigrationequality.org
IMMIGRATION EQUALITY
40 Exchange Place, Suite 1300
New York, New York 10005-2744
Telephone: (212) 714-2904

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION (LOS ANGELES)

| | |
|---|---|
| ANDREW MASON DVASH-BANKS and E.J. D.-B., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES DEPARTMENT OF STATE, and THE HONORABLE MICHAEL R. POMPEO, Secretary of State, <br><br> Defendants. | Case No. 2:18-cv-00523-JFW-JCx <br><br> **STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Judge: Hon. John F. Walter <br> Hearing Date: February 4, 2018 <br> Courtroom: 7A |

# INDEX TO SUMMARY JUDGMENT EXHIBITS[1]

| SJ Ex. Letter: | Abbreviation: | Refers to: |
|---|---|---|
| **Depositions** | | |
| A | "30(b)(6) Dep." | Transcript of Paul Peek, Defendants' 30(b)(6) designee, dated December 20, 2018. |
| B | "Day Dep." | Transcript of Frances Terri Day Deposition, dated December 20, 2018. |
| C | "Dvash-Banks Dep." | Transcript of Andrew Dvash-Banks Deposition, dated December 12, 2018. |
| D | "Ramsay Dep." | Transcript of Margaret Ramsay Deposition, dated December 7, 2018. |
| E | "Reffett Dep." | Transcript of Larilyn Reffett Deposition, dated December 6, 2018. |
| **Discovery Responses** | | |
| F | "Pls. Disc. Responses" | Plaintiffs' Responses to Defendants' First Set of Discovery Requests, served November 19, 2018. |
| **Documents** | | |
| G | "Admin. Record" or "AR" | Administrative Record, filed by Defendants on January 4, 2019 and authenticated by Defendants therein. |
| G-1 | "CRBA App." | Application for a Consular Report of Birth Abroad of a Citizen of the United States, without exhibits, submitted on behalf of E.J. D.-B. This document is contained within the Administrative Record. |
| G-2 | "Passport App." | Application For a U.S. Passport, without exhibits, submitted on behalf of E.J. D.-B. This document is contained within the Administrative Record. |
| G-3 | "Marriage Lic." | Marriage License for Andrew Dvash-Banks and Elad Dvash-Banks. This document is contained within the Administrative Record. |
| G-4 | "Surrogacy Agmt." | Surrogacy Agreement between Andrew Dvash-Banks, Elad Dvash-Banks, and the surrogate who carried A.J. D.-B. and E.J.D.-B. This document is contained within the Administrative Record. |
| G-5 | "E.J. Statement of Live Birth" | Statement of Live Birth for E.J. D.-B. from the Ontario Office of the Registrar General. This document is contained |

---

[1] All summary judgment exhibits are authenticated in the Declaration of Alexa Lawson-Remer, Declaration of Andrew Dvash-Banks, and in the Administrative Record, filed by Defendants at Dkt. 80. Pursuant to Federal Rule of Civil Procedure 5.2(a), Plaintiffs have redacted the full names of any minor children present in all exhibits on which they rely such that only the minor's initials are visible.

| | | | within the Administrative Record. |
|---|---|---|---|
| G-6 | "Canadian Order" | | Declaration that Andrew Dvash-Banks and Elad Dvash-Banks are the parents of E.J. D.-B. This document is contained within the Administrative Record. |
| G-7 | "Viaguard A-M Letter" | | Letter from Viaguard Accu-Metrics, dated January 30, 2017. This document is contained within the Administrative Record. |
| G-8 | "Mar. 2 Letter from Day" | | Letter from Frances Terri Day to Andrew Dvash-Banks, dated March 2, 2017. This document is contained within the Administrative Record. |
| H | "A.J. CRBA" | | Consular Report of Birth Abroad for A.J. D.-B., dated March 2, 2017. |
| I | "A.J. Statement of Live Birth" | | Statement of Live Birth for A.J. D.-B. from the Ontario Office of the Registrar General. |
| J | "Jan. 24 Letter from Day" | | Letter from Frances Terri Day to Andrew Dvash-Banks, dated January 24, 2017. |

Pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule 56-1, Plaintiffs Andrew Dvash-Banks and E.J. D.-B., as the moving parties on the motion for partial summary judgment referred to in the Notice filed herewith, respectfully submit this Statement of Uncontroverted Facts and Conclusions of Law.

| ANDREW DVASH-BANKS IS A UNITED STATES CITIZEN | |
|---|---|
| UNDISPUTED FACT | SUPPORTING EVIDENCE |
| 1. Andrew Dvash-Banks ("Andrew") is a United States citizen. | Dvash-Banks Dep. 171:3-171:6. |
| 2. Andrew was born in California in 1981. | Dvash-Banks Dep. 13:24-14:2. |
| 3. During his childhood, Andrew lived primarily in Beverly Hills, California. | Dvash-Banks Dep. 14:9-14:14. |
| 4. Andrew attended high school in California. | Dvash-Banks Dep. 15:20-15:22. |
| 5. Andrew attended college in California. | Dvash-Banks Dep. 15:23-15:25. |
| 6. Andrew resided in the United States continuously from 1981 through at least October 2005, as well as during other periods. | Dvash-Banks Dep. 169:13-169:19. |
| 7. In 2007, Andrew enrolled in a master's degree program in Israel. | Dvash-Banks Dep. 18:1-18:4; 19:20-20:2. |
| 8. In 2008, while enrolled in graduate school in Israel, Andrew met his now-husband, Elad Dvash-Banks ("Elad"). | Dvash-Banks Dep. 19:6-20:2. |
| 9. Elad is an Israeli citizen. | CRBA App. |

| | ANDREW AND ELAD MARRY AND MAKE PREPARATIONS TO BECOME PARENTS | |
|---|---|---|
| | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| 10. | Andrew and Elad moved to Toronto in 2010. | Dvash-Banks Dep. 22:23-22:25. |
| 11. | Andrew and Elad were married on August 19, 2010 in Toronto, Canada. | Marriage Lic.; Dvash-Banks Dep. 29:5-29:8. |
| 12. | At the time of the marriage of Andrew and Elad, two men, Ontario recognized the validity of same-sex marriages. | Dvash-Banks Dep. 22:10-22:11. |
| 13. | Andrew and Elad decided to have children. | Dvash-Banks Dep. 67:25-68:4. |
| 14. | Andrew and Elad obtained eggs from an anonymous egg donor (the "Donor"). | Dvash-Banks Dep. 79:12-79:16. |
| 15. | Andrew and Elad donated their respective genetic material to create embryos using the eggs from the Donor. | Dvash-Banks Dep. 83:17-84:2; 85:3-85:13. |
| 16. | Andrew and Elad successfully created embryos using eggs from the Donor. | Dvash-Banks Dep. 83:17-84:10. |
| 17. | In December 2015, Andrew and Elad contracted with a gestational surrogate (the "Gestational Surrogate") for the purpose of carrying one or two embryos during a pregnancy (the "Surrogacy Agreement"). | Surrogacy Agmt. |

