JOSEPH H. HUNT
   Assistant Attorney General
ANTHONY J. COPPOLINO
   Deputy Director
LISA ZEIDNER MARCUS
   Senior Counsel
   Tel: (202-514-3336
   lisa.marcus@usdoj.gov
VINITA B. ANDRAPALLIYAL
   Trial Attorney
   Tel: (202) 305-0845
   vinita.b.andrapalliyal@usdoj.gov
UNITED STATES DEPARTMENT OF JUSTICE
   Civil Division, Federal Programs Branch
   P.O. Box 883
   Washington, DC 20044

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANDREW MASON DVASH-BANKS and E.J. DVASH-BANKS<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF STATE, and THE HONORABLE MICHAEL R. POMPEO, Secretary of State,<br><br>Defendants. | Case No. CV 18-523-JFW(JCx)<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: Feb. 4, 2019<br><br>Honorable John F. Walter |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

FACTUAL BACKGROUND ..................................................................3

LEGAL BACKGROUND ......................................................................5

   I.   Basic principles of U.S. citizenship and naturalization...................5

   II.   8 U.S.C. §§ 1401 and 1409 .........................................................6

   III.   The Secretary of State's authority to issue Consular Reports of Birth Abroad and U.S. passports .......................................................7

   IV.   The Department of Homeland Security's role in adjudicating citizenship claims in the United States ..........................................................10

LEGAL STANDARDS ........................................................................11

ARGUMENT .......................................................................................12

   I.   Plaintiffs' APA claim fails because there exists multiple, adequate remedies at law...............................................................................12

   II.   Defendants are entitled to summary judgment on Plaintiffs' Substantive Due Process claim in Count I. ......................................................16

CONCLUSION ....................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Acevedo v. Lynch,*
 798 F.3d 1167 (9th Cir. 2015)....................................................................21

*Acheson v. Maenza,*
 202 F.2d 453 (D.C. Cir. 1953) .....................................................................5

*Aetna Life Ins. Co. v. Haworth,*
 300 U.S. 227 (1937) ...................................................................................16

*Ali v. Rumsfeld,*
 649 F.3d 762 (D.C. Cir. 2011) ...................................................................16

*Alsaidi v. U.S. Dep't of State,*
 292 F. Supp. 3d 320 (D.D.C. 2018) ...........................................................13

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) ...................................................................................11

*Astrue v. Capato ex rel. B.N.C.,*
 566 U.S. 541 (2012) ...................................................................................21

*Bowen v. Massachusetts,*
 487 U.S. 879 (1988) ...................................................................................12

*Browning,*
 292 F.3d 235 ....................................................................................... 21, 22

*Califano v. Yamasaki,*
 442 U.S. 682 (1979) ............................................................................. 15, 23

*California v. Azar,*
 — F.3d —, 18-15144, 2018 WL 6566752 (9th Cir. Dec. 13, 2018).............. 15, 23

*Campos v. Nail,*
  43 F.3d 1285 (9th Cir. 1994) ....................................................................19

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ...............................................................................11

*Chavez v. Martinez,*
  538 U.S. 760 (2003) ...............................................................................17

*City & County of San Francisco v. Trump,*
  897 F.3d 1225 (9th Cir. 2018) ................................................................15

*Colaianni v. I.N.S.,*
  490 F.3d 185 (2d Cir. 2007) ...................................................................21

*Collins v. City of Harker Heights,*
  503 U.S. 115 (1992) ...................................................................... 16, 17

*Coos Cnty. Bd. of County Com'rs v. Kempthorne,*
  531 F.3d 792 (9th Cir. 2008) ..................................................................12

*Ctr. For Biological Diversity v. U.S. Dept. of Hous. & Urban Dev.,*
  241 F.R.D. 495 (D. Ariz. 2006) ..............................................................14

*Durable Mfg. Co. v. U.S. Dep't of Labor,*
  578 F.3d 497 (7th Cir. 1999) ....................................................................8

*Elgharib v. Napolitano,*
  600 F.3d 597 (6th Cir. 2010) ....................................................................7

*Erotic Serv. Provider Legal Educ. & Research Project v. Gascon,*
  880 F.3d 450 (9th Cir. 2018) ..................................................................19

*Esparza v. Clinton,*
  6:12-CV-925-AA, 2012 WL 6738281 (D. Or. Dec. 21, 2012) ..............13

*F.T.C. v. Stefanchik,*
  559 F.3d 924 (9th Cir. 2009) ..................................................................11

*Fields v. Palmdale Sch. Dist.,*
  271 F. Supp. 2d 1217 (C.D. Cal. 2003)..................................................17

*Franceschi v. Yee*,
  887 F.3d 927 (9th Cir. 2018)..............................................................17

*Freeman v. Arpaio*,
  125 F.3d 732 (9th Cir. 1997)..............................................................11

*Galen v. County of Los Angeles*,
  477 F.3d 652 (9th Cir. 2007)..............................................................11

*Garcia v. Vilsack*,
  563 F.3d 519 (D.C. Cir. 2009) ...........................................................12

*Gill v. Whitford*,
  138 S.Ct. 1916 (2018) .............................................................. 15, 23

*Haig v. Agee*,
  453 U.S. 280 (1981) ...........................................................................7

*Hizam v. Kerry*,
  747 F.3d 102 (2d Cir. 2014)....................................................... 8, 9, 12

*Hutchins v. Dist. of Columbia*,
  188 F.3d 531 (D.C. Cir. 1999) ...........................................................17

*Icaza v. Schultz*,
  656 F. Supp. 819 (D.D.C. 1987) ........................................................18

*Kim v. United States*,
  121 F.3d 1269 (9th Cir. 1997).....................................................17, 19

*L. Xia v. Tillerson*,
  865 F.3d 643 (D.C. Cir. 2017) .............................................................7

*Litmon v. Harris*,
  768 F.3d 1237 (9th Cir. 2014).............................................................17

*Lujan v. Nat'l Wildlife Fed'n*,

   497 U.S. 871 (1990) ...................................................................................14

*Madsen v. Women's Health Ctr., Inc.*,

   512 U.S. 753 (1994) ...................................................................................14

*Marquez-Marquez v. Gonzales*,

   455 F.3d 548 (5th Cir. 2006)......................................................................21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

