JOSEPH H. HUNT
    Assistant Attorney General
ANTHONY J. COPPOLINO
    Deputy Director
LISA ZEIDNER MARCUS
    Senior Counsel
VINITA B. ANDRAPALLIYAL
    Trial Attorney
UNITED STATES DEPARTMENT OF JUSTICE
    Civil Division, Federal Programs Branch
    P.O. Box 883
    Washington, DC 20044
    Tel: (202) 305-0845
    vinita.b.andrapalliyal@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ANDREW MASON DVASH-BANKS and E. J. DVASH-BANKS,<br><br>        Plaintiffs,<br><br>   v.<br><br>THE UNITED STATES DEPARTMENT OF STATE, and THE HONORABLE MICHAEL R. POMPEO, Secretary of State,<br><br>        Defendants. | No. CV 18-523-JFW-JC<br><br>DEFENDANTS' RESPONSE AND OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Hearing Date: Feb. 4, 2019<br><br>Honorable John F. Walter |

# TABLE OF CONTENTS _Toc535234366

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................1

I.   The Dvash-Banks Family ................................................................................1

II.   Andrew and Elad go to Toronto Consulate to apply for Consular Reports of Birth Abroad and U.S. Passports for E.J. ..............................................................2

ARGUMENT ....................................................................................................3

I.   Plaintiffs' claim under 8 U.S.C. § 1503(a) incorrectly seeks to put  the Department of State's actions and policies at issue and, in any event, need not be decided by this Court. ............................................................................................3

II.   Plaintiffs are not entitled to summary judgment on their substantive due process claim because Defendants' actions pass rational-basis review. ................5

CONCLUSION ....................................................................................................14

1

# TABLE OF AUTHORITIES

2

**Cases**

3   *Acevedo v. Lynch*,

4     798 F.3d 1167 (9th Cir. 2015) ...................................................................9

5   *Califano v. Yamasaki*,

6     442 U.S. 698 (1979) ................................................................................13

7   *California v. Azar*,

8     911 F.3d 558 (9th Cir. 2018) .................................................................13

9   *Cantrell v. City of Long Beach*,

10    241 F.3d 674 (9th Cir. 2001) ...................................................................4

11  *Dent v. Sessions*,

12    900 F.3d 1075 (9th Cir. 2018) .................................................................9

13  *FCC v. Beach Commc'ns, Inc.*,

14    508 U.S. 307 (1993) ..................................................................................9

15  *Jaen v. Sessions*,

16    899 F.3d 182 (2d Cir. 2018) ...................................................................12

17  *Kim v. United States*,

18    121 F.3d 1269 (9th Cir. 1997) .................................................................8

19  *Miller v. Albright*,

20    523 U.S. 420 (1998) ...................................................................... 7, 8, 12

21  *Nat'l Treas. Emps. Union v. United States*,

22    101 F.3d 1423 (D.C. Cir. 1996).................................................................5

23  *Nguyen v. INS*,

24    533 U.S. 53 (2001) ..................................................................................12

25  *Ortega-Morales v. Lynch*,

26    168 F. Supp. 3d 1228 (D. Ariz. 2016)......................................................3

27

28

*Pavan v. Smith*,
  137 S. Ct. 2075 (2017) ...................................................................................6, 7
*Richards v. Sec'y of State*,
  752 F.2d 1413 (9th Cir. 1985) ............................................................................3
*Rios-Valenzuela v. Dep't of Homeland Sec.*,
  506 F.3d 393 (5th Cir. 2007) ........................................................................ 5-6
*Scales v. INS*,
  232 F.3d 1159 (9th Cir. 2000) .................................................................. 4, 7, 12
*Sessions v. Morales-Santana*,
  137 S. Ct. 1678 (2017) ........................................................................................8
*Simeonov v. Ashcroft*,
  371 F.3d 532 (9th Cir. 2004) ..............................................................................4
*Solis-Espinoza v. Gonzales*,
  401 F.3d 1090 (9th Cir. 2005) ..................................................................... 4-5, 7
*Stormans, Inc. v. Wiesman*,
  794 F.3d 1064 (9th Cir. 2015) ............................................................................9
*United States v. Marguet-Pillado*,
  560 F.3d 1078 (9th Cir. 2009) ..........................................................................11
*Washington v. Glucksberg*,
  521 U.S. 702 (1997) ............................................................................................8

