JOSEPH H. HUNT
    Assistant Attorney General
ANTHONY J. COPPOLINO
    Deputy Director
LISA ZEIDNER MARCUS
    Senior Counsel
VINITA B. ANDRAPALLIYAL
    Trial Attorney
UNITED STATES DEPARTMENT OF JUSTICE
    Civil Division, Federal Programs Branch
    P.O. Box 883
    Washington, DC 20044
    Tel: (202) 305-0845
    vinita.b.andrapalliyal@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANDREW MASON DVASH-BANKS and E. J. DVASH-BANKS,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE UNITED STATES DEPARTMENT OF STATE, and THE HONORABLE MICHAEL R. POMPEO, Secretary of State,<br><br>        Defendants. | No. CV 18-523-JFW-JC<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Hearing Date: Feb. 4, 2019<br><br>Honorable John F. Walter |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ...........................................................................................1

ARGUMENT ................................................................................................2

    I.   Plaintiffs' APA claim fails because there is an adequate, alternative remedy at law.............................................................................2

    II.  Defendants are entitled to summary judgment on Plaintiffs' substantive due process claim.................................................................7

CONCLUSION .............................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Alsaidi v. U.S. Dep't of State,*
  292 F. Supp. 3d 320 (D.D.C. 2018) ...........................................................3

*Asemani v. U.S. Citizenship & Immigration Servs.,*
  797 F.3d 1069 (D.C. Cir. 2015).................................................................6

*Astrue v. Capato ex rel. B.N.C.,*
  566 U.S. 541 (2012) .................................................................................11

*Bowen v. Massachusetts,*
  487 U.S. 879 (1988) ...............................................................................2, 3

*Brittain v. Hansen,*
  451 F.3d 982 (9th Cir. 2006) ...................................................................12

*California v. Azar,*
  911 F.3d 558 (9th Cir. 2018).....................................................................5

*Californians for Renewable Energy v. EPA,*
  No. C 15-3292 SBA, 2018 WL 1586211 (N.D. Cal. Mar. 30, 2018) ................3

*Colainni v. INS,*
  490 F.3d 185 (2d Cir. 2007) ....................................................................11

*Erotic Serv. Provider Legal Educ. & Research Project v. Gascon,*
  880 F.3d 450 (9th Cir. 2018), *amended,* 881 F.3d 792 (9th Cir. 2018) ...........10

*Esparza v. Clinton,*
  No. 6:12-CV-925-AA, 2012 WL 6738281 (D. Or. Dec. 21, 2012) ...................3

*Garza v. Tillerson,*
  No. 1:17-cv-132, 2017 WL 8942394 (S.D. Tex. Dec. 14, 2017)
  *report & recommendation adopted,* No. 1:17-cv-132, 2018 WL
  1934197 (S.D. Tex. Jan. 18, 2018).............................................................4

*Gutierrez v. Tillerson*,

    No. 1:17-cv-111, 2017 WL 6044108 (S.D. Tex. Nov. 15, 2017),

    *report & recommendation adopted*, No. 1:17-cv-111, 2017 WL

    6054941 (S.D. Tex. Dec. 6, 2017) ................................................................ 3-4