-2-

| 18. | The Surrogacy Agreement states that "Andrew and Elad (collectively called the 'Intended Parents') are a same-sex married couple who require assisted reproductive technology to have a child." | Surrogacy Agmt. at Section 1.1, AR 023.[2] |
| 19. | The Gestational Surrogate agreed to carry eggs "retrieved from the third party anonymous donor and Sperm supplied by Andrew and/or Elad" that was "incubated externally" to create embryos. | Surrogacy Agmt. at Section 1.4, AR 023. |
| 20. | The Gestational Surrogate became pregnant with one embryo created using genetic material from Andrew and one embryo created using genetic material from Elad. | Dvash-Banks Dep. 85:3-85:13. |
| 21. | Under the terms of the Surrogacy Agreement, Andrew and Elad "will be recognized as the Child's parents immediately upon the Child's Birth." | Surrogacy Agmt. at Section 1.8, AR 024. |
| 22. | Under the terms of the Surrogacy Agreement, Andrew and Elad, "intend to assume full care of, and all parental responsibility for the Child . . . ." | Surrogacy Agmt. at Section 1.9, AR 024. |
| 23. | Under the terms of the Surrogacy Agreement, "Immediately upon the Birth of the Child, the | Surrogacy Agmt. at Section 1.10, AR 024. |

[2] All references to page numbers of the Administrative Record ("AR") cite to the internal page numbering therein. For example, the twenty-fourth page of the Administrative Record is cited as AR 024, which appears on the bottom right corner of that page of the Administrative Record.

-3-

| | | |
|---|---|---|
| | Gestational Carrier will give the Child into the permanent custody of the Intended Parents and as soon as reasonably possible thereafter the Intended Parents will make an application in the Ontario Superior Court of Justice seeking a declaration of parentage on their part, and a declaration of non-parentage on the part of the Gestational Carrier." | |
| 24. | Under the terms of the Surrogacy Agreement: "The Parties acknowledge that immediately upon Birth all medical decisions regarding the Child shall be made solely by the Intended Parents." | Surrogacy Agmt. at Section14.4(c), AR 038. |
| 25. | The Surrogacy Agreement states that: "For purposes of this Agreement, 'immediately upon birth' means as soon as the umbilical cord is cut." | Surrogacy Agmt. at Section 14.1, AR 038. |
| 26. | Under the terms of the Surrogacy Agreement, "The Gestational Carrier hereby expressly waives all parental, custodial and social rights that she has or may acquire to the Child." | Surrogacy Agmt. at Section 14.4, AR 038. |
| 27. | Under the terms of the Surrogacy Agreement, "All Parties to this Agreement wish to maintain confidentialities between themselves, one to another, and between themselves and the public." | Surrogacy Agmt. at Section 1.11 at AR 024. |
| 28. | Under the terms of the Surrogacy Agreement, the Surrogacy Agreement is governed by the | Surrogacy Agmt. at Section 35.1 at AR 051. |

-4-

| laws of the Province of Ontario, Canada. | |
|---|---|
| **THE TWINS ARE BORN AND ELAD AND ANDREW ARE NAMED AS THEIR PARENTS ON THEIR BIRTH CERTIFICATES AND ARE RECOGNIZED FOR ALL PURPOSES IN LAW TO BE THEIR PARENTS** | |
| UNDISPUTED FACT | SUPPORTING EVIDENCE |
| 29. Twins A.J. and E.J. (the "Twins") were born on September 16, 2016 in Ontario, Canada. | E.J. Statement of Live Birth; A.J. Statement of Live Birth. |
| 30. The Twins were born four minutes apart. | Dvash-Banks Dep. 161:13-161:16. |
| 31. Andrew and Elad were married to each other on the day of the Twins' birth. | Dvash-Banks Dep. 171:10-171:15; E.J. Statement of Live Birth. |
| 32. Andrew was the person who cut E.J.'s umbilical cord. | Dvash-Banks Dep. 143:23-144:15. |
| 33. Andrew and Elad are listed as E.J.'s parents on E.J.'s Statement of Live Birth issued by Ontario, Canada. | E.J. Statement of Live Birth. |
| 34. Andrew and Elad are listed as A.J.'s parents on A.J.'s Statement of Live Birth issued by Ontario, Canada. | E.J. Statement of Live Birth. |
| 35. Andrew and Elad are the only parents listed on E.J.'s Statement of Live Birth. | E.J. Statement of Live Birth. |
| 36. Andrew and Elad are the only parents listed on A.J.'s Statement of Live Birth. | A.J. Statement of Live Birth. |
| 37. Andrew and Elad have been E.J.'s and A.J.'s legal parents since the Twins' birth in 2016. | E.J. Statement of Live Birth; A.J. Statement of Live Birth; Surrogacy Agmt., at Sections 1.8-1.10, AR 024; Canadian |