   475 U.S. 574, (1986) ..................................................................................11

*MedImmune, Inc. v. Genentech, Inc.*,

   549 U.S. 118 (2007) ...................................................................................16

*Miller v. Albright*,

   523 U.S. 420 (1998) ..................................................................... 6, 18, 20

*Mullins v. Oregon*,

   57 F.3d 789 (9th Cir. 1995)........................................................................17

*Nickerson v. United States*, CV 07-211 JH/WDS,

   2007 WL 9662632 (D.N.M. Oct. 31, 2007).............................................15

*Ortega-Morales v. Lynch*,

   168 F. Supp. 3d 1228 (D. Ariz. 2016).......................................................13

*Reno v. Flores*,

   507 U.S. 292 (1993) ...................................................................................16

*Rogers v. Bellei*,

   401 U.S. 815 (1971) ................................................................ 5, 6, 18, 20

*Scales v. INS*,

   232 F.3d 1159 (9th Cir. 2000).................................................... 10, 15, 19

*Sessions v. Morales-Santana*,

   137 S. Ct. 1678 (2017) ...............................................................................6, 7

*Shanks v. Dressel,*

  540 F.3d 1082 (9th Cir. 2008)......................................................................19

*Smith v. Org. of Foster Families for Equal. & Reform,*

  431 U.S. 816 (1977) .....................................................................................21

*Solis-Espinoza,*

  401 F.3d 1090 (9th Cir. 2005)........................................................ 10, 19

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation,*

  873 F.2d 1221 (9th Cir. 1989).....................................................................16

*Tuan Anh Nguyen v. INS,*

  533 U.S. 53 (2001) .......................................................... 6, 18, 20

*Tuaua v. United States,*

  788 F.3d 300 (D.C. Cir. 2015) ......................................................................5

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.,*

  136 S. Ct. 1807 (2016) .................................................................................12

*United States v. Hancock,*

  231 F.3d 557 (9th Cir. 2000)........................................................................19

*United States v. Kenney,*

  789 F.2d 783 (9th Cir. 1986)........................................................................19

*United States v. Wong Kim Ark,*

  169 U.S. 649 (1898) .......................................................................................5

*Villarreal v. Horn,*

  203 F.Supp.3d 765 (S.D. Tex. 2016) ........................................... 13, 14

*Washington v. Glucksberg,*

  521 U.S. 702 (1997) .....................................................................................17

*Yith v. Nielsen,*

  881 F.3d 1155 (9th Cir. 2018).....................................................................7, 8

1

## Statutes

2

3

5 U.S.C. § 704 ............................................................................................ 2, 12

5 U.S.C. § 706(2)(A) .........................................................................................14

5 U.S.C. § 706(A) .............................................................................................15

6 U.S.C. § 251 ...................................................................................................8

6 U.S.C. § 557 ...................................................................................................8

8 U.S.C. § 1101(c) ...........................................................................................21

8 U.S.C. § 1103(a)(1) .......................................................................................10

8 U.S.C. § 1104 ............................................................................................1, 7

8 U.S.C. § 1401(a) .............................................................................................6

8 U.S.C. § 1401(g) ............................................................................... passim

8 U.S.C. § 1409 ......................................................................................6, 7, 9

8 U.S.C. § 1421 ...................................................................................................8

8 U.S.C. § 1421(a) .............................................................................................7

8 U.S.C. § 1452 ......................................................................................2, 10, 15

8 U.S.C. § 1503 ..............................................................................2, 12, 13, 15

8 U.S.C. § 1503(a) ............................................................................... passim

8 U.S.C. § 1504(a) .............................................................................................7

8 U.S.C. §§ 1401 ................................................................................. passim

8 U.S.C. §§ 1431(b) .........................................................................................21

22 U.S.C. § 211a ................................................................................................7

22 U.S.C. § 2705 ................................................................................. passim

## Rules

Fed. R. Civ. P. 56(c) ........................................................................................11

## Regulations

22 C.F.R. § 50.2 .................................................................................. 14, 15

22 C.F.R. § 50.5 ....................................................................................14

22 C.F.R. § 50.7 ......................................................................................7

## Other Authorities

U.S. Const. amend. XIV ..........................................................................5

E.O. 11295 (Aug. 5, 1966).......................................................................7

**INTRODUCTION**

The U.S. Department of State adjudicates citizenship claims for persons—including minor children—located abroad, pursuant to the statutory grant of authority in 8 U.S.C. § 1104, which "charge[s]" the Secretary of State "with the administration and the enforcement of the … immigration and nationality laws relating to … the determination of nationality of a person not in the United States." This case concerns applications for a Consular Report of Birth Abroad ("CRBA")[1] and for a U.S. passport submitted in January 2017 to the Department of State at the U.S. Consulate General Toronto ("Consulate Toronto" or "the Consulate")[2] on behalf of a minor child, E.J. D-B, who was, at the time of his application, located in Toronto, Canada.

E.J. D-B (hereinafter, "E.J.") was born in September 2016 in Toronto via a gestational surrogate. E.J.'s legal parents, Andrew and Elad Dvash-Banks, who were married to each other at the time of E.J.'s birth; Andrew holds United States and Canadian citizenship, and Elad is an Israeli citizen. In January 2017, Andrew and Elad appeared in person at Consulate Toronto to submit applications for CRBAs and U.S. passports for E.J. and his biological half-brother A.J. The application materials showed that each child had been born using assisted reproductive technology ("ART").

A consular officer at Consulate Toronto interviewed the Dvash-Banks family in connection  with these applications, and inquired into whether the Dvash-Banks family could establish under the Immigration and Nationality Act of 1952 ("INA"), as interpreted by the Department of State ("the Department"), each child's eligibility for U.S. citizenship at birth for children born abroad. She

---

[1] A Consular Report of Birth Abroad "is a formal document certifying the acquisition of U.S. citizenship at birth by a person born abroad to a U.S. citizen parent(s)." 8 FAM 101.1-2; *see also* 22 U.S.C. § 2705.

[2] The Department of State directs and instructs U.S. missions abroad, including Consulate Toronto, in the performance of its consular and diplomatic functions.

conveyed to the Dvash-Banks family that their applications did not contain sufficient evidence to allow her to conclude that E.J. and A.J. were entitled to a CRBA and a U.S. passport, and she advised the family that they could submit additional evidence to support their applications. Thereafter the family arranged for DNA testing for the children, and had the test results sent to the Consulate. Ultimately, based on the totality of the evidence presented, the consular officer denied the applications submitted on behalf of E.J., and granted the applications submitted on behalf of A.J.

Plaintiffs through this action challenge those denials. They assert that the denial of E.J.'s applications violated the Administrative Procedure Act ("APA") and Plaintiffs' substantive due process rights. The Dvash-Banks family currently lives in Los Angeles, and Plaintiffs' Complaint also pursues a claim under 8 U.S.C. § 1503(a), which provides a mechanism for the Court to conduct a *de novo* review of E.J.'s citizenship status.[3] Defendants move for summary judgment on the APA and Due Process claims.

There are no issues of material fact with respect to Plaintiffs' APA and due process claims, and Defendants are entitled to summary judgment on those claims. First, Plaintiffs' APA claim should be dismissed because the APA's general grant of judicial review precludes review of final agency action for which there is an "other adequate remedy in a court." 5 U.S.C. § 704. Congress has provided a specific, separate avenue for Plaintiffs to obtain judicial review of their claims that they have been denied "a right or privilege as a national of the United States": the provisions of 8 U.S.C. § 1503, under which Plaintiffs have filed a separate claim. Additionally, because the Dvash-Banks family is currently located in the United States, specifically in California, they may apply for a certificate of citizenship for E.J. from U.S. Citizenship & Immigration Services ("USCIS"), under 8 U.S.C.