**Statutes**

8 U.S.C. § 1101(c) ..................................................................................................9
8 U.S.C. § 1103 ......................................................................................................4
8 U.S.C. § 1104 ......................................................................................................4
8 U.S.C. § 1401 .............................................................................................. 3, 6, 8

8 U.S.C. § 1409 ....................................................................................................3, 8

8 U.S.C. § 1431(b) ...................................................................................................9

8 U.S.C. § 1433(c) ...................................................................................................9

8 U.S.C. § 1452 .......................................................................................................4

8 U.S.C. § 1503(a) ...............................................................................................1, 3

22 U.S.C. § 2705 .....................................................................................................5


**Other Authorities**

*Citizenship by Birth*,
    41 Harv. L. Rev. 643 (1928)............................................................................11

The Law of Surrogate Motherhood in the United States, *The American Journal of Comparative Law* Vol. 58, Supplement: Welcoming the World: U. S. National Reports to the XVIIIth International Congress of Comparative Law (2010),
    https://www.jstor.org/stable/20744535?seq=1#page_scan_tab_contents .....10

Oxford English Dictionary (1989), *Born*,
    http://www.oed.com/view/Entry/21673...........................................................11

Oxford English Dictionary (3d Ed. 2004), *Of*,
    http://www.oed.com/view/Entry/130549.........................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Plaintiffs' motion for partial summary judgment seeks for this Court to enter judgment in their favor on Plaintiff E.J. Dvash-Banks's claim under 8 U.S.C. §1503(a), in which he seeks a declaration of U.S. citizenship from this Court. Plaintiffs' motion also seeks summary judgment on Plaintiffs' substantive due process claim, in which Plaintiffs argue that Defendants' actions impermissibly infringe on Plaintiff Andrew Dvash-Banks's rights associated with marriage. The Court need not reach the statutory claim and should deny summary judgment on the constitutional claim.

Plaintiffs' claim under section 1503(a) focuses on the purported impropriety of Defendants' actions instead of the actual elements of a claim under that statute, under which this Court would make a *de novo* determination of citizenship. As Defendants have previously explained, however, the Court need not decide this issue because Plaintiffs, in the locality where they currently reside, can obtain the sought-after relief by applying for a certificate of citizenship from U.S. Citizenship & Immigration Services ("USCIS"), which would apply Ninth Circuit precedent as this Court would.

Separately, Plaintiffs' substantive due process claim fails because Plaintiffs do not establish that Defendants' actions infringe upon any fundamental rights possessed by Andrew or E.J. Defendants' determination implicates neither marriage nor any other fundamental right and, in any event, passes rational-basis review because it is rooted in its longstanding statutory interpretation as well as concerns of fraud and child protection.

## BACKGROUND

### I.      The Dvash-Banks family

Relevant factual background can be found in Defendants' Statement of Genuine Disputes of Material Fact, which notes that many of Plaintiffs' statements of fact are undisputed.

Andrew Dvash-Banks ("Andrew") is a United States citizen, married to Elad Dvash-Banks, an Israeli citizen. Defs.' Opp. Stmt. of Facts at ¶¶ 1, 9, 11.  Andrew and Elad used Assisted Reproductive Technology ("ART") to conceive children. *Id.* ¶¶ 4–7.  In December 2015, Andrew and Elad contracted with a gestational surrogate (the "Gestational Surrogate") for the purpose of carrying one or two embryos during a pregnancy (the "Surrogacy Agreement"). *Id.* ¶ 17.  The Gestational Surrogate became pregnant with one embryo created using genetic material from Andrew and one embryo created using genetic material from Elad. *Id.* ¶ 20. On September 16, 2016, the Gestational Surrogate gave birth to those two children, each a boy, E.J. and A.J.  *Id.* ¶ 29. On September 28, 2016, an Ontario court entered an order naming Andrew and Elad the legal parents of E.J. and A.J. *Id.* ¶ 41.

## II.   Andrew and Elad go to Toronto Consulate to apply for Consular Reports of Birth Abroad and U.S. Passports for E.J.