*Hinojosa v. Horn*,

    896 F.3d 305 (5th Cir. 2018) ................................................................ 3

*Kerry v. Din*,

    135 S. Ct. 2128 (2015) ................................................................ 9

*Kim v. United States*,

    121 F.3d 1269 (9th Cir. 1997) ................................................................ 9

*Latta v. Otter*,

    771 F.3d 456 (9th Cir. 2014) ................................................................ 8

*Marquez-Marquez v. Gonzales*,

    455 F.3d 548 (5th Cir. 2006) ................................................................ 10

*Miller v. Albright*,

    523 U.S. 420 (1998) ................................................................ 7

*Muttitt v. U.S. Cent. Command*,

    813 F. Supp. 2d 221 (D.D.C. 2011) ................................................................ 2-3

*Ortega-Morales v. Lynch*,

    168 F. Supp. 3d 1228 (D. Ariz. 2016) ................................................................ 3

*Quick Korner Mkt. v. U.S. Dep't of Agric., Food & Nutrition Serv.*,

    180 F. Supp. 3d 683 (S.D. Cal. 2016) ................................................................ 2, 3

*Richards v. Sec'y of State*,

    752 F.2d 1413 (9th Cir. 1985) ................................................................ 2

*Sackett v. EPA*,

    566 U.S. 120 (2012) ................................................................ 6

*Scales v. INS*,

    232 F.3d 1159 (9th Cir. 2000) ................................................................ 6, 9

*Servin-Espinosa v. Ashcroft,*
  309 F.3d 1193 (9th Cir. 2002) ................................................................11
*Sessions v. Morales-Santana,*
  137 S. Ct. 1678 (2017) ...............................................................................9
*Shanks v. Dressel,*
  540 F.3d 1082 (9th Cir. 2008) ................................................................12
*Solis-Espinoza v. Gonzales,*
  401 F.3d 1090 (9th Cir. 2005) ..................................................................9
*United States v. Marguet-Pillado,*
  560 F.3d 1078 (9th Cir. 2009) ......................................................... 11, 12
*Veterans for Common Sense v. Nicholson,*
  No. C-07-3758 SC, 2008 WL 114919 (N.D. Cal. Jan. 10, 2008) ..................4, 5
*Washington v. Glucksberg,*
  521 U.S. 702 (1997) ....................................................................................9

**Statutes**

5 U.S.C. § 704 ..............................................................................................1, 2
8 U.S.C. § 1103 .................................................................................................6
8 U.S.C. § 1104 .................................................................................................6
8 U.S.C. § 1401 ........................................................................................ *passim*
8 U.S.C. § 1401(g) .................................................................................... *passim*
8 U.S.C. § 1409 ........................................................................................ *passim*
8 U.S.C. § 1431(b) ..........................................................................................11
8 U.S.C. § 1433 ...............................................................................................11
8 U.S.C. § 1452 .................................................................................................1
8 U.S.C. § 1452(a) ............................................................................................6
8 U.S.C. § 1503(a) ............................................................................... 1, 2, 4, 6
22 U.S.C. § 2705 ..........................................................................................4, 6

**Regulations**

8 C.F.R. § 341.5 ...................................................................................6

22 C.F.R. §§ 51.41 ...............................................................................4

22 C.F.R. § 43 .......................................................................................4

**Other Authorities**

Helen M. Alvaré, *The Case for Regulating Collaborative Reproduction:*

    *A Children's Rights Perspective*, 40 Harv. J. on Legis. 1 (2003)......................10

**INTRODUCTION**

In their moving brief, Defendants explained that they are entitled to summary judgment on Plaintiffs' claim under the Administrative Procedure Act ("APA") as well as Plaintiffs' Declaratory Judgment Act ("DJA") claim alleging a substantive due process violation. Plaintiffs' APA claim fails because alternative remedies at law exist. *See* 5 U.S.C. § 704. Specifically, 8 U.S.C. § 1503(a) allows Plaintiffs to seek *de novo* review of Plaintiff E.J.'s citizenship claim, and 8 U.S.C. § 1452 allows Plaintiffs to seek a certificate of citizenship from U.S. Citizenship and Immigration Services ("USCIS"). Plaintiffs' opposition brief argues that these alternative remedies are inadequate, but it fails to explain why APA relief is necessary to redress their injuries in light of section 1503(a), which provides for *de novo* review of E.J.'s citizenship claim and a judicial declaration of citizenship, if E.J. is successful. Moreover, Plaintiffs merely speculate about the potential pitfalls of the certificate-of-citizenship administrative process, which allows for judicial review.

Defendants are also entitled to summary judgment on Plaintiffs' substantive due process claim, because Plaintiffs fail to establish that Defendants have infringed Plaintiffs' fundamental rights; moreover, Defendants' interpretation of 8 U.S.C. §§ 1401(g) and 1409 survives rational-basis review. Plaintiffs argue that Defendants' actions infringe on the rights of same-sex couples to marry and that strict scrutiny should apply, but their arguments are unavailing: Defendants' interpretation of sections 1401(g) and 1409 turn on principles of biology, not sex, sexual orientation, or marriage. Plaintiffs' attempts to paint Defendants' policies as irrational also fall short, as the Department of State's longstanding interpretation of sections 1401(g) and 1409 is reasonable.

**ARGUMENT**

**I.      Plaintiffs' APA claim fails because there is an adequate, alternative remedy at law.**

Plaintiffs' APA claim fails because, as Defendants explained in their moving brief, Plaintiffs have multiple adequate, alternative remedies at law. Plaintiffs' arguments to the contrary are unpersuasive.