| | | | |
|---|---|---|---|
| 1 | | | Order. |
| 2<br>3 | 38. | Andrew and Elad have raised the Twins since the day the Twins were born. | Surrogacy Agmt., at Sections 14.1, 14.4, AR 037-38. |
| 4<br>5<br>6<br>7 | 39. | No other individual has acted as a parent to E.J. or A.J. | Canadian Order; Surrogacy Agmt. at Sections 1.7-1.10, AR 024; Dvash-Banks Dep. 29:21-30:14. |
| 8<br>9 | 40. | No other individual has asserted any parental rights with respect to E.J. or A.J. | Canadian Order; Dvash-Banks Dep. 112:19-112:24. |
| 10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18 | 41. | On September 28, 2016, the Ontario Superior Court of Justice entered an Order (the "Canadian Order") stating that: "It is declared that the Applicants, Elad Dvash-Banks and Andrew Dvash-Banks, are the parents of the child, [E.J.], born September 16, 2016 ("the child"), and that the Applicants are recognized for all purposes in law to be the parents of the child." | Canadian Order. |
| 19<br>20<br>21 | 42. | The Canadian Order declared that [the Gestational Surrogate] is not the mother of the child. | Canadian Order. |
| 22<br>23<br>24<br>25<br>26<br>27 | 43. | The Canadian Order directed the Deputy Registrar General for the Province of Ontario "to register the birth of the child [E.J.] so as to show the Applicants, Elad Dvash-Banks and Andrew Dvash-Banks, as the parents of the child." | Canadian Order. |
| 28 | 44. | The Canadian court issued a parallel order for | Dvash-Banks Dep. 112:19- |

-6-

| | | | |
|---|---|---|---|
| | | A.J. | 112:24. |
| 45. | Under the law of Ontario, Canada, Andrew and Elad are the legal parents of the Twins. | Canadian Order; Dvash-Banks Dep. 112:19-112:24. |
| 46. | E.J. was not conceived using Andrew's sperm. | Pls. Disc. Responses at Request For Admission ("RFA") No. 14. |
| 47. | A.J. was conceived using sperm from Andrew. | Viaguard A-M Letter; Dvash-Banks Dep. 84:17-85:13. |
| 48. | E.J. was conceived using sperm from Elad. | Viaguard A-M Letter; Dvash-Banks Dep. 84:17-85:13. |
| 49. | There is no evidence that Andrew supplied genetic material to the conception or birth of E.J. | Viaguard A-M Letter; Pls. Disc. Responses at RFA No. 14. |
| 50. | From the time the Twins left the hospital where they were born, they have lived continuously with Andrew and Elad. | Dvash-Banks Dep. 29:21-30:14; 171:16-171:23. |
| 51. | Andrew, Elad and the Twins have lived together as a family since the Twins' release from the hospital following their birth. | Dvash-Banks Dep. 29:21-30:14; 171:16-171:23. |
| 52. | Andrew and Elad and the Twins now reside in California. | Dvash-Banks Dep. 29:21-29:23; 34:13-34:14. |
| **E.J. AND A.J. APPLY FOR U.S. PASSPORTS AND FOR CRBAS IN RECOGNITION THAT THE TWINS ARE U.S. CITIZENS AT BIRTH** | | | |
| | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| 53. | Andrew and Elad submitted to the United States Consulate in Toronto, Canada ("Toronto Consulate") applications for a | Dvash-Banks Dep. 117:3-117:11. |

| | | | |
|---|---|---|---|
| | | Consular Report of Birth Abroad ("CRBA") and U.S. passport for each of the Twins. | |
| | 54. | A CRBA demonstrates that the recipient is a U.S. citizen at birth. | Reffett Dep. 34:21-34:24. |
| | 55. | On January 24, 2017, Andrew and Elad appeared in person at the Toronto Consulate in connection with the applications for a CRBA and U.S. passport for each of the Twins. | Dvash-Banks Dep. 125:12-126:12; Day Dep. 121:19-122:1. |
| | 56. | Andrew and Elad provided the Toronto Consulate with the requisite documentation for E.J.'s applications, including E.J.'s Statement of Live Birth, which identified Andrew and Elad as the parents, evidence of Andrew's U.S. citizenship and periods of residency, and Andrew and Elad's marriage certificate. | Dvash-Banks Dep. 95:4-97:12; 165:4-166:12; Admin. Record 09-62. |
| | 57. | On January 24, 2017, Frances Terri Day, Vice Consul, Toronto Consulate, interviewed the Dvash-Banks family and adjudicated E.J.'s and A.J.'s respective applications for a CRBA and U.S. passport. | Day Dep. 94:23-95:25. |
| | 58. | Ms. Day had authority to make the final decision as to whether to grant or deny the applications for E.J. and A.J. | Day Dep. 48:6-48:10. |
| | 59. | Ms. Day accepted Andrew and Elad's marriage license from the Ontario government as sufficient proof of their marriage. | Day Dep. 142:19-142:25; 155:24-156:6; 161:24-162:6; Marriage Lic. |

| | | |
|---|---|---|
| 60. | Ms. Day accepted E.J.'s Statement of Live Birth as a timely-filed Canadian birth certificate. | Day Dep.172:5-172:24; E.J. Statement of Live Birth. |
| 61. | Ms. Day accepted E.J.'s Statement of Live Birth as sufficient proof that Andrew and Elad are E.J.'s legal parents. | Day Dep. 172:5-173:12; Ramsay Dep. 103:7-103:11; E.J. Statement of Live Birth. |
| 62. | Ms. Day accepted the Ontario Court order naming Andrew and Elad as the parents of E.J. as sufficient proof that Andrew and Elad were E.J.'s legal parents. | Day Dep. 173:19-174:5; Canadian Order. |
| 63. | During their interview at the Toronto Consulate on January 24, 2017, Frances Terri Day asked Andrew and Elad how they had conceived the Twins and whose egg and sperm had been used to conceive each of the Twins. | Ramsay Dep. 45:6-45:11; 46:20-46:23; Dvash-Banks Dep. 129:15-129:21; Day Dep. 110:22-112:11. |
| 64. | Andrew had not planned to disclose to others the biological relationships among Elad and Andrew and the Twins. | Surrogacy Agmt. at Section 1.1, AR 024. |
| 65. | Ms. Day's role in adjudicating U.S. passport and CRBA applications was to determine whether, according to the State Department's *Foreign Affairs Manual* ("FAM"), the applicant was entitled to be recognized as a U.S. citizen. | Day Dep. 29:17-30:3; 47:12-47:24; 59:2-59:16. |
| 66. | During the Dvash-Banks' interview at the Toronto Consulate on January 24, 2017, Ms. Day consulted with another Consular | Ramsay Dep. 163:5-164:14; Reffett Dep. 67:19-68:5. |