---

[3] Section 1503(a) applies to "any person who is within the United States . . . ." 8 U.S.C. § 1503(a).

§ 1452.  Congress has made clear that a certificate of citizenship provides proof of citizenship equivalent to that of a CRBA or U.S. passport. *See* 22 U.S.C. § 2705. Because §§ 1503 and 1452 each provide an "adequate remedy at law," APA review is unavailable to Plaintiffs. Second, Plaintiffs' claims under the Declaratory Judgment Act ("DJA") must fail because Plaintiffs cannot establish that Defendants' actions violate a fundamental right and because Defendants' actions easily pass rational-basis review, thus satisfying the constitutional tenet of substantive due process.

For these reasons, and as explained more fully below, the Court should grant Defendants' motion for partial summary judgment.

## FACTUAL BACKGROUND

Andrew Dvash-Banks (*né* Andrew Banks) holds dual U.S. and Canadian citizenship. Stmt. ¶ 1.[4] In August 2010, he married Elad Dvash-Banks (*né* Elad Dvash), an Israeli citizen, in Toronto, Canada. *Id.* ¶ 3. Andrew and Elad used Assisted Reproductive Technology ("ART") to have two children named E.J. and A.J. *Id.* ¶¶ 4–7. They used an anonymous egg donor to conceive the children, and a gestational carrier to carry and give birth to them. *Id.* ¶¶ 4, 7. E.J. and A.J. are biological half-brothers; they share the same anonymous egg donor. *Id.* ¶ 6. E.J. and A.J. were carried by the same surrogate; she carried them in tandem, and they were born on the same day. *Id.* ¶ 7. They were born on September 16, 2016, in Toronto, Ontario. *See id.* ¶¶ 5, 7. DNA testing later revealed that E.J. was not biologically related to Andrew; the test returned a 0% probability of paternity result. *Id.* ¶ 8.

On September 28, 2016, Andrew and Elad petitioned the Superior Court of Justice in Toronto, Ontario, to declare them to be the parents of E.J. and A.J. *Id.*

---

[4] In accordance with the Court's Standing Order, this memorandum supports factual statements with citations to paragraphs in the Statement of Uncontroverted Facts and Conclusions of Law ("Stmt."). *See* ECF No. 27. That document, in turn, lists the relevant underlying evidence supporting particular facts. *Id.*

¶¶ 9–10. The court granted the Dvash-Banks' application, and directed the Deputy Registrar General for the Province of Ontario to register the birth of the children as to show Andrew and Elad as the parents of the children. *Id.* ¶¶ 10–11.

In late 2016, Andrew made an appointment at the Consulate Toronto to submit applications for CRBAs and U.S. Passports for E.J. and A.J. *Id.* ¶¶ 14–15. On the day of their appointment, January 24, 2017, Andrew, Elad, E.J., and A.J. appeared at the Consulate Toronto to submit the applications and be interviewed by a consular officer. *Id.* ¶ 14. Andrew and Elad submitted to the Consulate applications that showed that the children had been born using ART. *Id.* ¶ 24.

During the interview, the consular officer concluded that it was unclear which (if either) of the children, E.J. and A.J., had a biological relationship to the U.S. citizen father (Andrew). *Id.* ¶ 28. When the family answered "no," she provided them the option of submitting DNA evidence to prove such relationship, and a letter outlining relevant steps should they choose to pursue that option. *Id.* ¶¶ 29–32.

The Dvash-Banks family left the Consulate. Thereafter they chose to pursue the DNA option, and arranged to have DNA testing conducted and submitted in support of E.J.'s and A.J.'s applications. *Id.* ¶ 33. Ultimately, the adjudicating officer denied E.J.'s applications on the ground that the applicants had failed to establish a biological connection between E.J. and a U.S. citizen parent. *Id.* ¶¶ 35–36.

In January 2018, Andrew filed the instant suit on behalf of himself and E.J.,[5] challenging the decisions by Defendants to deny E.J.'s CRBA and U.S. passport applications. In their Complaint, Plaintiffs asserted that the denial of E.J.'s applications violated the Administrative Procedure Act. Plaintiffs also asserted claims under the Declaratory Judgment Act ("DJA") alleging violations of their

---

[5] In December 2018, Elad was appointed guardian *ad litem* for E.J. in the instant action.

1  substantive due process and equal protection rights. The Complaint also pursued a
2  claim under 8 U.S.C. § 1503(a), which provides a mechanism for the Court to
3  conduct a *de novo* review of E.J.'s citizenship status.

4      On January 4, 2019, Plaintiffs filed an application to submit an Amended
5  Complaint, which removes Plaintiffs' DJA claim alleging an equal protection
6  violation. *See* ECF No. 79. Defendants move for summary judgment on Plaintiffs'
7  APA and substantive due process claims.

## LEGAL BACKGROUND

### I.   Basic principles of U.S. citizenship and naturalization

10     In the United States, "'nationality may be predicated either on *jus soli* or on *jus
11  sanguinis*,'" *Tuaua v. United States*, 788 F.3d 300, 309 (D.C. Cir. 2015) (quoting
12  *Acheson v. Maenza*, 202 F.2d 453, 459 (D.C. Cir. 1953)), terms that translate to
13  "right of birthplace" and "right of blood," respectively, *see id.* As originally
14  adopted, the Constitution lacked any definition of citizenship. *Rogers v. Bellei*, 401
15  U.S. 815, 828 (1971). This changed with ratification of the Fourteenth Amendment
16  in July 1868, *see id.*, which provides: "All persons born or naturalized in the
17  United States, and subject to the jurisdiction thereof, are citizens of the United
18  States and of the State wherein they reside."[6] U.S. Const. amend. XIV, § 1. The
19  Fourteenth Amendment "relat[es] to the acquisition of citizenship by facts
20  occurring within the limits of the United States." *United States v. Wong Kim Ark*,
21  169 U.S. 649, 688 (1898). It does not cover "the acquisition of citizenship by being
22  born abroad of American parents," and instead "left that subject to be regulated, as
23  it had always been, by congress, in the exercise of the power conferred by the

---

[6] "This sentence of the fourteenth amendment is declaratory of existing rights [at the time of passage], and affirmative of existing law, as to each of the qualifications therein expressed,—'born in the United States,' 'naturalized in the United States,' and 'subject to the jurisdiction thereof'; in short, as to everything relating to the acquisition of citizenship by facts occurring within the limits of the United States." *United States v. Wong Kim Ark*, 169 U.S. 649, 688 (1898).

constitution to establish a uniform rule of naturalization." *Id.*; *see also* U.S. Const. Art. I, § 8, Cl. 4.