On January 24, 2017, Andrew and Elad appeared in person at the Toronto Consulate in connection with the applications for a CRBA and U.S. passport for each of their children, E.J. and A.J. *Id.* at ¶ 55. Consular officer Terri Nathine Francis Day interviewed the Dvash-Banks family on January 24, 2017. *Id.* ¶ 57. She adjudicated their applications, and, at a later date, made the final decision on each of the applications. *Id.* ¶¶ 57, 58, 93, 98, 113. Andrew and Elad's applications indicated that they had used ART to have E.J. and A.J. *Id.* ¶ 24. During the interview, Day concluded that it was unclear which (if either) of the children, E.J. and A.J., had a biological relationship to the U.S. citizen father (Andrew). *Id.* ¶ 28. Day provided them the option of submitting DNA evidence to prove such

relationship, and a letter outlining relevant steps should they choose to pursue that option. *Id.* ¶¶ 29–32.

The Dvash-Banks family chose to pursue the DNA option, and arranged to have DNA testing conducted and submitted in support of E.J.'s and A.J.'s applications. *Id.* ¶ 33. Ultimately, the adjudicating officer denied E.J.'s applications on the ground that the applicants had failed to establish a biological connection between E.J. and a U.S. citizen parent. *Id.* ¶¶ 35–36.

## ARGUMENT

**I. Plaintiffs' claim under 8 U.S.C. § 1503(a) incorrectly seeks to put the Department of State's actions and policies at issue and, in any event, need not be decided by this Court.**

Plaintiffs' summary judgment motion challenges at length the Department of State's ("the Department") statutory interpretation and associated actions with respect to its Consular Report of Birth Abroad ("CRBA") for Plaintiff E.J. But the reasonableness of Department's actions should not be the focus of any analysis in which the Court may engage under section 1503. As Plaintiffs themselves note, section 1503(a) "authorizes a *de novo* judicial determination of the status of the plaintiff as a United States national." Mem. Of P. & A. in Supp. of Pl.'s Mot. for Partial Summ. J. ("Pls.' Br.") at 14, ECF No. 83-1 (quoting *Richards v. Sec'y of State*, 752 F.2d 1413, 1417 (9th Cir. 1985)). Therefore, "[a] suit under section 1503(a) is *not* one for judicial review of the agency's action." *Richards*, 752 F.2d at 1417 (emphasis added). That is because, while the Department made the citizenship determination in the first instance, "the courts make the real decisions all over again, *see* 8 U.S.C. § 1503(a). This allocation charges the courts with an independent and comprehensive role in determining citizenship." *Ortega-Morales v. Lynch*, 168 F. Supp. 3d 1228, 1240 (D. Ariz. 2016). Thus, here, where the Department applied its longstanding statutory interpretations of 8 U.S.C. §§ 1401

and 1409 in adjudicating E.J.'s CRBA and passport adjudications abroad—where Ninth Circuit law does not apply—the Court need not pass judgment on the Department's actions in evaluating Plaintiffs' section 1503 claim. Instead, if the claim is reached, 8 U.S.C. § 1503(a) requires the Court to make a *de novo* determination about whether E.J. satisfies the applicable prerequisites to have acquired U.S. citizenship at birth as a foreign-born child. *See Simeonov v. Ashcroft*, 371 F.3d 532, 538 (9th Cir. 2004) ("As a general rule courts . . . are not required to make findings on issues the decision of which is unnecessary to the results they reach." (citation omitted)).

Before doing so, however, the Court should take note that Plaintiffs have another path to the relief they seek through this claim that renders judicial intervention unnecessary. As explained in Defendants' memorandum in support of their motion for partial summary judgment, now that Plaintiffs have relocated to within in the Ninth Circuit, Andrew is free to apply for a certificate of citizenship on behalf of E.J. from USCIS, *see* 8 U.S.C. § 1452. USCIS, as part of the Department of Homeland Security ("DHS"), is charged with making citizenship determinations in the United States, *see* 8 U.S.C. § 1103, distinct from citizenship determinations sought by individuals living abroad, the purview of the Department of State, *see* 8 U.S.C. § 1104; *see also Scales v. INS.*, 232 F.3d 1159, 1165 (9th Cir. 2000) ("Because Petitioner is not a 'person not in the United States,' the State Department is not the agency entrusted with the determination of Petitioner's citizenship."). Under *de novo* review, the court needs to apply the statute applicable to the current situation, which, here, is the statute that USCIS administers. Here, Plaintiffs' changed circumstances "have forestalled any occasion for meaningful relief" from this Court, *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001) (citation omitted), since they may seek the same relief from USCIS.