First, 8 U.S.C. § 1503(a)'s specific procedures, through which Plaintiffs have brought a separate claim in this suit, provide an adequate remedy so as to preclude APA review. *See* 5 U.S.C. § 704; *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (Section 704 "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures.") (internal citation omitted).

Under section 1503(a), "[i]f any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege" by the Department "upon the ground that he is not a national of the United States," he "may institute an action" against the Department "for a judgment declaring him to be a national of the United States." *Id.* Section 1503's "review procedure is 'special' in the sense that it specifically encompasses the type of action that Plaintiffs seek to bring here." *Quick Korner Mkt. v. U.S. Dep't of Agric., Food & Nutrition Serv.*, 180 F. Supp. 3d 683, 695 (S.D. Cal. 2016) (quoting *Bowen,* 487 U.S. at 903). And the *de novo* judicial review the statute authorizes, *see Richards v. Sec'y of State*, 752 F.2d 1413, 1417 (9th Cir. 1985), supports the conclusion that section 1503(a) provides an adequate remedy at law for the purposes of APA review. *Quick Korner Mkt.*, 180 F. Supp. 3d at 694–95 ("Where a statute affords an opportunity for *de novo* district-court review of the agency action, APA review is precluded since Congress did not intend to permit a litigant challenging an administrative denial . . . to utilize simultaneously both the statute's review provision and the APA." (quoting *Muttitt v. U.S. Cent. Command*, 813 F.

1  Supp. 2d 221, 226–27 (D.D.C. 2011)).

2          Plaintiffs argue that while they seek "a declaration under [s]ection 1503 that

3  [E.J.] is a U.S. citizen at birth, they seek broader relief in addition to such a

4  declaration" that is not specifically authorized under section 1503(a). Pls.' Opp'n

5  Br. at 5. Specifically, Plaintiffs also seek "a declaration that the State Department's

6  . . . interpretation of [s]ection 301 is unlawful and unconstitutional and an

7  injunction precluding the State Department from continuing to interpret [s]ection

8  301 in that manner." *Id.* at 5–6. But section 1503(a)'s remedies are adequate even

9  though "the APA provides for relief that Plaintiffs cannot obtain" under that

10 statute. *Quick Korner Mkt.*, 180 F. Supp. 3d at 695; *see also Californians for*

11 *Renewable Energy v.* EPA, No. C 15-3292 SBA, 2018 WL 1586211, at *11 (N.D.

12 Cal. Mar. 30, 2018) ("[T]he relief need not be identical to the APA" to be

13 considered adequate, so long as it offers more than 'doubtful and limited relief.'"

14 (quoting *Bowen*, 487 U.S. at 901)). Indeed, courts that have examined this issue

15 have concluded that section 1503 does provide an adequate remedy even when a

16 claimant seeks prospective, injunctive relief.[1] *See Hinojosa v. Horn*, 896 F.3d 305,

17 312 (5th Cir. 2018) (Section "1503 expresses a clear congressional intent to

18 provide a specific procedure to review the Plaintiffs' claims", precluding Plaintiffs'

19 claims seeking declaratory and injunctive relief under the APA); *Gutierrez v.*

20

21 [1] Plaintiffs also mischaracterize *Ortega-Morales v. Lynch*, 168 F. Supp. 3d 1228
   (D. Ariz. 2016), and *Esparza v. Clinton*, No. 6:12-CV-925-AA, 2012 WL 6738281
22 (D. Or. Dec. 21, 2012), in stating that those cases did not involve claims for
   injunctive relief. *See* Pls.' Opp. Br. at 6 n.9. In *Ortega-Morales*, the plaintiff *did*
23 seek injunctive relief. 168 F. Supp. 3d at 1232 (seeking an order to "compel
   Defendants . . . to grant their applications"). And in *Esparza*, the district court
24 notes that the plaintiff is "challenging the Department of State's denial of her
   passport" under the APA without specifying the relief she was seeking under that
25 statute. 2012 WL 6738281, at *1.
          Plaintiffs further mischaracterize the district court's statements in *Alsaidi v.*
26 *U.S. Dep't of State*, 292 F. Supp. 3d 320 (D.D.C. 2018). The court in that case
   noted that it was not deciding whether section 1503 was an adequate alternative
27 remedy in the context of an APA claim seeking injunctive relief, *id.* at 328–29, and
   did not "expressly le[ave] open the possibility that [s]ection 1503 would not
28 provide an adequate remedy when a plaintiff requests 'injunctive or any other form
   of relief.'" Pls.' Opp. Br. at 6 n.9 (quoting *Alsaidi*, 292 F. Supp. 3d at 327–28).