-9-

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | | Officer, Margaret Ramsay, and with Larilyn Reffett concerning the applications for E.J. and A.J. | |
| 4<br>5<br>6<br>7 | 67. | Ms. Ramsay provided Ms. Day with the relevant sections of the FAM so that Ms. Day would have the opportunity to consult them in adjudicating E.J.'s and A.J.'s applications. | Reffett Dep. 79:8-79:16; Ramsay Dep. 40:10-40:24; AR 073. |
| 8<br>9<br>10 | 68. | Ms. Day referred to the FAM during the time that she was interviewing the Dvash-Banks family. | Day Dep. 217:21-217:24. |
| 11<br>12<br>13<br>14 | 69. | Ms. Day's typed notes reflect that she may originally have considered the Twins to have been born in wedlock because of the marriage certificate included in the applications. | AR 003; Ramsay Dep. 131:25-132:5. |
| 15<br>16<br>17<br>18 | 70. | Ms. Day ultimately applied Section 309 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1409 ("Section 309"), to the adjudication of the Twins' applications. | Ramsay Dep. 131:25-132:5. |
| 19<br>20<br>21<br>22<br>23 | 71. | Ms. Ramsay suggested to Ms. Day that she could ask the Dvash-Banks family to provide additional biological evidence, such as DNA testing, in connection with the adjudication of the applications for E.J. and A.J. | Ramsay Dep. 60:5-60:8. |
| 24<br>25<br>26<br>27<br>28 | 72. | During the Dvash-Banks family's interview at the Toronto Consulate on January 24, 2017, Ms. Day told Andrew and Elad that if they wanted to proceed with the Twins' applications, they would have to provide | Ramsay Dep. 48:12-49:10; Reffett Dep. 68:22-69:4; 72:7-72:17. |

-10-

| | | | |
|---|---|---|---|
| 1 2 3 | | additional information demonstrating the biological relationship between each child and that child's U.S. citizen parent. | |
| 4 5 6 7 8 9 10 | 73. | During the Dvash-Banks family's interview at the Toronto Consulate on January 24, 2017, Ms. Day told Andrew and Elad that a form of additional information demonstrating the biological relationship required by the Department of State (the "State Department") is DNA evidence. | Ramsay Dep. 48:12-49:10, Reffett Dep. 68:22-69:4; 72:7-72:17. |
| 11 12 13 14 | 74. | Ms. Day provided Andrew and Elad with information concerning certain DNA testing establishments from which the Toronto Consulate accepts DNA testing results. | Jan. 24 Letter from Day. |
| 15 16 17 18 19 20 21 22 23 24 25 26 | 75. | By letter dated January 24, 2017 from Ms. Day to Andrew, the State Department informed the Dvash-Banks family that "in reference to your application for a U.S. passport and a [CRBA] for [A.J.] and [E.J.]… The U.S. Consulate General in Toronto has considered the evidence you submitted and concluded that the blood relationship between a U.S. citizen parent and children have not been established by a preponderance of the evidence as required to support a claim to U.S. citizenship." | Jan. 24 Letter from Day; 30(b)(6) Dep. 296:11-297:3; Reffett Dep. At 67:14-69:4. |
| 27 28 | 76. | On January 24, 2017, following the completion of the interview of the Dvash- | Ramsay Dep. 48:24-49:10. |

-11-

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | | Banks family at the Toronto Consulate, Ms. Day designated the status of each of the Twins' applications as "pending." | |
| 4<br>5<br>6<br>7<br>8<br>9 | 77. | A "pending" designation for CRBA applications is reserved for applications that cannot be finally adjudicated on the day of an applicant's interview and remain open pending submission of additional information requested by the State Department. | Reffett Dep. 67:14-68:11; Day Dep. 37:4-37:23. |
| 10<br>11<br>12<br>13<br>14<br>15 | 78. | During the Dvash-Banks family's interview at the Toronto Consulate on January 24, 2017, Andrew told Ms. Day that "these are our children.  These are our sons.  I'm the dad, and . . . Elad is the dad . . . we're the parents of these boys." | Day Dep. 119:22-120:12. |
| 16<br>17<br>18 | 79. | E.J.'s and A.J.'s applications for a CRBA and U.S. passport were adjudicated by Ms. Day under Section 309. | 30(b)(6) Dep. 273:2-15; Ramsay Dep. 131:22-132:5; 132:22-133:6; 164:9-164:14. |
| 19<br>20<br>21 | 80. | The State Department applied Section 309 in adjudicating E.J.'s applications for a U.S. passport and CRBA. | 30(b)(6) Dep. 273:2-7. |
| 22<br>23<br>24<br>25 | 81. | The State Department applies Section 309 to CRBA applications submitted on behalf of children who the State Department considers to have been born "out of wedlock." | 30(b)(6) Dep. 186:8-14. |
| 26<br>27<br>28 | 82. | The State Department interprets Section 309 to require, among other things, proof of a biological relationship between a CRBA | 30(b)(6) Dep. 273:2-273:15. |

| | | | |
|---|---|---|---|
| 1 | | applicant and that child's U.S. citizen parent. | |
| 2 | 83. | The State Department determined that Section 309 was the correct statutory section to apply in adjudicating E.J.'s applications for a U.S. passport and CRBA because E.J.'s biological parents were not married to each other. | 30(b)(6) Dep. 273:2-15. |
| 7 | 84. | The State Department applies Section 301 of the INA, 8 U.S.C. § 1401, ("Section 301") to CRBA applications submitted on behalf of children who the State Department considers to have been born "in wedlock." | 30(b)(6) Dep. 186:8-14. |
| 12 | 85. | The State Department interprets Section 301 to require, among other things, proof of a biological relationship between a CRBA applicant and both of his legal parents. | 30(b)(6) Dep. 178:10-178:19. |
| 16 | 86. | When she was adjudicating E.J.'s applications for a CRBA and U.S. passport, Ms. Day understood, based on her review of relevant provisions of the FAM, that the State Department interprets both Section 301 and Section 309 to require a biological relationship between a U.S. citizen parent and his child. | Day Dep. 232:23-233:10; 277:18-278:2. |
| 24 | 87. | After the January 24, 2017 interview, the Dvash-Banks proceeded to have DNA testing conducted by an establishment approved by the Toronto Consulate. | Viaguard A-M Letter. |
| 28 | 88. | The Toronto Consulate received DNA results | Ramsay Dep. 54:4-54:5; |