While colloquially a foreign-born child's acquisition of citizenship through a U.S. citizen parent may be referred to as "birthright citizenship," *see, e.g.*, Compl. ¶ 1, ECF No. 1, "the [Supreme] Court has specifically recognized the power of Congress not to grant a United States citizen the right to transmit citizenship by descent." *Rogers*, 401 U.S. at 830; *see also Miller v. Albright*, 523 U.S. 420, 424 (1998) ("Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress.").

## II.   8 U.S.C. §§ 1401 and 1409

Congress's present-day rules for acquiring U.S. citizenship at birth are found principally in 8 U.S.C. § 1401, titled "Nationals and citizens of United States at birth" and also known as Section 301 of the Immigration and Nationality Act. *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 (2017). Under section 1401, a person born outside of the United States

> of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States . . . not less than five years, at least two of which were after attaining the age of fourteen

shall be a U.S. citizen. 8 U.S.C. § 1401(g);[7] *see also Tuan Anh Nguyen v. INS*, 533 U.S. 53, 59 (2001).

8 U.S.C. § 1409, or Section 309 of the INA, provides several situational categories by which a child born abroad may acquire U.S. citizenship at birth, in addition to those described in § 1401. The title of section 1409 indicates that it applies to "children born out of wedlock," but that term is not explicitly defined by

---

[7] Subsections (a), (b), (c), (d), (e), and (f) of 8 U.S.C. § 1401 describe other categories of persons who acquire citizenship at birth, including for example "a person born in the United States, and subject to the jurisdiction thereof," 8 U.S.C. § 1401(a). This brief primarily addresses 8 U.S.C. § 1401(g) because Plaintiffs' allegations implicate that section. *See, e.g.*, Compl. ¶ 3.

the INA. Section 1409(a) sets out the regime for acquisition of citizenship at birth in the case of a child born out of wedlock to a U.S. citizen father.[8]

### III. The Secretary of State's authority to issue Consular Reports of Birth Abroad and U.S. passports

The Secretary of State is charged with "the administration and the enforcement of [the Immigration and Nationality Act] and all other immigration and nationality laws relating to ... the determination of nationality of a person not in the United States." 8 U.S.C. § 1104(a). Pursuant to this authority, the Department of State issues documentation of the birth of U.S. citizens born abroad. *See* 22 C.F.R. § 50.7; *see also* 22 U.S.C. § 2705. Congress also authorized the Secretary of State to "grant and issue passports, and cause passports to be granted, issued, and verified in foreign countries by diplomatic and consular officers of the United States ... under such rules as the President shall designate and prescribe for and on behalf of the United States, and no other person shall grant, issue, or verify such passports."[9] 22 U.S.C. § 211a; *see also* E.O. 11295 (Aug. 5, 1966), available at https://www.archives.gov/federal-register/codification/executive-order/11295.html. CRBAs and passports serve to prove the citizenship status of their holders. 22 U.S.C. § 2705. But neither document actually confers citizenship.[10] *See id.*; 8 U.S.C. § 1504(a); *see also, e.g., L. Xia v. Tillerson*, 865

---

[8] *See also Morales-Santana*, 137 S.Ct. 1678 (holding that the differing physical presence requirements in 8 U.S.C. § 1409 (a) and (c) for unwed fathers and mothers was unconstitutional and ordering that, until Congress enacted a "uniform prescription," the "now-five-year [physical presence] requirement" of the provision that has become 8 U.S.C. § 1401(g) "should apply, prospectively, to children born to unwed U. S.-citizen mothers").

[9] Although enacted as part of the Passport Act of 1926, the pertinent language regarding the Secretary's authority dates back to 1874. *See Haig v. Agee*, 453 U.S. 280, 290 (1981).

[10] The "sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. § 1421(a). "When Congress passed the Homeland Security Act of 2002, it transferred to DHS authority over all functions that the former Immigration and Naturalization Service . . . or its officers

1     F.3d 643, 651–52, 655–56 (D.C. Cir. 2017) (passports); *Hizam v. Kerry*, 747 F.3d

2     102, 107–08 (2d Cir. 2014) (CRBAs).

3          Department guidance regarding interpretation and administration of the

4     Immigration and Nationality Act can be found in its Foreign Affairs Manual

5     ("FAM"). The FAM states that "[s]ince 1790, there have been two prerequisites for

6     transmitting U.S. citizenship at birth to children born abroad." 8 FAM 301.4-

7     1(B).[11] First, "at least one biological parent must have been a U.S. citizen when the

8     child was born." *Id.* Second, the "U.S. citizen parent(s) must have resided or been

9     physically present in the United States for the time required by the law in effect

10    when the child was born." *Id.*

11          Against this backdrop, the Department interprets the phrase "born … of

12    parents" in 8 U.S.C. § 1401 to include a biological connection between the child

13    and the referenced parents. Thus, the Department applies 8 U.S.C. § 1401(g) to

14    children whose biological parents are married to each other at the time of the

15    child's birth. *See* 8 FAM 301.7-4(D) (interpreting section 1401(g) to apply to

16    children born in wedlock to a U.S. citizen parent and an alien parent); the FAM

17    defines "birth in wedlock" as "birth during the marriage of the biological parents to

18    each other." 8 FAM 304.1-2(a). The FAM goes on to state: "If a married woman

19    and someone other than her spouse have a biological child together, that child is

20    considered to have been born out of wedlock. The same is true for a child born to a

21

22     _____

23    previously carried out." *Elgharib v. Napolitano*, 600 F.3d 597, 606–07 (6th Cir. 2010); 6 U.S.C. § 251. "Under 6 U.S.C. § 557, references in federal law to any

24    agency or officer whose functions have been transferred to DHS shall be deemed to refer to the Secretary of DHS or other official or component to which the

25    functions were transferred." *Durable Mfg. Co. v. U.S. Dep't of Labor*, 578 F.3d 497, 499 n. 1 (7th Cir. 1999). As a result, courts interpret the reference to the

26    Attorney General in 8 U.S.C. § 1421 "as referring to the authority of the USCIS," the DHS component tasked administering that statute. *See Yith v. Nielsen*, 881 F.3d

27    1155, 1158 (9th Cir. 2018).

28    [11] Formerly within chapter 7 FAM 1130. The FAM's guidance on acquisition of citizenship was renumbered as of July 16, 2018.

married man and a person other than his spouse." 8 FAM 304.1-2(e). The FAM notes that

> [c]hildren born in wedlock are generally presumed to be the issue of that marriage. This presumption is not determinative in citizenship cases, however, because an actual biological relationship to a U.S. citizen parent is required. If doubt arises that the U.S. citizen 'parent' is biologically related to the child, the consular officer is expected to investigate carefully.