If Plaintiffs seek a certificate of citizenship from USCIS, USCIS will apply Ninth Circuit case law to their case since Plaintiffs reside within the Ninth Circuit. In the Ninth Circuit. In the Ninth Circuit, USCIS follows *Scales*, 232 F.3d at 1166; Defs.' Opp. Stmt. of Facts ¶¶ 169–70, which construed the instant statutory provisions differently from the Department of State when reviewing DHS's actions in the context of removal proceedings that occurred in the Ninth Circuit. *See Solis-Espinoza v. Gonzales*, 401 F.3d 1090, 1091 (9th Cir. 2005), and *Scales*, 232 F.3d at 1166.  Because a certificate of citizenship is proof of U.S. citizenship (here, at-birth citizenship) equivalent to both a CRBA *and* a court order recognizing U.S. citizenship, *see* 22 U.S.C. § 2705, the availability of USCIS's certificate-of-citizenship process to Plaintiffs should obviate the need for this Court to decide Plaintiffs' 1503 claim, at least until Plaintiffs avail themselves of this alternative administrative procedure.[1] *Cf. Nat'l Treas. Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996) ("If we do not decide it now, we may never need to. Not only does this rationale protect the expenditure of judicial resources, but it comports with our theoretical role as the governmental branch of last resort. Article III courts should not make decisions unless they have to."). Defendants believe that *Scales* and *Solis-Espinoza* were wrongly decided as explained further below, but there is no need at this stage for the Court to apply those cases to the facts here, given the availability of adequate alternative relief.

## II.    Plaintiffs are not entitled to summary judgment on their substantive due process claim because Defendants' actions pass rational-basis review.

---

[1] For example, the Court could hold this case in abeyance so that Plaintiffs could apply for a certificate of citizenship from USCIS and only render a decision if USCIS denied the application.

1    As a separate matter, Plaintiffs are not entitled to summary judgment on

2    their substantive due process claim.[2] They fail to establish a fundamental right at

3    issue, and in resolving this constitutional claim the Court should find that

4    Defendants' actions pass rational-basis review.[3]

5    Plaintiffs' constitutional claim is that the Department's interpretation of

6    applicable law to require a biological relationship between the foreign-born child

7    seeking to acquire U.S. citizenship at birth and the U.S. citizen parent "denies

8    same-sex married couples and their children the panoply of rights and benefits of

9    marriage." Pls.' Br. at 22.  But the Department's legal interpretation distinguishes

10   between biological and non-biological parent-child relationships, *not* between

11   same-sex and opposite-sex couples. *See* 8 FAM 301.4-1(D)(1)(c), (D)(1)(d)(5); *id.*

12   304.3-1(b) (recognizing as a child's acquisition of citizenship at birth under 8

13   U.S.C. § 1401(g) where two women married to each other are U.S. citizens, and

14   one is the legal, gestational mother of the child and the other is the genetic

---

16   [2] Plaintiffs appear to move for summary judgment only on Andrew's substantive
17   due process claim. To the extent E.J. raises an independent substantive due process
18   claim in the Complaint, *see* Compl. ¶ 76, and Amended Complaint, Am. Compl. ¶
     76, ECF No. 94, Plaintiffs make no arguments that Defendants' actions have
19   infringed upon any of E.J.'s fundamental rights. *See* Pls.' Br. at 22–25. Summary
20   judgment for Plaintiffs on E.J.'s substantive due process claim would be
     inappropriate. A foreign-born individual's right to U.S. citizenship at birth has also
21   never been recognized as an independent, fundamental right. *See Rios-Valenzuela*
     *v. Dep't of Homeland Sec.*, 506 F.3d 393, 401–02 (5th Cir. 2007) (declining to
22   "find that a due process right inheres naturally in a claim to citizenship itself" in
23   part because "the case law does not clearly support such a right"). And the
     Department's policy passes rational-basis review, as explained *infra.*