1    *Tillerson*, 1:17-CV-111, 2017 WL 6044108, at *7 (S.D. Tex. Nov. 15, 2017),

2    *report and recommendation adopted*, No. 1:17-CV-111, 2017 WL 6054941 (S.D.

3    Tex. Dec. 6, 2017); *see also Garza v. Tillerson*, 1:17-CV-132, 2017 WL 8942394,

4    at *1 (S.D. Tex. Dec. 14, 2017), *report and recommendation adopted*, No. 1:17-

5    CV-132, 2018 WL 1934197 (S.D. Tex. Jan. 18, 2018).

6            Further, Plaintiffs do not meaningfully explain why APA review is

7    necessary in light of the declaratory relief available under section 1503. They

8    argue, without support, that "it remains to be seen whether the State Department

9    . . . would issue E.J. a CRBA and U.S. passport if he were to provide them with a

10   court order declaring him to be a U.S. citizen." Pls.' Opp'n Br. at 6. The

11   Department is of course bound by applicable judicial decisions and has been bound

12   by judicial declarations of citizenship in section 1503 cases brought in federal

13   district courts throughout the country. If the Court entered a declaration declaring

14   E.J. to be a citizen in accordance with the procedures set forth in 8 U.S.C.

15   §1503(a), under 22 U.S.C. § 2705, that judicial declaration has similar legal effect

16   to a CRBA issued by the Department or a certificate of citizenship issued by

17   USCIS. Such documentation would thus be evidence of U.S. citizenship for the

18   purposes of any future agency adjudications where proof of U.S. citizenship is

19   required—for example, a U.S. passport application. *See* 22 C.F.R. §§ 51.41, 43; 8

20   FAM 303.1-2.[2]

21           Plaintiffs rely heavily on an unpublished district court case, *Veterans for*

22   *Common Sense v. Nicholson*, No. C-07-3758 SC, 2008 WL 114919 (N.D. Cal. Jan.

23   10, 2008), in support of their argument that section 1503 does not provide an

24   adequate remedy here. But that case materially differs from the facts at bar. In

25   *Veterans for Common Sense*, the plaintiffs had brought a class action and asserted

26   _____

27   [2] Conversely, the Department is not bound by a court decision that does *not* apply
     to it. To the extent the Department did not adhere to a particular circuit's
     interpretation of section 1401 or 1409 in adjudicating Plaintiffs' CRBA and U.S.

28   passport applications, those adjudications were done abroad; Plaintiffs have not
     explained, nor could they, why the Department should have applied Ninth Circuit
     law (or any particular circuit's law) to them at a time they were residing in Canada.

1   constitutional claims under the APA, and the alternative remedy at issue, available

2   through the Court of Appeals for Veterans Claims, was inadequate because that

3   court did not have jurisdiction to consider "many of Plaintiffs' challenges . . .

4   aimed directly at the processes that the regional offices and the [Board of Veterans

5   Appeals] use to reach decisions of individual claims." *Veterans for Common Sense*,

6   2008 WL 114919, at *7. Rather, the administrative appeals court "only has

7   jurisdiction to affirm, reverse, or remand decisions of the [Board] on individual

8   claims for benefits." *Id.* at *7. Here, by contrast, Plaintiffs do not bring a class

9   action, nor do they bring procedural challenges that cannot be heard otherwise.

10   Also, Defendants do not seek to dismiss Plaintiffs' constitutional claim on the basis

11   of section 1503's remedies. Finally, section 1503 allows the Court to apply, after

12   *de novo* review, its interpretation of sections 1401 and 1409. Therefore, *Veterans*

13   *for Common Sense* does not provide a basis to conclude that section 1503 is an

14   inadequate remedy for Plaintiffs' APA claim.

15       Plaintiffs argue that the broad relief they seek (i.e., to rectify "the statutory

16   construction/administrative policy" that led to the adjudications at issue) is not

17   available under section 1503. *See* Pls.' Opp'n Br. at 7. Yet they claim that they do

18   not seek relief that goes beyond their own injuries, *See id.* at 8. To the extent that

19   Plaintiffs still seek to challenge the Department's denials of E.J.'s CRBA and

20   passport applications, section 1503 is designed to address those concerns and can

21   provide the documentation of citizenship originally sought through E.J.'s CRBA

22   application; thus, section 1503 can provide complete relief to E.J. To the extent

23   Plaintiffs seek relief beyond redressing E.J.'s specific injuries, they provide no

24   meaningful reason for why such relief is legally necessary and properly available

25   now that they have a more than adequate remedy in the United States.