| | | | |
|---|---|---|---|
| 1 | | for E.J. and A.J. | Viaguard A-M Letter. |
| 2<br>3<br>4<br>5 | 89. | The DNA results received by the Toronto Consulate reflected that one of the Twins was the biological child of Andrew and one was not. | Ramsay Dep. 54:1-54:9. |
| 6<br>7 | | **THE STATE DEPARTMENT RECOGNIZES A.J. AS A U.S. CITIZEN AT BIRTH AND REFUSES TO RECOGNIZE E.J.'S U.S. CITIZENSHIP** | |
| 8 | | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| 9<br>10<br>11 | 90. | Ms. Day approved A.J.'s applications for a CRBA and U.S. passport. | Reffett Dep. 87:15-22; Day Dep. 166:16-166:24; A.J. CRBA. |
| 12<br>13 | 91. | The State Department issued a CRBA to A.J., dated March 2, 2017. | A.J. CRBA. |
| 14<br>15<br>16<br>17 | 92. | By letter dated March 2, 2017, on the letterhead of the Toronto Consulate, Ms. Day informed Andrew that E.J.'s "applications [for a CRBA and U.S. passport] are denied." | Mar. 2 Letter from Day; Reffett Dep. 65:6-65:9. |
| 18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 93. | Ms. Day's March 2, 2017 letter to Andrew stated, in part, "after careful review of the evidence you submitted with your child's application, it has been determined that his claim to U.S. citizenship has not been satisfactorily established, as you are not his biological father. The Immigration and Nationality Act (INA) of 1952, as amended, requires, among other things, a blood relationship between a child and the U.S. citizen parent in order for the parent to | Mar. 2 Letter from Day. |

| | | | |
|---|---|---|---|
| | | transmit U.S. citizenship." | |
| | 94. | Ms. Day's March 2, 2017 letter to Andrew denying E.J.'s applications for a U.S. passport and CRBA was the final determination of the applications by the State Department. | Reffett Dep. 77:14-17; 118:6-118:22. |
| | 95. | Ms. Day's March 2, 2017 letter terminated the application process for E.J.'s requests for a CRBA and U.S. passport with a denial and the State Department closed the files relating to E.J.'s applications. | Reffett Dep. 118:6-22. |
| | 96. | The reason for the State Department's denial of E.J.'s applications for a U.S. Passport and CRBA was that he did not establish a biological relationship to his U.S. citizen parent (Andrew). | Reffett Dep. 78:9-78:20. |
| | 97. | The State Department acknowledges that E.J.'s lack of a biological relationship to Andrew was the sole reason identified for the denial of E.J.'s applications. | 30(b)(6) Dep. 298:24-299:6. |
| | 98. | Following the Toronto Consulate's receipt of the DNA testing results for the Twins from an approved testing establishment, the Toronto Consulate followed the FAM guidance on applications submitted on behalf of children born by means of assisted reproductive technology. | Ramsay Dep. 154:16-154:23. |
| | 99. | Ms. Day granted A.J.'s applications for a U.S. Passport and CRBA. | Reffett Dep. 87:15-22 |

-15-

| | | |
|---|---|---|
| 100. | As a result of the State Department's denial of E.J.'s application, the Dvash-Banks family has suffered greatly. | Pls. Disc. Responses at Interrogatory No. 5. |
| 101. | Andrew and Elad feel the indignity of the U.S. Government's refusal to recognize their marriage and the legitimacy of their children. | Pls. Disc. Responses at Interrogatory No. 5. |
| 102. | The Dvash-Banks family's travel is significantly restricted or impaired because E.J. entered the United States on a tourist visa, which has expired, and although E.J. now has an Advance Parole document, it does not guarantee re-entry into the United States. | Pls. Disc. Responses at Interrogatory No. 5. |
| 103. | When the Dvash-Banks family has traveled, it always is with the fear that E.J., who does not have a U.S. passport, may not be permitted to re-enter the United States. | Pls. Disc. Responses at Interrogatory No. 5. |
| 104. | The Dvash-Banks has spent substantial time consulting with lawyers, their accountant, and others about a range of issues, from E.J.'s immigration status to obtaining medical benefits and a Tax ID number for E.J., who does not have a Social Security number. | Pls. Disc. Responses at Interrogatory No. 5. |
| 105. | The Dvash-Banks family has endured, and continues to endure, the pain and stigma of the State Department's refusal to recognize Andrew's marriage to Elad and status as E.J.'s parent, and its treatment of E.J. as illegitimate. | Pls. Disc. Responses at Interrogatory No. 5. |
| 106. | They also live with the invasion of their | Pls. Disc. Responses at |

| | | |
|---|---|---|
| | privacy resulting from their need to commence this litigation in federal court seeking recognition of E.J.'s U.S. citizenship at birth, which could have been provided privately at the Toronto Consulate. | Interrogatory No. 5. |
| | **THE STATE DEPARTMENT'S POLICIES** | |
| | UNDISPUTED FACT | SUPPORTING EVIDENCE |
| 107. | At the time of E.J.'s birth, Andrew and Elad were validly married. | Ramsay Dep. 65:15-20; 108: 2-7; 108:20-109:3;  30(b)(6) Dep. 260: 13-16. |
| 108. | Andrew is E.J.'s legal parent. | Ramsay Dep. 103:7-11; 104:19-105:12; 30(b)(6) Dep. 88:12-16; 261:16-18; 268:2-5. |
| 109. | Under the State Department's existing policies and procedures, a child is born "in wedlock" only if the two biological parents are married to each other. | 30(b)(6) Dep. 171:1-4. |
| 110. | The State Department applies this definition of "in wedlock" when a married couple uses assisted reproduction technology. | 30(b)(6) Dep. 173:19-174:2. |
| 111. | When a male same-sex couple uses sperm from one parent and an egg from a donor to conceive a child during their marriage, the State Department does not consider the child born "in wedlock." | 30(b)(6) Dep. 177:14-177:22; 180:2-9. |
| 112. | The State Department asserts that its understanding of "in wedlock" is based on the | 30(b)(6) Dep. 178:10-19; 180:10-15. |