8 FAM 301.4-1(D)(1)(d); *see also id.* § 301.4-1(D)(1)(a) ("It is not enough that the child is presumed to be the issue of the parents' marriage by the laws of the jurisdiction where the child was born. Absent a blood relationship between the child and the parent on whose citizenship the child's own claim is based, U.S. citizenship is not acquired."); Defs' Stmt. of Facts ¶ 48. Circumstances in which such a doubt may arise include where "[t]he child was born through surrogacy or other forms of assisted reproductive technology." 8 FAM 301.4-1(D)(1)(d)(5); *see also* 8 FAM 304.3-2(f) ("A child born abroad to a surrogate, whose genetic parents are a U.S. citizen father and anonymous egg donor, is considered for citizenship purposes to be a person born *out of wedlock* of a U.S. citizen and alien spouse, with a citizenship claim adjudicated under INA 309(a).  This is the case regardless of whether the man is married and regardless of whether his spouse is the legal parent of the child at the time of birth.") (emphasis added); Defs.' Stmt. of Facts ¶ 48.

The FAM interprets 8 U.S.C. § 1409 to apply to children whose biological parents are not married to each other. 8 FAM 304.1-2. A child may acquire U.S. citizenship at birth through his or her U.S. citizen father if "a blood relationship between the person and the father is established by clear and convincing evidence," and certain other conditions are met. *See* 8 U.S.C. § 1409(a); 8 FAM 301.4-1(D)(1)(b)(1). The Department considers a man to have "a biological relationship with his child, or a 'blood relationship' as required in the current text of INA section 309(a), when he has a genetic parental relationship to the child." 8 FAM 301.4-1(D)(1)(c). The FAM recognizes a "biological relationship" between a child

and mother may include either a genetic relationship or a legal, gestational relationship. *Id.*; *see also* Defs.' Stmt. of Facts ¶¶ 58–59.

## IV.   The Department of Homeland Security's role in adjudicating citizenship claims in the United States

While the Secretary of State is charged with citizenship and nationality determinations that are made abroad, the Secretary of Homeland Security is responsible for such determinations made in the United States. *See* 8 U.S.C. § 1103(a)(1). For example, USCIS, within the Department of Homeland Security, adjudicates certificate of citizenship applications. *See* 8 U.S.C. § 1452. Under section 1452, "[a] person who . . . is a citizen of the United States by virtue of . . . paragraph . . . (g) of section 1401 of this title . . . may apply" to the Secretary of Homeland Security[12] "for a certificate of citizenship" and "[u]pon proof to the satisfaction of" the Secretary, she may receive a citizenship certification if she is within in the United States at the time. A certificate of citizenship has the "same force and effect as proof of United States citizenship" as a CRBA or a U.S. passport. 22 U.S.C. § 2705.

Defendants acknowledge that the Ninth Circuit, in the course of reviewing the Department of Homeland Security's denial of citizenship claims arising in the context of immigration-court removal proceedings, has held, contrary to the Department of State's interpretation, that (1) "a blood relationship between a child and a U.S. citizen [is] not required to establish citizenship under 8 U.S.C. § 1401(g)" if the child was born in wedlock, *Solis-Espinoza*, 401 F.3d 1090, 1091 (9th Cir. 2005); and (2) a child is born in wedlock if his or her parents were

---

[12] *See supra* note 10 for an explanation for why Section 1452's reference to the Attorney General is a reference to the Secretary of Homeland Security.

married to each other at the time of the birth, *id.*; *Scales v. INS*, 232 F.3d 1159, 1166 (9th Cir. 2000).[13]

## LEGAL STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

"A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment."  *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009); *see also Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007) (a mere scintilla of evidence supporting the plaintiff's position is insufficient to withstand summary judgment.").

---

[13] U.S. embassies and consulates, in adjudicating applications for citizenship documentation from individuals located abroad, adhere to a uniform, worldwide policy consistent with applicable Supreme Court case law, but the variable case law of individual circuits in the United States does not control those adjudications taking place in foreign jurisdictions.

**ARGUMENT**

I.     **Plaintiffs' APA claim fails because there exists multiple, adequate remedies at law.**

Plaintiffs bring a claim under Section 706(2)(A) of the APA, asserting that Defendants' denial of E.J.'s CRBA application—and more broadly an alleged exclusion of children born abroad in same-sex marriages from the category of children who qualify for citizenship at birth under 8 U.S.C. § 1401(g)—"lacks a rational basis, is arbitrary, and is contrary to law." *See* Compl. ¶¶ 92, 96. APA review, however, is not available for Plaintiffs. There exists an "adequate remedy at law," *see* 5 U.S.C. § 704, precluding Plaintiffs' APA claims. First, E.J. can challenge, and, indeed, has brought a separate claim challenging, the State Department's denials of the CRBA and passport applications filed on his behalf under 8 U.S.C. § 1503, which provides a path by which E.J. may assert a claim that he is a U.S. national. Second, Plaintiffs may apply for a certificate of citizenship from USCIS, which provides equivalent proof of U.S. citizenship.

The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1813 (2016). "[T]he Supreme Court interpreted § 704 as precluding APA review where Congress has otherwise provided a special and adequate review procedure." *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (citation and internal quotation marks omitted); *see also Bowen v. Massachusetts,* 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."); *Coos Cnty. Bd. of County Com'rs v. Kempthorne*, 531 F.3d 792, 810 (9th Cir. 2008).

Here, Plaintiffs have already invoked the provisions Congress specifically made available by 8 U.S.C. § 1503 to an individual who is denied a "right or privilege as a national of the United States" by the federal government on "the

ground that [s]he is not a national of the United States." Courts have found that the Department's denial of a CRBA application or a U.S. passport application constitutes the denial of a "right or privilege" that allows the applicant to avail himself or herself of remedies under Section 1503. *See Hizam v. Kerry*, 747 F.3d 102, 108 (2d Cir. 2014). And where an applicant challenges the State Department's denial of a right or privilege of U.S. citizenship on the basis that the plaintiff is not a U.S. citizen, courts have consistently concluded that Section 1503(a) offers an adequate alternative remedy to APA review. *Ortega-Morales v. Lynch*, 168 F. Supp. 3d 1228, 1233–34 (D. Ariz. 2016) ("Because 8 U.S.C. § 1503(a) affords Plaintiffs a right of action, the APA does not apply."); *Esparza v. Clinton*, 6:12-CV-925-AA, 2012 WL 6738281, at *1 (D. Or. Dec. 21, 2012) (rejecting the argument that "because 8 U.S.C. § 1503 can only provide [the plaintiff] with a declaration of citizenship, her claim challenging the Department of State's denial of her passport application is appropriate under the APA," because Section 1503 provides an adequate remedy in the form of a declaration of U.S. citizenship); *Alsaidi v. U.S. Dep't of State*, 292 F. Supp. 3d 320, 326 (D.D.C. 2018) ("[C]ourts have repeatedly dismissed APA claims challenging the denial of a passport application or a passport revocation on grounds that the holder is not a U.S. national, reasoning that . . . a judicial declaration of citizenship and entitlement to a passport may be directly sought through 8 U.S.C. § 1503(a)." (quoting *Villarreal v. Horn*, 203 F.Supp.3d 765, 773 (S.D. Tex. 2016)).