25   [3] The parties agree that to the extent this Court can resolve Plaintiffs' section 1503
26   claim, this Court need not reach Plaintiffs' constitutional claim. *See* Pls.' Br. at 22
     n. 14; Mem. in Supp. of Defs.' Mot. for Partial Summ. J. ("Defs.' Br.") at 19 n.16,
27   ECF No. 89-1.

mother); Defs.' Opp. Stmt. of Facts ¶¶ 165–66. That the biological relationship, or lack thereof, is the fulcrum of this interpretation is underscored by the fact that the Department approved the applications for a CRBA and passport for A.J., the biological child of U.S. citizen Andrew.

Further, an individual's purported right to transmit U.S. citizenship at birth to a foreign-born child who has no biological relationship to the individual has not been recognized as a right and benefit of marriage. Plaintiffs cite *Pavan v. Smith*, 137 S. Ct. 2075, 2077 (2017), in support of this argument, but *Pavan* is of no help to them here. In *Pavan*, a state law "generally require[d] the name of the mother's male spouse to appear on the child's birth certificate," even if "the couple conceived by means of artificial insemination with the help of an anonymous sperm donor." *Pavan*, 137 S. Ct. at 2077. The law, however, did not require the state to "issue birth certificates including the female spouses of women who give birth in the State." *Id.* The court found that the state's law infringed upon a right of marriage because the state had "chosen to make its birth certificates more than a mere marker of biological relationships," since "when an opposite-sex couple conceives a child by way of anonymous sperm donation," just as the same-sex plaintiffs did, "state law requires the placement of the birth mother's husband on the child's birth certificate." *Id.* at 2078. Here, however, the Department's statutory interpretation requires married U.S. citizens in both same-sex couples and opposite-sex couples—and, indeed, unmarried U.S. citizens, as well—to possess a biological connection to a foreign-born child for the child to acquire U.S. citizenship at birth.[4] Thus the Department's interpretation on this specific issue can

---

[4] Plaintiffs cursorily argue that it is "beside the point" that the Department applies "the FAM's biological relationship requirement to the children of opposite-sex marriages," but they fail to meaningfully explain why the Court should ignore this salient fact. *See* Pls.' Br. at 24. The Department's interpretation does not foreclose the Department from adjudicating the CRBA or passport applications of children

be seen as "a mere marker of biological relationships," *id.*, precluding Plaintiffs' attempts to paint Defendants' actions as infringing on a fundamental right related to marriage.[5]

Nor do U.S. citizens possess a fundamental right to unconditionally transmit U.S citizenship to a foreign-born child. Plaintiffs rely on *Miller v. Albright*, 523 U.S. 420, 433 (1998), for this proposition. *See* Pls.' Br. at 23. But *Miller* examined a claim brought by an individual seeking to *acquire*, not transmit, U.S. citizenship. Moreover, the decision recognized that "[p]ersons not born in the United States acquire citizenship by birth only as provided by Acts of Congress," *Miller*, 523 U.S. at 424 (Stevens, J. op.), and that "there is no doubt that ensuring reliable proof of a *biological* relationship between the potential citizen and its citizen parent is an important governmental objective," *id.* at 436 (emphasis added). Indeed, the various conditions that Congress imposes for foreign-born children to acquire U.S. citizenship at birth, such as requiring U.S. citizen parents to have years of physical presence in the United States, make clear that any right to transmission of citizenship is contingent (and statutory). *See* 8 U.S.C. §§ 1401, 1409; *see also Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1687 (2017) (describing section 1401's and section 1409's physical-presence requirements).[6] Thus, Plaintiffs fail to

---

of male same-sex marriages under section 1401(g), *see* Defs.' Opp. Stmt. of Facts ¶¶ 165, 167, and, in any event, conclusively establishes that the Department's policy focuses on biology, not marriage. *See Pavan*, 137 S. Ct. at 2078.