26       Thus, Plaintiffs' sought-after relief provides no basis for APA review and,

27   indeed, is wholly inappropriate. *See California v. Azar*, 911 F.3d 558, 584 (9th Cir.

28   2018) ("The scope of the remedy must be no broader and no narrower than

1   necessary to redress the injury shown by the plaintiff states. The plaintiff states

2   argue that complete relief to them would require enjoining the [interim final rules]

3   in all of their applications nationwide. That is not necessarily the case.").

4           Another alternative remedy exists in this case, in the form of a certificate of

5   citizenship from USCIS. Plaintiffs make much of the fact that this administrative

6   benefit is not a "judicial remedy" for the purposes of APA review. *See* Pls.' Opp'n

7   Br. at 3–5. But the certificate-of-citizenship process provides for judicial review if

8   the certificate is denied.[3] *See* 8 C.F.R. § 341.5; 8 U.S.C. § 1503(a). Plaintiffs

9   question the probability that the certificate would be granted. But as Defendants

10  explained, when an applicant living in the Ninth Circuit seeks certification of

11  citizenship, USCIS applies the Ninth Circuit caselaw of *Scales v. I.N.S.*, 232 F.3d

12  1159, 1165 (9th Cir. 2000), Defs.' Combined Stmt. of Facts 64–67, and thus it is

13  not "speculative" whether USCIS follows Ninth Circuit law in the Ninth

14  Circuit.  Finally, Plaintiffs cast doubt on the value of a certificate of citizenship.

15  But certificates of citizenship may establish that the bearer acquired citizenship at

16  birth, *see* 8 U.S.C. § 1452(a), and are in all respects equivalent to a CRBA and a

17  judicial declaration of citizenship, *see* 22 U.S.C. § 2705.[4]

18  _____

19  [3] Defendants acknowledge that *Sackett v. EPA*, 566 U.S. 120, 127 (2012), states
    that "[t]he remedy for denial of action that might be sought from one agency does

20  not *ordinarily* provide an 'adequate remedy' for action already taken by another
    agency." (emphasis added). However, this case is not ordinary. USCIS, as part of

21  the Department of Homeland Security ("DHS"), is charged with making
    citizenship determinations in the United States. *See* 8 U.S.C. § 1103. By contrast,

22  citizenship determinations sought by individuals living abroad fall within the
    purview of the Department of State. *See* 8 U.S.C. § 1104; *see also Scales v. INS*,
    232 F.3d 1159, 1165 (9th Cir. 2000) ("Because Petitioner is not a 'person not in

23  the United States,' the State Department is not the agency entrusted with the
    determination of Petitioner's citizenship."). Plaintiffs' claim against the

24  Department has thus been overtaken by events. Since Plaintiffs are in the United
    States, review of Consulate Toronto's decision is unnecessary in light of other

25  available remedies.

26  [4] Plaintiffs argue that "[c]itizenship at birth is a right, in contrast to naturalization,"
    Pls.' Opp Br. at 4–5 n.8. They cite *Asemani v. U.S. Citizenship & Immigration*

27  *Servs.*, 797 F.3d 1069, 1077–78 (D.C. Cir. 2015), in support of their contention
    that a certificate of citizenship is somehow inferior to a CRBA or a U.S. passport.

28  As an initial matter, *Asemani* does *not* stand for the proposition that the acquisition
    of U.S. citizenship at birth for a foreign-born individual is a right, either statutory

## II.   Defendants are entitled to summary judgment on Plaintiffs' substantive due process claim.

Defendants are also entitled to summary judgment on Plaintiffs' substantive due process claim. Plaintiffs fail to establish a fundamental right at issue, and in resolving this constitutional claim the Court should find that Defendants' actions pass rational-basis review.