| | | | |
|---|---|---|---|
| 1 | | language of Section 301. | |
| 2 | 113. | The State Department's understanding of "in wedlock" in interpreting the INA is reflected in 8 FAM § 304.1-2 (previously numbered 7 FAM 1140 Appendix E). | 30(b)(6) Dep. 180:16-181:10. |
| 6 | 114. | Under the State Department's policies, E.J. and A.J. were born "out of wedlock" within the meaning of Section 309. | 30(b)(6) Dep. 188:6-15; 271:20-22; 274:25-275:6. |
| 9 | 115. | Under the State Department's policies, Andrew and Elad can never have a child "in wedlock" together because they are two men. | 30(b)(6) Dep. 274:25-275:6. |
| 12 | 116. | Under the State Department's policies, two legally married men who have always been men could never have a child "in wedlock" for purposes of adjudicating a CRBA application. | 30(b)(6) Dep. 201:2-16. |
| 17 | 117. | Absent the possibility that the law of the country of birth or domicile of a child born to a married male same-sex couple using assisted reproductive technology provides for the child's legitimation, the State Department does not consider the child as legitimate. | 30(b)(6) Dep. 211:23-213: 25. |
| 23 | 118. | The State Department's policy is that Section 301 requires that a U.S. citizen parent have a biological relationship with a child born outside of the United States in order to transmit U.S. citizenship at birth to the child, even if the parent is the legal parent of the | Reffett Dep. 121:22-122:7; 124:9-125:3; 157:3-4; 30(b)(6) Dep. 158:25-159:13. |

-18-

| | | | |
|---|---|---|---|
| 1 2 | | child and was married to the child's other legal parent at the time of the child's birth. | |
| 3 4 5 6 7 8 | 119. | The Toronto Consulate follows guidance from the State Department in Washington, D.C. as to the requirements for issuance of a CRBA, and there are no Toronto-specific policies concerning the adjudication of CRBA applications. | Reffett Dep. 30:12-21; Ramsay Dep. 17:22-18:1; Day Dep. 24:2-24:12; 30(b)(6) Dep. 92:6-92:15. |
| 9 10 11 12 13 14 15 | 120. | The Toronto Consulate is expected by the State Department to follow State Department policies and FAM guidance issued by the State Department in Washington, D.C. regarding applications submitted on behalf of children born by means of assisted reproductive technology. | 30(b)(6) Dep. 93:3-93:8. |
| 16 17 18 19 20 | 121. | The Toronto Consulate follows State Department policies and FAM guidance issued by the State Department in Washington, D.C. regarding the adjudication of CRBA and passport applications. | Reffett Dep. 60:18-61:6; 30(b)(6) Dep. 92:20-93:8. |
| 21 22 23 24 | 122. | The Toronto Consulate understood the FAM guidance to require a biological relationship between the applicant for a CRBA and/or U.S. passport and the child's U.S. citizen parent. | Ramsay Dep. 154:16-154:23. |
| 25 26 27 28 | 123. | The State Department interprets Section 301 to require a biological connection between a married U.S. citizen and his child born outside of the United States in order to transmit U.S. | 30(b)(6) Dep. 158:25-159:13. |

-19-

| | | |
|---|---|---|
| | | citizenship at birth to the child. | |
| 124. | The text of Section 301 does not contain the phrase "in wedlock." | 30(b)(6) Dep. 182:21-25; 183:7-183:8. |
| 125. | The text of Section 301 contains no reference to a "blood" relationship. | 30(b)(6) Dep. 183:9-13; 191:6-14. |
| 126. | The State Department's interpretation of Section 301 is based on the State Department's interpretation of the words "born . . . of parents" in Section 301 as referring to a biological parent of the child. | 30(b)(6) Dep. 178:13-19; 180:10-15. |
| 127. | The State Department changed its interpretation of Section 301 in 2014 to interpret "born . . . of parents" to include not only a genetic parent, but also a gestational mother who did not provide the genetic material (*i.e.*, egg) for the child. | Reffett Dep. 183:4-183:18; 30(b)(6) Dep. 166:14-22; Ramsay Dep. at 84:7-84:12. |
| 128. | Prior to that change, the State Department interpreted Section 301 as excluding from the biological relationship that the State Department requires, a gestational mother who did not provide genetic material for the child. | 30(b)(6) Dep. 172:21-173:12. |
| 129. | The State Department made this change even though Congress had not made any corresponding amendment of the INA because the State Department simply "changed its mind" as to its interpretation of Section 301. | 30(b)(6) Dep. 243:1-4, 15-20. |
| 130. | The State Department's determination to | 30(b)(6) Dep. 175:2-5; |

| | | | |
|---|---|---|---|
| 1 2 3 4 5 | | interpret Section 301 as treating a child born outside the U.S. whose U.S. citizen parent was the child's gestational mother as a U.S. citizen at birth was a policy decision made by the State Department. | 219:25-220:8. |
| 6 7 8 9 10 | 131. | The State Department considered changing its interpretation of Section 301 to deem children born through assisted reproductive technology to same-sex couples as U.S. citizens at birth, but did not do so. | 30(b)(6) Dep. 225:1-16; 229:1-8. |
| 11 12 13 14 15 16 17 18 19 20 21 22 | 132. | An individual within the State Department wrote a memorandum to the Secretary of State stating that the State Department's Bureau of Consular Affairs had been "studying whether we can interpret the INA to allow U.S. citizen parents to transmit U.S. citizenship to their children born abroad through [assisted reproductive technology] in a broader range of circumstances," and was "considering how this would impact children born through [assisted reproductive technology] overseas to same-sex couples." | 30(b)(6) Dep. 222:11-24. |
| 23 24 25 26 27 28 | 133. | The State Department's interpretation of the INA as requiring a biological relationship between a married U.S. citizen parent and a child born outside the United States for purposes of recognizing U.S. citizenship at birth is inconsistent with the rulings of various | 30(b)(6) Dep. 245:9-19; 250:3-250:15. |