Section 1503's remedies do not fall short because Plaintiffs seek injunctive and declaratory relief under the APA but can obtain only declaratory relief under section 1503(a). Plaintiffs seek (1) a declaration that the Department of State's alleged policy of "classifying the children of same-sex married couples as 'children born out of wedlock,' and its consequent refusal to recognize [E.J.'s] citizenship status on that basis," violates the INA and the Constitution; (2) a declaration that [E.J.] is a U.S. citizen at birth; and (3) a permanent injunction enjoining

Defendants from "continuing to discriminate against Plaintiffs by classifying the
children of same-sex married couples as "children born out of wedlock," and
denying the children of same-sex married couples the right to acquire citizenship at
birth pursuant to Section 301(g) on that basis." Compl. at 24, Prayer for Relief.
Section 1503 accords an individual "judgment declaring him to be a national of the
United States," 8 U.S.C. § 1503(a).  This is, at its core, the relief the Plaintiffs seek
here.

Section 706(2)(A) of the APA, meanwhile, only allows the courts to "hold
unlawful and set aside agency action" that does not comport with the applicable
laws and procedures. 5 U.S.C. § 706(2)(A).  But all section 706(2)(A) of the APA
can provide is an order vacating or remanding the Department's denials of E.J. D.-
B.'s CRBA and passport applications. *See id.* Such a remedy is of limited utility to
Plaintiffs, because they are not currently abroad and, thus, cannot apply for another
CRBA from the Department unless they leave the country. 22 C.F.R. § 50.2 ("The
Department shall determine claims to United States nationality *when made by
persons abroad* on the basis of an application for . . . a Consular Report of Birth
Abroad of a Citizen of the United States of America."); *see also* 22 C.F.R. § 50.5.
The APA remedies also do not encompass Plaintiffs' second request for relief, a
declaration that E.J. is a U.S. citizen; rather, Section 1503 provides Plaintiffs with
a mechanism to obtain such a declaration.

Meanwhile, Plaintiffs' other, sweeping requests for judgment on the
Department of State's policies as a whole and for a permanent, universal injunction
are unavailable under the APA and, in any event, must be rejected as improper.
First, the APA does not allow Plaintiffs to seek "*wholesale* improvement of [a]
program by court decree." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990);
*cf. Ctr. For Biological Diversity v. U.S. Dept. of Hous. & Urban Dev.*, 241 F.R.D.
495, 500, 501 (D. Ariz. 2006) (concluding that an APA challenge impermissibly
sought broad programmatic relief where it went beyond a direct appeal of a single

agency decision and instead sought a declaration that "Defendants have violated and continue to violate" the law and injunctive relief compelling Defendants to change their practices). Second, it is a black-letter rule that injunctions "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see also Gill v. Whitford*, 138 S.Ct. 1916, 1933 (2018) ("The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it."); *see also California v. Azar*, — F.3d —, 18-15144, 2018 WL 6566752, at *16 (9th Cir. Dec. 13, 2018); *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018). Indeed, section 706(2)'s inability to provide Plaintiffs with *any* of their requested relief is an independent basis on which to dismiss this claim.

A further alternative remedy is plainly available to the Plaintiffs here. Andrew is free to apply for a certificate of citizenship on behalf of E.J. from USCIS, *see* 8 U.S.C. §1452, which is equivalent proof of U.S. citizenship, *see* 22 U.S.C. § 2705. *See also* Defs.' Stmt. of Facts ¶ 64. In the Ninth Circuit, where Plaintiffs currently reside, USCIS follows the Ninth Circuit's decision in *Scales*, 232 F.3d at 1166. Defs.' Stmt. of Facts ¶¶ 66–67.

USCIS's certificate-of-citizenship process provides an adequate, alternative remedy at law for Plaintiffs to procure proof of U.S. citizenship for E.J.[14] *Cf. Nickerson v. United States*, CV 07-211 JH/WDS, 2007 WL 9662632, at *6 (D.N.M. Oct. 31, 2007) (setting forth alternative remedies, including under 8 U.S.C. §§ 1452 and 1503, for an individual to obtain proof of citizenship). And a certificate of citizenship would be of greater practical value to Plaintiffs than a decision vacating the Department's denial of E.J.'s CRBA application or

---

[14] Indeed, Plaintiffs' pursuit of a certificate of citizenship from USCIS would also obviate the need for this Court to decide Plaintiffs' claim under 8 U.S.C. § 1503.

remanding the application, *see* 5 U.S.C. § 706(A), since Plaintiffs cannot apply for another CRBA from within the United States. *See* 22 C.F.R. §§ 50.2, 50.5.

For these reasons, summary judgment should be entered for the Defendants as a matter of law on Plaintiffs' APA claims in Count III.

## II.   Defendants are entitled to summary judgment on Plaintiffs' Substantive Due Process claim in Count I.

Summary judgment should also be entered for the Defendants on Plaintiffs' Substantive Due Process claim.[15]

Plaintiffs assert that Defendants are violating their substantive due process rights "by enforcing a policy that excludes U.S. citizens in same-sex marriages from conferring citizenship pursuant to [8 U.S.C. § 1401], while restricting access to citizenship under that provision to the children of opposite-sex married couples." Compl. ¶ 76; *see also id.* ¶¶ 75–77. But because Plaintiffs fail to identify a fundamental right upon which Defendants have infringed and because Defendants' policies pass rational-basis review, Plaintiffs' substantive due process claim must be rejected.

The Supreme Court has established that the Fifth Amendment guarantee of due process includes "a substantive component, which forbids the government from infringing certain fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993). But the Court has "always been reluctant to expand the concept of substantive due process because guideposts

---

[15] As an initial matter, the DJA neither independently vests courts with jurisdiction nor "provide[s] a cause of action." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011); *see also Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (The DJA "only creates a remedy and is not an independent basis for jurisdiction."). Thus, the Act's "'operation . . . is procedural only.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 138 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). Plaintiffs must identify some other source of law, then, that accords them the right to bring these claims in a federal court. They have not done so in their First Amended Complaint.

for responsible decisionmaking in this unchartered area are scarce and open-ended," *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). The Court has observed that the protections of substantive due process are limited to those rights that rank as "fundamental"—that is, both "objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citation omitted). "The range of liberty interests that substantive due process protects is narrow and '[o]nly those aspects of liberty that we as a society traditionally have protected as fundamental are included within the substantive protection of the Due Process Clause.'" *Franceschi v. Yee*, 887 F.3d 927, 937 (9th Cir. 2018), *cert. denied*, 18-585, 2018 WL 5792470 (U.S. Dec. 10, 2018) (quoting *Mullins v. Oregon*, 57 F.3d 789, 793 (9th Cir. 1995)).