[5] Nor do *Scales* and *Solis-Espinoza* establish such a fundamental right; both decisions engaged in statutory interpretation of sections 1401 and 1409 and did not examine whether the transmission of U.S. citizenship in those circumstances was a constitutionally protected fundamental right. *See Scales*, 232 F.3d at 1166; *Solis-Espinoza*, 401 F.3d at 1094.

[6] Indeed, while *Morales-Santana* concluded that "the gender-based distinction infecting §§ 1401(a)(7) and 1409(a) and (c) . . .violates the equal protection

establish that a U.S. citizen's right to transmit U.S. citizenship to a non-biological, foreign-born child is "so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty," that it amounts to a fundamental right for the purposes of substantive due process analysis. *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997).

Because Defendants' actions do not infringe upon a fundamental right, rational-basis review applies. *Kim v. United States*, 121 F.3d 1269, 1273 (9th Cir. 1997). Under rational-basis review, Plaintiffs "have the burden to negate every conceivable basis that might support" Defendants' position. *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 307 (1993).

Plaintiffs claim that Defendants "fail to assert any [governmental] interest" in its position, Pls.' Br. at 25, but that is incorrect. As explained in Defendants' moving brief, the Department's longstanding interpretation of the language "born of . . . parents" in Section 1401(g) to require a biological relationship between the child seeking to acquire U.S. citizenship and her married parents is rooted in its understanding that Congress has, since 1790, generally required that "at least one biological parent must have been a U.S. citizen when the child was born." 8 FAM 301.4-1(B); Defs.' Opp. Stmt. of Facts ¶ 171. The Department's interpretation is further supported by the overall text and structure of the INA, which treats the non-biological children of U.S. citizens differently from their biological children. *See, e.g.*, 8 U.S.C. §§ 1101(c), 1431(b), 1433(c); *see also Acevedo v. Lynch*, 798 F.3d 1167, 1171 (9th Cir. 2015); *Dent v. Sessions*, 900 F.3d 1075, 1082 (9th Cir. 2018).

---

principle," *Morales-Santana*, 137 S. Ct. at 1700–01, "Section 1401(a)(7)'s longer physical-presence requirement . . . must hold sway," because Congress likely would have eliminated the shorter physical-presence requirements for unwed mothers over unwed fathers "had it been apprised of the constitutional infirmity," *id.* (citation omitted). This result confirms that any right to the transmission of U.S. citizenship to a foreign-born child is, at best, provisional.

Further, the Department has noted another governmental interest at stake: it has expressed concerns that adopting a contrary interpretation of Section 1401(g) would raise the frequency of fraudulent citizenship claims, because it would be more difficult to identify child smuggling or illegal adoption without requiring a biological link between the child applicant and the transmitting parent. *See* Defs' Stmt. of Facts ¶ 172. Therefore, Defendants have articulated a legitimate interest that is rationally related to its position, and summary judgment for Plaintiffs should be denied on this basis. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015).

Further, depicting E.J.'s claim to acquire U.S. citizenship at birth as turning on Andrew and Elad's status as a married couple and the legal parents of E.J., Plaintiffs gloss over the complicated issue of policy and statutory interpretation at issue in this case. With the advent of assisted reproductive technology (ART) and accompanying surrogate motherhood agreements in the late 20th century and early 21st century,[7] there exist today many more scenarios and possibilities for both biological parenthood and legal parenthood than when the INA was enacted, or when the common law of parentage evolved. Yet at least one fact is essentially unchanged from the time the INA became law through and beyond the time the Department of State applied its provisions to the instant in case: a human child must have a biological mother and a biological father. In this case those biological parents comprise a father, Elad, who is a legal parent but is *not* a U.S. citizen, and a mother who is *not* a legal parent and whose citizenship is not considered relevant

---

[7] *See generally* The Law of Surrogate Motherhood in the United States, *The American Journal of Comparative Law* Vol. 58, Supplement: Welcoming the World: U. S. National Reports to the XVIIIth International Congress of Comparative Law (2010), pp. 97–114.
https://www.jstor.org/stable/20744535?seq=1#page_scan_tab_contents

for the purposes of E.J.'s passport and CRBA applications, either by Defendants or Plaintiffs.[8]  Plaintiffs' premise in this case, therefore, is that E.J. should have acquired U.S. citizenship at birth notwithstanding the fact that *neither* of his biological parents is both his legal parent and a U.S. citizen.