Plaintiffs continue to claim that Defendants' actions have "infringed the fundamental right to marry by denying same-sex couples and their children 'equal dignity' and the full constellation of rights and benefits linked to marriage." Pls.' Opp'n Br. at 13. But as Defendants have explained, Plaintiffs incorrectly characterize the rights at issue. The Department's understanding of the INA to require a biological connection between the foreign-born child seeking to acquire U.S. citizenship at birth and a U.S. citizen parent indisputably applies to both opposite-sex and same-sex couples, married and unmarried.[5] *See* 8 FAM 301.4-

---

or otherwise. *Asemani* merely observes that the court is "aware of no case suggesting that an alien has the sort of fundamental right associated with obtaining naturalized citizenship status that would qualify for a constitutional entitlement to [the] fee waiver" at issue, and makes no mention of a particular right to the acquisition of citizenship at birth as a foreign-born child. Rather, as Defendants explained in their moving brief, "[p]ersons not born in the United States acquire citizenship by birth only as provided by Acts of Congress." *Miller v. Albright*, 523 U.S. 420, 424 (1998) (op. of Stevens, J.). Further, U.S. passports do not distinguish between individuals who are citizens at birth and those who are naturalized.

[5] Indeed, Plaintiffs actually challenge Defendants' denial of E.J.'s CRBA and U.S. passport applications because Defendants applied 8 U.S.C. § 1409 instead of 8 U.S.C. § 1401(g) to the applications. *See, e.g.*, Am. Compl. ¶¶ 3–6. They do not challenge the Department's interpretation of section 1401(g). *See generally* Compl., First Am. Compl. Irrespective of whether the Department decided E.J.'s applications under section 1401(g) or section 1409, it would have denied them. That is because, regardless of whether a child is considered to be born in wedlock for the purposes of section 1401(g), "[a]t least one biological parent must have been a U.S. citizen when the child was born" for the child to acquire U.S. citizenship despite being born outside of the country. 8 FAM 301.4-1(B)(1); *see also* 8 U.S.C. § 1401(g). The FAM notes that while "[c]hildren born in wedlock are generally presumed to be the issue of that marriage," that presumption is overcome when, as here, "an actual biological relationship to a U.S. citizen parent" is lacking. 8 FAM 301.4-1(D)(1)(d).  Plaintiffs' focus on the application of section 1409 thus obscures the statutory interpretation issue on which this case turns.

1(D)(1)(c), (D)(1)(d)(5). Indeed, that the Department's relevant statutory interpretation turns on biology, not sex or sexual orientation, is evident from the Department's approval of applications for a CRBA and passport for A.J., Andrew's biological child.

The Department similarly interprets section 1409 as applicable to both opposite-sex and same-sex couples in cases where a foreign-born child's biological parents are not married to each other. 8 FAM 304. Andrew is like a member of any other couple, married or unmarried who, whether because of infertility, age or personal choice, seeks to have and raise a child together with his or her partner or spouse but without contributing his (or her) own genetic material, and so turns to a third individual to be a biological parent.[6]

Plaintiffs later recast Defendants' actions as infringing on the rights of *male* same-sex men to marry and have children in wedlock. *See* Pls.' Opp'n Br. at 15. But in doing so, Plaintiffs concede, as they must, that the Department's interpretation does not treat same-sex couples differently from opposite-sex couples. *See* 8 FAM 304.3-1(b) (recognizing a child's acquisition of citizenship at birth under 8 U.S.C. § 1401(g) where two women married to each other are U.S. citizens, and one is the legal, gestational mother of the child and the other is the genetic mother). Plaintiffs' narrowed contention, however, is still meritless. It is premised on the misapprehension that "[t]he INA makes the ability to transmit U.S. citizenship to the child of a marriage part of the constellation of benefits linked to marriage." Pls.' Opp'n Br. at 15. The INA does no such thing, especially in the context of foreign-born children, where any right to transmit or acquire U.S. citizenship, on the basis of a marriage or otherwise, is contingent at best. *See* 8

---

[6] *See Latta v. Otter*, 771 F.3d 456, 493 (9th Cir. 2014) (Berzon, J., concurring) ("[B]oth same-sex and opposite-sex couples can and do produce children biologically related only to one member of the couple, via assisted reproductive technology or otherwise. And both same-sex and opposite-sex couples adopt children, belying the notion that the two groups necessarily differ as to their biological connection to the children they rear.").

U.S.C. § 1401(g) (imposing conditions for foreign-born children to acquire U.S. citizenship at birth, such as requiring U.S. citizen parents to have years of physical presence in the United States); *see also Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1687 (2017) (describing section 1401's and section 1409's physical-presence requirements).[7] Finally, as Defendants have explained, same-sex male couples *could* have a child who acquires U.S. citizenship under section 1401(g). Defs.' Combined Stmt. of Facts ¶¶ 59–60 (explaining that in certain instances, same-sex male couples can have a foreign-born child who can acquire citizenship at birth under section 1401(g)).