| | | |
|---|---|---|
| federal circuit courts of appeals. | | |
| 134. | The State Department does not follow the decisions of any federal circuit court of appeals holding that Section 301 does not include a biological relationship requirement and does not consider itself bound to do so. | 30(b)(6) Dep. 251:4-9. |
| 135. | The State Department does not follow the ruling of the Court of Appeals for the Ninth Circuit in *Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005), which held that Section 301 does not require a biological relationship between a U.S. citizen parent and his child. | 30(b)(6) Dep. 249:6-20. |
| 136. | The State Department does not follow the ruling of the Court of Appeals for the Ninth Circuit in *Scales* v. *INS*, 232 F.3d 1159 (9th Cir. 2000), which held that Section 301 does not require a biological relationship between a U.S. citizen parent and his child. | 30(b)(6) Dep. 251:4-9. |
| 137. | The State Department does not follow the ruling of the Court of Appeals for the Second Circuit in *Jaen* v. *Sessions*, 899 F.3d 182 (2d Cir. 2018), which held that Section 301 does not require a biological relationship between a U.S. citizen parent and his child. | 30(b)(6) Dep. 251:4-9. |
| 138. | The State Department's rationale for its interpretation of Section 301 is not rooted in a concern that interpreting Section 301 as not | 30(b)(6) Dep. 317:2-8. |

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | | requiring a biological relationship between an applicant for a CRBA or U.S. passport who was born outside the United States and the child's United States citizen parent would create or increase the risk of fraud in connection with applications for recognition of U.S. citizenship. | |
| 8<br>9<br>10<br>11<br>12<br>13 | 139. | The State Department's interpretation of Section 301 as requiring a genetic or gestational relationship between a U.S. citizen parent and a child is memorialized in 8 FAM § 304.1-2 (previously numbered 7 FAM 1140 Appendix E). | 30(b)(6) Dep. 171:18-172:20. |
| 14<br>15 | 140. | The FAM is not subject to notice-and-comment rule making. | 30(b)(6) Dep. 244:13-18. |
| 16 | 141. | The FAM is not approved by Congress. | 30(b)(6) Dep. 244:5-6. |
| 17<br>18<br>19<br>20 | 142. | The State Department acknowledges that the FAM policies regarding recognition of U.S. citizenship include requirements not specifically set out in the INA. | 30(b)(6) Dep. 103:5-11; 104:8-11. |
| 21 | 143. | The FAM does not have the force of law. | 30(b)(6) Dep. 244:20-244:25. |
| 22<br>23<br>24<br>25<br>26 | 144. | The State Department does not track how frequently CRBA applicants are asked to undergo DNA testing or how often CRBA applications submitted on behalf of children of same-sex couples are granted or denied. | 30(b)(6) Dep. 315:10-13; 320:20-321:3. |
| 27<br>28 | 145. | The State Department acknowledges that Andrew is E.J.'s legal parent. | 30(b)(6) Dep. 88:12-16; 261:16-18; 268:2-5. |

-23-

| | | |
|---|---|---|
| 146. | The State Department considers Andrew to be E.J.'s legal parent at birth under Ontario law. | 30(b)(6) Dep. 268:2-5. |
| 147. | The State Department acknowledges that Andrew and Elad are E.J.'s only legal parents. | 30(b)(6) Dep. 261:16-261:18. |
| 148. | The State Department acknowledges that Andrew and Elad are identified as E.J.'s parents on E.J.'s Statement of Live Birth. | 30(b)(6) Dep. 260:21-261:1. |
| 149. | The State Department acknowledges that Andrew and Elad were validly married at the time of the Twins' birth. | 30(b)(6) Dep. 260:17-260:20. |
| **CONCLUSIONS OF LAW** | | |
| | CONCLUSION OF LAW | SUPPORTING LAW |
| 150. | E.J. was born in wedlock under the INA. | *See* 8 U.S.C. § 1401; *Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005); *Scales* v. *INS*, 232 F.3d 1159 (9th Cir. 2000); *see also Jaen* v. *Sessions*, 899 F.3d 182 (2d Cir. 2018). |
| 151. | Andrew is a U.S. citizen who meets the residency requirements imposed by Section 301(g). | *See* 8 U.S.C. § 1401(g); Dvash-Banks Dep. 169:13-169:19; Dvash-Banks Dep. 171:3-171:6. |
| 152. | Andrew was married to Elad at the time of E.J.'s birth. | Marriage Lic.; Dvash-Banks Dep. 29:5-29:8. |
| 153. | Andrew and Elad are E.J.'s legal parents under Ontario law. | Canadian Order; E.J. Statement of Live Birth; Surrogacy Agmt. |

-24-

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | 154. | Section 301 does not require a biological relationship between a U.S. citizen and his child in order to transmit U.S. citizenship. | 8 U.S.C. § 1401; *Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005); *Scales* v. *INS*, 232 F.3d 1159 (9th Cir. 2000); *see also Jaen* v. *Sessions*, 899 F.3d 182 (2d Cir. 2018). |
| 8<br>9<br>10<br>11<br>12<br>13<br>14 | 155. | Section 301 does not require that a child's biological parents be married to each other in order for the child to acquire U.S. citizenship at birth. | 8 U.S.C. § 1401; *Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005); *Scales* v. *INS*, 232 F.3d 1159 (9th Cir. 2000); *Jaen* v. *Sessions*, 899 F.3d 182 (2d Cir. 2018). |
| 15<br>16<br>17<br>18<br>19<br>20<br>21 | 156. | E.J.'s applications for a CRBA and U.S. passport were improperly adjudicated by the State Department under Section 309 instead of Section 301. | *See* 8 U.S.C. § 1401; *Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005); *Scales* v. *INS*, 232 F.3d 1159 (9th Cir. 2000); *see also Jaen* v. *Sessions*, 899 F.3d 182 (2d Cir. 2018). |
| 22<br>23<br>24<br>25 | 157. | Ninth Circuit law forecloses the State Department's interpretation of Section 301 as requiring a biological relationship between a U.S. citizen and his child. | *Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005); *Scales* v. *INS*, 232 F.3d 1159 (9th Cir. 2000). |
| 26<br>27<br>28 | 158. | E.J. is a United States citizen at birth. | *See* 8 U.S.C. § 1401; *Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005); |