The Supreme Court has thus made clear that a plaintiff must provide "a 'careful description' of the asserted fundamental liberty interest" when raising such a claim. *Chavez v. Martinez*, 538 U.S. 760, 775–76 (2003); *see also Fields v. Palmdale Sch. Dist.,* 271 F. Supp. 2d 1217, 1222 (C.D. Cal. 2003), *aff'd*, 427 F.3d 1197 (9th Cir. 2005), *opinion amended on denial of reh'g sub nom. Fields v. Palmdale Sch. Dist. (PSD)*, 447 F.3d 1187 (9th Cir. 2006). "Where a fundamental right is not implicated . . . governmental action need only have a rational basis to be upheld against a substantive due process attack." *Kim v. United States*, 121 F.3d 1269, 1273 (9th Cir. 1997); *see also Litmon v. Harris*, 768 F.3d 1237, 1242 (9th Cir. 2014) ("Absent a fundamental right, strict scrutiny is inapplicable.").

Here, in the case of a family that made the choice to live and have children outside the United States, Plaintiffs' asserted "rights to acquire and confer citizenship at birth pursuant to INA Section 301," Compl. ¶ 77, is too broad an assertion to comply with *Glucksberg. See also Hutchins v. Dist. of Columbia*, 188 F.3d 531, 538 (D.C. Cir. 1999).  Nor do Plaintiffs sufficiently describe a

fundamental interest in asserting a right to "the legal recognition that same-sex spouses may both be the parents of a child born during their marriage, even if only one spouse is the child's biological parent." Compl. ¶ 36. As an initial matter, "[a] fair reading of petitioner's complaint does not charge" Defendants with infringing upon this broad right. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). Rather, Plaintiffs actually complain that Defendants do not recognize E.J. as a U.S citizen child born abroad "because of the lack of a genetic or gestational relationship between him and Andrew," Compl. ¶ 56, and the State Department acknowledges that Andrew is E.J.'s legal parent. *See* Defs.' Stmt. Facts ¶¶ 55, 56.

Rather, Andrew's asserted interest is more carefully described as an individual's right to successfully apply for a CRBA or a U.S. passport on behalf of a child who is born abroad and is not the individual's biological child. E.J.'s asserted interest, conversely, is more carefully described as an individual's right to successfully apply for a CRBA or a U.S. passport as a child born abroad who is not the biological child of a U.S. citizen. These asserted rights—which Plaintiffs do not even characterize as a liberty or property interest—cannot be considered fundamental under substantive due process jurisprudence because there are no such rights deeply rooted in this Nation's history, tradition, and practices. Indeed, the extension of citizenship to foreign-born children is not a constitutionally enshrined right for either the U.S. citizen or the child seeking to acquire citizenship; rather, it is a right granted by Congress. *Rogers*, 401 U.S. at 827; *see also Miller v. Albright*, 523 U.S. 420, 453 (1998) (Scalia, J., concurring) ("Petitioner, having been born outside the territory of the United States, is an alien as far as the Constitution is concerned, and can only become a citizen by being naturalized, either by treaty, . . . or by authority of Congress.") (internal citation and quotation marks omitted); *see also Icaza v. Schultz*, 656 F. Supp. 819, 823 (D.D.C. 1987). Further, the Supreme Court has underscored the importance of a biological connection between the child seeking to acquire citizenship and the U.S. citizen seeking to confer citizenship.

*See, e.g.*, *Miller v. Albright*, 523 U.S. at 438 ("There is no doubt that ensuring reliable proof of a biological relationship between the potential citizen and its citizen parent is an important governmental objective.") (plurality op.); *Nguyen*, 533 U.S. at 62 (acknowledging "the importance of assuring that a biological parent-child relationship exists" for the purposes of a U.S. citizen father conferring citizenship on a child born abroad). Therefore, Plaintiffs fail to establish a fundamental right at issue in this case.

Because Plaintiffs' asserted right is not fundamental, their claims are subject only to rational basis review. *Kim*, 121 F.3d at 1273. "Rational basis review is highly deferential to the government, allowing any conceivable rational basis to suffice." *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018), *amended*, 881 F.3d 792 (9th Cir. 2018) (citing *United States v. Hancock*, 231 F.3d 557, 566 (9th Cir. 2000)). Defendants' longstanding interpretation of the relevant sections of the INA to require a biological relationship between the U.S. citizen and child for the child born abroad to receive a CRBA or a U.S. passport passes rational-basis review.

The question for resolution of Count I is separate from the question of whether this Court agrees with the Department's longstanding statutory interpretation.[16] *See Shanks v. Dressel*, 540 F.3d 1082, 1089 (9th Cir. 2008)

---

[16] As noted above, Defendants recognize that the Ninth Circuit—in cases where, unlike here, the challenged agency action took place within the circuit's geographic jurisdiction—has construed the instant statutory provisions differently from the Department of State, *see Solis-Espinoza*, 401 F.3d at 1091, and *Scales v. INS*, 232 F.3d at 1166.

To extent the court believes that Plaintiffs are entitled to relief on their due process claim, the court should defer ruling on Count I until it resolves Plaintiffs' statutory claim, which may provide sufficient relief without unnecessarily addressing a constitutional question. *See Campos v. Nail*, 43 F.3d 1285, 1288 (9th Cir. 1994); *see also United States v. Kenney*, 789 F.2d 783, 784 n.2 (9th Cir. 1986) ("Because we decide on statutory grounds, we need not reach the constitutional issue.").

(concluding that the executive decision purportedly taken, even if "legally erroneous . . . falls short of being constitutionally arbitrary."). Rather, the Court must determine whether the Department's interpretation violates the substantive due process component of the Fifth Amendment.  It does not.

Unlike children born in the United States, children born abroad do not automatically become U.S. citizens at birth pursuant to the Fourteenth Amendment to the Constitution. Instead, whether children born outside the United State may acquire citizenship at birth upon application depends on a complex statutory scheme enacted by Congress. *See Miller*, 523 U.S. at 424. Those rules are designed to assure that children born abroad have a sufficient connection to the United States to warrant conferral of U.S. citizenship, with the attendant rights and responsibilities that come with citizenship and the attendant duties of protection assumed by the U.S. government. Such rules also work to prevent fraud by ensuring that not every putative "parent" who submits a U.S. passport application for a child located abroad will easily obtain a passport for that child.