In support of this putatively "obvious" position, Pls.' Br. at 16, Plaintiffs point to the face of § 301(g), and decry the Department's supposed "imposition" of a biological relationship requirement with respect to its text, *see, e.g.*, *id.* at 8, 22, 24. It is true that section 1401(g) does not have the express language of section 1409(a), requiring, *inter alia*, a "blood relationship between the person and the father" language in order for citizenship to be acquired at birth.  Nevertheless, "*born* of … parent*s*" (emphasis added) has an inherently biological connotation,[9] and can reasonably be read and understood to serve a similar function and purpose to the "blood relationship" language of section 1409(a)—i.e., ensuring a biological connection between a child and his or her parents.  Moreover, "parents" as

---

[8] *See* 8 FAM 304.3-2(a) ("For purposes of this section, the term 'surrogate' refers to a woman who gives birth to a child, who is not the legal parent of the child at the time of the child's birth in the location of the birth.  In such a case, the surrogate's citizenship is irrelevant to the child's citizenship analysis.").

[9] At the time the INA and predecessor statutes were enacted, the term "born of parents" was understood as referring to the reproductive offspring that came from those parents. *See, e.g.*, Note, *Citizenship by Birth*, 41 Harv. L. Rev. 643, 645–46 (1928). Also, the transitive verb "born" means "To cause to be born, to deliver (a child), to bring into existence." *Born*, Oxford English Dictionary (1989), *available at* http://www.oed.com/view/Entry/21673 (last visited Jan. 14, 2019). And the word "of" "[i]ndicat[es] the thing, place, or direction from which something goes, comes, or is driven or moved: from, away from, out of." *Of*, Oxford English Dictionary (3d Ed. 2004), *available at* http://www.oed.com/view/Entry/130549 (last visited Jan. 14, 2019). Historically, use of the word "of" in a figurative sense "[i]ndicat[ed] a situation, condition, or state out of or away from which something moves, or is figured as moving: from, out of." *Id.* Thus, the term "*born of* parents" lends itself to an interpretation that means the biological offspring of parents.

understood by the legislature could only have meant "mother" and "father," the genetic contribution both sexes being necessary to conceive a child, a person who is subsequently "born of . . . parents." *See United States v. Marguet-Pillado*, 560 F.3d 1078, 1083 (9th Cir. 2009) ("There can be little doubt that the 'born of' concept generally refers to a blood relationship.").

Seen in this light, the fact that Congress did not include language as express as "blood relationship" in section 1401 should not be regarded as "demonstrat[ing] that Congress intended that there be no biological relationship requirement under Section 301(g)," Pls.' Br. at 16. Rather, the textual treatment should be seen as an indicator that Congress—at least in the context of the law on acquisition of U.S. citizenship at birth—saw no need to be express about circumstances that were entirely unremarkable and therefore could be (and in Defendants' view, was) implicitly assumed without the need for express text: "born of" connoted a biological connection to both parents: mother and father. "There is nothing irrational or improper in the recognition that at the moment of birth—a critical event in the statutory scheme and in the whole tradition of citizenship law—the mother's knowledge of the child and the *fact of parenthood* have been established []," *Nguyen v. INS*, 533 U.S. 53, 68 (2001) (emphasis added).[10]  *See also Miller*, 523 U.S. at 443 (op. of Stevens, J.) "[I]t is not merely the sex of the citizen parent that determines whether the child is a citizen under the terms of the statute; rather, it is *an event creating a legal relationship between parent and child—the birth*

---

[10] The Court in *Nguyen* – a case that this Circuit's *Scales* decision did not take account of since *Nguyen* was decided a year later – made the statement in the context of its analysis of section 1409, but nothing in the Court's opinion suggests that it considered the biological parent-child relationship to be exclusively limited to section 1409. *See Nguyen,* 533 U.S. at 68.

*itself for citizen mothers*, but postbirth conduct for citizen fathers and their offspring." (emphasis added).