Plaintiffs argue that "the right of a *married* U.S. citizen to transmit citizenship to his foreign-born [non-biological] child is settled law in the Ninth Circuit and therefore is one of the incidents of marriage to which same-sex and opposite-sex couples are equally entitled." Pls.' Opp'n Br. at 14 (citing *Scales* and *Solis-Espinoza*). But the Ninth Circuit's statutory interpretation of sections 1401 and 1409 does not create a fundamental right "so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty," that it amounts to a fundamental right for the purposes of substantive due process analysis.[8] *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997). Because Plaintiffs fail to identify a fundamental liberty or property interest at issue, strict scrutiny does not apply; instead, rational-basis review governs. *Kim v. United States*, 121 F.3d 1269, 1273 (9th Cir. 1997).

---

[7] Further, the case law does not "establish[] a free-floating and categorical liberty interest in marriage . . . sufficient to trigger constitutional protection whenever a regulation in any way touches upon an aspect of the marital relationship." *Kerry v. Din*, 135 S. Ct. 2128, 2135 (2015) (op. of Scalia, J.).

[8] Neither *Scales* nor *Solis-Espinoza* involved same-sex couples, and neither case examined a U.S. citizen's right to transmit citizenship to foreign-born children; both cases were brought by foreign-born individuals asserting U.S. citizenship in deportation proceedings. *Scales*, 232 F.3d at 1161–62; *Solis-Espinoza v. Gonzales*, 401 F.3d 1090, 1092 (9th Cir. 2005). And again, the Ninth Circuit decided both cases as a matter of statutory interpretation. *Scales*, 232 F.3d at 1166; *Solis-Espinoza*, 401 F.3d at 1094.

1   Plaintiffs attack the Department's interpretation as "vastly over- and under-

2   inclusive."[9] Pls.' Opp'n Br. at 16. But the Department understands Congress to

3   have included a biological requirement in both sections 1401 and 1409, which

4   applies regardless of sex, sexual orientation, or marriage status. The result of that

5   interpretation is not over- or under-inclusive, inasmuch as it is what the

6   Department believes Congress intended.

7   Plaintiffs also dispute the existence and validity of the Department's fraud

8   concerns. But as Defendants noted, the Department is concerned about fraud in the

9   application for documentation of U.S. citizenship. Defs.' Combined Stmt. of Facts

10  156; *see also id.* 71, 72. Plaintiffs speculate about other policies that the

11  Department could adopt to mitigate the Department's fraud concerns, but that is

12  not the test under rational-basis review; Defendants must simply present a

13  "conceivable rational basis" for their policy. *Erotic Serv. Provider Legal Educ. &*

14  *Research Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018), *amended,* 881 F.3d

15  792 (9th Cir. 2018).

16  Plaintiffs also resist the parallels between their situation and a U.S. citizen's

17  decision to adopt a foreign-born infant, for whom the INA specifies other

18  citizenship procedures, because "the adoption context presents different legal and

19  policy considerations given the need to account for the presence of multiple

20  different relationships." Pls.' Opp'n Br. at 20. But so too here, where assisted

21  reproductive technology has created complex relationships between intended

22  parents, surrogate mothers, and sperm and egg donors. *See, e.g.*, Helen M. Alvaré,

23  *The Case for Regulating Collaborative Reproduction: A Children's Rights*

24  *Perspective*, 40 Harv. J. on Legis. 1, 2 (2003). Plaintiffs also attempt to distinguish

25  *Marquez-Marquez v. Gonzales*, 455 F.3d 548, 549 (5th Cir. 2006), *Colainni v. INS*,

26

27  [9] Plaintiffs make much of Defendants' purportedly *post-hoc* justifications, but
    "[r]ational basis review is highly deferential to the government, allowing any

28  conceivable rational basis to suffice. *Erotic Serv. Provider Legal Educ. &*
    *Research Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018), *amended,* 881 F.3d
    792 (9th Cir. 2018).