| | | | |
|---|---|---|---|
| | | | *Scales* v. *INS*, 232 F.3d 1159 (9th Cir. 2000); *see also Jaen* v. *Sessions*, 899 F.3d 182 (2d Cir. 2018). |
| | 159. | E.J. is entitled to a declaration of citizenship at birth pursuant to 8 U.S.C. § 1503 and the Declaratory Judgment Act. | *See* 8 U.S.C. § 1503; 28 U.S.C. 2201; *see also* 8 U.S.C. § 1401; *Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005); *Scales* v. *INS*, 232 F.3d 1159 (9th Cir. 2000); *Jaen* v. *Sessions*, 899 F.3d 182 (2d Cir. 2018). |
| | 160. | The State Department's interpretation of the INA infringes the fundamental right to marry. | *See Pavan* v. *Nathaniel Smith*, 137 S. Ct. 2075 (2017); *Obergefell* v. *Hodges*, 135 S. Ct. 2584 (2015); *Zablocki* v. *Redhail*, 434 U.S. 374 (1978). |
| | 161. | The State Department has not articulated any governmental interest underlying the imposition of a biological relationship requirement under Section 301. | *See* 30(b)(6) Dep. 317:2-8. |
| | 162. | The State Department has not articulated any governmental interest underlying, or justification for, the imposition of a biological relationship requirement under Section 301 that is either compelling or narrowly tailored | *See* 30(b)(6) Dep. 317:2-8; *Washington* v. *Glucksberg*, 521 U.S. 702 (1997); *United States* v. *Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. |

| | | | |
|---|---|---|---|
| 1<br>2 | | to achieve a compelling governmental interest. | 2012). |
| 3<br>4<br>5<br>6 | 163. | The State Department's interpretation of Section 301 as requiring a biological relationship between a U.S. citizen parent and his child violates Ninth Circuit law. | *See Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005); *Scales* v. *INS*, 232 F.3d 1159 (9th Cir. 2000). |
| 7<br>8<br>9<br>10<br>11<br>12<br>13 | 164. | The State Department's interpretation of Section 301 as requiring a biological relationship between a U.S. citizen parent and his child conflicts with the text of the INA. | *See* 8 U.S.C. §§ 1401, 1409; *Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005); *Scales* v. *INS*, 232 F.3d 1159 (9th Cir. 2000); *see also Jaen* v. *Sessions*, 899 F.3d 182 (2d Cir. 2018). |
| 14<br>15<br>16<br>17<br>18<br>19<br>20 | 165. | The legislative purpose of the INA is to keep families together. | H.R. Rep. No. 85-1199 (1957); *see also Sook Young Hong* v. *Napolitano*, 772 F. Supp. 2d 1270 (D. Haw. 2011); *Nation* v. *Esperdy*, 239 F. Supp. 531 (S.D.N.Y. 1965). |
| 21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 166. | The State Department's interpretation of Section 301 as requiring a biological relationship between a U.S. citizen parent and his child conflicts with the purpose of the INA. | *See* H.R. Rep. No. 85-1199 (1957); *see also Nation* v. *Esperdy*, 239 F. Supp. 531 (S.D.N.Y. 1965); *see also Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005); *Scales* v. *INS*, 232 F.3d 1159 (9th Cir. 2000); |

| | | |
|---|---|---|
| 1<br>2 | | *Jaen* v. *Sessions*, 899 F.3d 182 (2d Cir. 2018). |
| 3<br>4<br>5<br>6<br>7<br>8<br>9 | 167. | The State Department's interpretation of Section 301 as requiring a biological relationship between a U.S. citizen parent and his child violates the Due Process Clause of the Fifth Amendment. | U.S. CONST., art. V; *see Pavan* v. *Nathaniel Smith*, 137 S. Ct. 2075 (2017); *Obergefell* v. *Hodges*, 135 S. Ct. 2584 (2015); *Zablocki* v. *Redhail*, 434 U.S. 374 (1978). |
| 10<br>11<br>12<br>13 | 168. | Andrew and E.J. are entitled to a declaration that the State Department's interpretation and application of Section 301 is unconstitutional and unlawful. | *See* U.S. CONST., art. V; 28 U.S.C. §§ 2201, 2202. |
| 14<br>15<br>16<br>17 | 169. | Andrew and E.J. are entitled to an injunction precluding the State Department from continuing to impose a biological relationship requirement under Section 301. | U.S. CONST., art. V; 5 U.S.C. § 702. |
| 18<br>19<br>20 | 170. | Andrew and E.J. are entitled to attorneys' fees and costs incurred on behalf of Plaintiffs in connection with the above-captioned action. | 28 U.S.C. § 2412. |

-28-

1   Dated:  January 7, 2019                    Respectfully submitted,

2

3                                        By:  /s/ Alexa M. Lawson-Remer
                                              Alexa M. Lawson-Remer (SBN 268855)
                                              lawsonr@sullcrom.com
4                                             SULLIVAN & CROMWELL LLP
                                              1888 Century Park East, Suite 2100
5                                             Los Angeles, California 90067-1725
                                              Telephone:   (310) 712-6600
6                                             Facsimile:    (310) 712-8800

7                                             Theodore Edelman (*pro hac vice*)
                                              edlemant@sullcrom.com
8                                             Jessica Klein (*pro hac vice*)
                                              kleinj@sullcrom.com
9                                             Lauren M. Goldsmith (SBN 293269)
                                              goldsmithl@sullcrom.com
10                                            SULLIVAN & CROMWELL LLP
                                              125 Broad Street
11                                            New York, New York 10004-2498
                                              Telephone:   (212) 558-4000
12                                            Facsimile:    (212) 558-3588

13                                            Aaron C. Morris (*pro hac vice*)
                                              amorris@immigrationequality.org
14                                            IMMIGRATION EQUALITY
                                              40 Exchange Place, Suite 1300
15                                            New York, New York 10005-2744
                                              Telephone:  (212) 714-2904
16
                                              *Attorneys for Plaintiffs*
17

18

19

20

21

22

23

24

25

26

27

28

-29-