Defendants' longstanding interpretation of the language "born of . . . parents" in Section 1401(g) to require a biological relationship between the child seeking to acquire U.S. citizenship and her married parents is rooted in its understanding that Congress has, since 1790, required that "at least one biological parent must have been a U.S. citizen when the child was born. The only exception is for a posthumous child."  8 FAM 301.4-1(B); The INA was enacted in 1952, a time when it was commonly understood, that outside the adoption context, 'parent' at birth referred to a biological parent. Defs' Stmt. of Facts ¶ 69. Indeed, the Supreme Court, in examining Section 1409, has observed that: "There is no doubt that ensuring reliable proof of a biological relationship between the potential citizen and its citizen parent is an important governmental objective." *Miller*, 523 U.S. at 436 (opinion of Stevens, J.); *see also Tuan*, 533 U.S. at 62; *Bellei*, 401 U.S. at 834 (referring to the "heritable blood of citizenship"). The Department's

uniform, worldwide interpretation and application of 8 U.S.C. §§ 1401 and 1409 is reasonable in light of the Supreme Court's recognition that "the usual understanding of 'family' implies biological relationships, and most decisions treating the relation between parent and child have stressed this element." *Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 843 (1977).

The Department's interpretation is supported by other sections of the INA that treat non-biological children of U.S. citizens differently, as well as Section 1409, which specifies how the Department should treat children born out of wedlock. For example, Congress excluded "stepchild" from its definition of child for the purposes of citizenship and naturalization, *see Acevedo v. Lynch*, 798 F.3d 1167, 1171 (9th Cir. 2015); *see also* 8 U.S.C. § 1101(c). Further, children born abroad and then adopted by U.S. citizen legal parents may only acquire U.S. citizenship through derivation or naturalization at some point after birth, *see* 8 U.S.C. §§ 1431(b), 1433—not at birth—even if they were adopted as infants. *See Colaianni v. I.N.S.*, 490 F.3d 185, 187 (2d Cir. 2007); *Marquez-Marquez v. Gonzales*, 455 F.3d 548, 556–57 (5th Cir. 2006) (per curiam); *see also Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 552 (2012).

Finally, the Department has expressed concerns that adopting a contrary interpretation of Section 1401(g) would raise the frequency of fraudulent citizenship claims, because it would be more difficult to identify child smuggling or illegal adoption without requiring a biological link between child applicant and the transmitting parent. *See* Defs' Stmt. of Facts ¶ 71.

Plaintiffs contend that there is no rational basis to limit the application of section 1401 to the children of heterosexual couples. *See* Compl. ¶¶ 8–9, 69, 78. But this allegation is misplaced because Defendants *do not* limit the application of section 1401 to the children of heterosexual couples. Defs.' Stmt. Facts ¶¶ 58–60; *Browning*, 292 F.3d 235, at 242. As discussed above, Plaintiffs themselves acknowledge that "the Department of State's policy may in theory apply to

marriages between spouses of opposite sexes," Compl. ¶ 70. The Department treats the children of *all* couples the same, regardless of their sexual orientation, for the purposes of Section 1409 if both biological parents are not married to each other, *see* 8 FAM 301.4.

The Department also treats the children of same-sex couples as "born of . . . parents" for the purposes of Section 1401 when both parents have a biological connection to the children. *See* Defs' Stmt. of Facts ¶¶ 58–60. For example, where one woman is a U.S. citizen and her same-sex spouse is an alien, the child can acquire U.S. citizenship at birth if the U.S.-citizen spouse is either "the genetic mother (the woman whose egg was used in conception) or the gestational mother (the woman who carried and delivered the baby)," so long as the law of the country where she resides also recognizes her as a legal parent.[17] 8 FAM 301.4-1(D)(1)(c). Where two women married to each other are U.S. citizens, and one is the legal, gestational mother of the child and the other is the genetic mother, the Department adjudicates the child's citizenship claim under INA 301(c).[18] 8 FAM 304.3-1(b); *see also* Defs' Stmt. of Facts ¶ 59. Rather, the Department's interpretation of Sections 1401 and 1409 affects all non-biological parents of children born abroad, regardless of sexual orientation.

Moreover, the FAM contains no language that treats same-sex couples differently from opposite-sex married couples in requiring a biological connection between the child seeking to acquire U.S. citizenship and the asserted U.S. citizen parent under 8 U.S.C. § 1401. *See, e.g.*, 8 FAM 301.4 (*passim*). In particular, as

---

[17] It is not enough for a U.S. citizen to serve as a surrogate—*i.e.*, a gestational mother lacking status as the legal parent of the child. A "surrogate's citizenship is irrelevant to the child's citizenship analysis," 8 FAM 304.3-2(a), and a child may not acquire citizenship through a surrogate, *see id.*

[18] Further, the Department also recognizes that a child of transgender and cisgender males can have a child born in wedlock, assuming that both parents have a biological relationship to the child. *See* Defs' Stmt. of Facts ¶ 60.

noted above, consular officers are expected to investigate carefully to establish a biological relationship when "[t]he child was born through surrogacy or other forms of assisted reproductive technology," irrespective of the sex or sexual orientation of the legal parents of the child. 8 FAM 301.4-1(D)(1)(d)(5).

For the foregoing reasons, summary judgment should be granted for Defendants on Count I.[19]

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for partial summary judgment.

---

[19] If the Court concludes to the contrary, then, as noted above, it may only order relief that is limited to the parties and not a nationwide injunction, because "[i]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano*, 442 U.S. at 702; *see also Gill*, 138 S.Ct. at 1933. "This rule applies with special force where," as here, "there is no class certification." *California*, 2018 WL 6566752, at *15.

Dated: January 7, 2019

Respectfully submitted,

Attorneys for Defendants

JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

By: *s/ Vinita B. Andrapalliyal*
VINITA B. ANDRAPALLIYAL
Trial Attorney
United States Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-0845
Fax: (202) 616-8470
Email: vinita.b.andrapalliyal@usdoj.gov

LISA ZEIDNER MARCUS
Senior Counsel

## <u>CERTIFICATE OF SERVICE</u>

Case No. CV 18-523-JFW-JC

I hereby certify that I am over the age of 18 and not a party to the above-titled action.  I am employed as a Trial Attorney at the United States Department of Justice, Civil Division, Federal Programs Branch.  My business address is 20 Massachusetts Ave., N.W., Washington, DC 20530.

On January 7, 2019, I served this MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT on each person or entity named below by uploading an electronic version of this document to the Court's ECF system:

ALEXA LAWSON-REMER
lawsonr@sullcrom.com
SULLIVAN & CROMWELL
1888 Century Park East
Los Angeles, CA 90067-1725
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

THEODORE EDELMAN
edelmant@sullcrom.com
JESSICA KLEIN
kleinj@sullcrom.com
SULLIVAN & CROMWELL
125 Broad Street
New York, New York 10004-2498
Telephone (212) 558-4000
Facsimile (212) 558-3588

IMMIGRATION EQUALITY
AARON C. MORRIS
amorris@immigrationequality.org
40 Exchange Place
Suite 1300
New York, New York, 10005-2744
Telephone: (212) 714-2904

I declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

Executed on January 7, 2019, at Washington, DC.

By: *s/Vinita B. Andrapalliyal*
VINITA B. ANDRAPALLIYAL
Trial Attorney
United States Department of Justice
Civil Division