In sum, it is entirely reasonable to construe and understand the language "born of … parents" in section 1401(g) as encompassing *both* the biological and legal elements of parenthood.  This is precisely the interpretation the Department of State applied in the instant case and has long held and applied worldwide.  In so doing, the Department was not "imposing" a biological relationship requirement with respect to section 1401; it was simply imputing into the statutory text a requirement it believed was, at minimum, implicit—an interpretation reinforced by the statutory scheme and the context of the pre-ART era in which the INA was enacted.

The foregoing analysis notwithstanding, Defendants recognize that the Ninth Circuit has decided, in *Scales*, that "a *straightforward* reading of § 1401 *indicates* . . . that there is no requirement of a blood relationship," *Scales*, 232 F.3d at 1164 (emphasis added); *see also Solis-Espinoza*, 401 F.3d at 1094.[11]  Neither of those cases, however, involved a child born through the use of ART, or addressed the constitutional claim raised here.[12]

---

[11] Plaintiffs also cite *Jaen v. Sessions*, 899 F.3d 182 (2d Cir. 2018). As a decision of the Second Circuit, *Jaen* does not bind this jurisdiction, and in any event, it too did not involve ART. Further, this case had not been decided at the time of the adjudications at issue in this case.

[12] Indeed, light of the novel facts presented by ART, this constitutional claim can be seen in some ways as a matter of first impression, concerning who counts as a "parent" for purposes of acquisition of citizenship in the light of reproductive technologies of the 21st century. If nothing else, such considerations counsel for the narrowest of decisions in this case. The question of whether Plaintiff E.J. acquired U.S. citizenship birth, and the associated issues and relief that both Plaintiffs present and call for, can and should be resolved on purely statutory grounds, not as a constitutional matter.

Finally, as noted in Defendants' moving brief, should the Court conclude that summary judgment should be granted in favor of Plaintiffs on this claim, it may only order relief that is limited to the parties and not the permanent, universal injunction that Plaintiffs seek. *See* Compl. for Declaratory and Injunctive Relief, Prayer for Relief at iii, ECF No. 1; Proposed First Am. Compl. For Declaratory and Injunctive Relief, Prayer for Relief at iii, ECF No. 79-2. That is because "[i]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 698, 702 (1979); *see also Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018). "This rule applies with special force where," as here, "there is no class certification." *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018). Because Plaintiffs have brought only claims on behalf of themselves, relief should accordingly be limited to what is sufficient to redress their injuries.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for partial summary judgment.

Dated: January 14, 2019                Respectfully submitted,

Attorneys for Defendants

JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

By: *s/ Vinita B. Andrapalliyal*
VINITA B. ANDRAPALLIYAL
Trial Attorney
United States Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-0845
Fax: (202) 616-8470
Email: vinita.b.andrapalliyal@usdoj.gov

LISA ZEIDNER MARCUS
Senior Counsel

# CERTIFICATE OF SERVICE

Case No. CV 18-523-JFW-JC

I hereby certify that I am over the age of 18 and not a party to the above-titled action.  I am employed as a Trial Attorney at the United States Department of Justice, Civil Division, Federal Programs Branch.  My business address is 20 Massachusetts Ave., N.W., Washington, DC 20530.

On January 14, 2019, I served this RESPONSE AND OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT on each person or entity named below by uploading an electronic version of this document to the Court's ECF system:

ALEXA LAWSON-REMER
lawsonr@sullcrom.com
SULLIVAN & CROMWELL
1888 Century Park East
Los Angeles, CA 90067-1725
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

THEODORE EDELMAN
edelmant@sullcrom.com
JESSICA KLEIN
kleinj@sullcrom.com
SULLIVAN & CROMWELL
125 Broad Street
New York, New York 10004-2498
Telephone (212) 558-4000
Facsimile: (212) 558-3588

IMMIGRATION EQUALITY
AARON C. MORRIS
amorris@immigrationequality.org
40 Exchange Place
Suite 1300
New York, New York, 10005-2744
Telephone: (212) 714-2904

I declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

Executed on January 14, 2019, at Washington, DC.

By: *s/Vinita B. Andrapalliyal*
VINITA B. ANDRAPALLIYAL
Trial Attorney
United States Department of Justice
Civil Division