490 F.3d 185 (2d Cir. 2007), and *Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541 (2012), on the facts. But they do not grapple with the relevant substance of these cases: that children born abroad and adopted by U.S. citizen legal parents may only acquire citizenship through derivation or naturalization after birth, *see* 8 U.S.C. §§ 1431(b), 1433, even if they were adopted as infants. That the INA has separate citizenship and naturalization procedures for the non-biological children of U.S. citizen parents lends support to Defendants' interpretation of section 1401(g).

Plaintiffs further claim that "'the standard of rationality required' that applies whenever government action 'violates a statutory command' . . . is 'substantially less forgiving' than whenever government action does not violate a statutory command," and that Defendants' interpretation violates a statutory command. Pls.' Opp'n Br. at 21 (citing *Servin-Espinosa v. Ashcroft*, 309 F.3d 1193, 1198 (9th Cir. 2002)). This statement exaggerates the holding in *Servin-Espinoza*; that case only examined "what standard of rationality is required under equal protection," not under substantive due process, and only purported to ascribe a lower standard in such situations to the equal-protection standard of review. *Id.*

Further, the Department's interpretation does *not* violate a statutory command; it amounts to a reasonable reading of sections 1401 and 1409 that differs in some respects from the Ninth Circuit's views on the statutes. "*Born of . . . parents*" (emphasis added) has an inherently biological connotation, and can reasonably be read and understood to serve a similar function and purpose to the "blood relationship" language of section 1409(a)—i.e., ensuring a biological connection between a child and his or her parents. Moreover, "parents" as understood by the legislature could only have meant "mother" and "father," the genetic contribution of both sexes being necessary to conceive a child, a person who is subsequently "born of . . . parents." *See United States v. Marguet-Pillado*, 560 F.3d 1078, 1083 (9th Cir. 2009) ("There can be little doubt that the 'born of'

concept generally refers to a blood relationship.").[10] Section 1401(g)'s language can be seen as an indicator that in this context, Congress saw no need to be express about a circumstance—a biological link between parents and child—that was entirely unremarkable and therefore could be assumed. "[S]ubstantive due process secures individuals from 'arbitrary' government action that rises to the level of 'egregious conduct,' not from reasonable, though possibly erroneous, legal interpretation." *Brittain v. Hansen*, 451 F.3d 982, 996 (9th Cir. 2006); *see also Shanks v. Dressel*, 540 F.3d 1082, 1089 (9th Cir. 2008).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for partial summary judgment.

---

[10] Further, in describing the *Scales* and *Solis-Espinoza* decisions, the court in *Marguet-Pillado* explained the "erosion of a biological nexus" in those cases as "itself a reflection of the tradition that a man is considered to be the natural father of a child born during wedlock." 560 F.3d at 1083. In this case it is undisputed that Elad, not Andrew, is E.J.'s biological father.

Dated: January 22, 2019

Respectfully submitted,

Attorneys for Defendants

JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

By: *s/ Vinita B. Andrapalliyal*
VINITA B. ANDRAPALLIYAL
Trial Attorney
United States Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-0845
Fax: (202) 616-8470
Email: vinita.b.andrapalliyal@usdoj.gov

LISA ZEIDNER MARCUS
Senior Counsel

## CERTIFICATE OF SERVICE

Case No. CV 18-523-JFW-JC

I hereby certify that I am over the age of 18 and not a party to the above-titled action.  I am employed as a Trial Attorney at the United States Department of Justice, Civil Division, Federal Programs Branch.  My business address is 20 Massachusetts Ave., N.W., Washington, DC 20530.

On January 22, 2019, I served this REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT on each person or entity named below by uploading an electronic version of this document to the Court's ECF system:

ALEXA LAWSON-REMER
lawsonr@sullcrom.com
SULLIVAN & CROMWELL
1888 Century Park East, Los Angeles, CA 90067-1725
Telephone: (310) 712-6600 / Facsimile: (310) 712-8800

THEODORE EDELMAN
edelmant@sullcrom.com
JESSICA KLEIN
kleinj@sullcrom.com
SULLIVAN & CROMWELL
125 Broad Street, New York, New York 10004-2498
Telephone (212) 558-4000 / Facsimile: (212) 558-3588

IMMIGRATION EQUALITY
AARON C. MORRIS
amorris@immigrationequality.org
40 Exchange Place, Suite 1300, New York, New York, 10005-2744
Telephone: (212) 714-2904

I declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

Executed on January 22, 2019, at Washington, DC.

By: *s/Vinita B. Andrapalliyal*
VINITA B. ANDRAPALLIYAL
Trial Attorney
United States Department of Justice
Civil Division