UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 18-523-JFW(JCx)**                                    Date:  February 21, 2019

Title:   Andrew Mason Dvash-Banks, et al. -v- Michael R. Pompeo, et al.

---

**PRESENT:**

    **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**         **ATTORNEYS PRESENT FOR DEFENDANTS:**
    None                                                                                            None

**PROCEEDINGS (IN CHAMBERS):**     **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [filed 1/7/19; Docket No. 83]; and**

    **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [filed 1/7/19; Docket No. 89]**

On January 7, 2019, Plaintiffs Andrew Mason Dvash-Banks ("Andrew") and E.J., by and through his guardian *ad litem* Elad Dvash-Banks, ("E.J.") (collectively, "Plaintiffs") filed a Motion for Partial Summary Judgment. On January 14, 2019, Defendants the United States Department of State (the "State Department") and Michael R. Pompeo ("Pompeo") (collectively, "Defendants") filed their Opposition. On January 22, 2019, Plaintiffs filed a Reply. On January 7, 2019, Defendants filed a Motion for Partial Summary Judgment. On January 14, 2019, Plaintiffs filed their Opposition. On January 22, 2019, Defendants filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found these matters appropriate for submission on the papers without oral argument. The matters were, therefore, removed from the Court's February 11, 2019 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**[1]

---

[1]   The facts in this case are largely undisputed.  To the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections.  As to the remaining objections, the Court finds that it is unnecessary to rule on those

### A. Factual Background

Andrew is a citizen of the United States, who was born, raised, and attended college in California.[2] Andrew continuously resided in the United States from his birth in 1981 to October 2005. In 2007, Andrew enrolled in and attended a master's degree program in Israel. In 2008, Andrew met his now-husband, Elad Dvash-Banks ("Elad"), who is an Israeli citizen. In 2010, Andrew and Elad moved to Canada and they were married in Toronto on August 19, 2010.

When Andrew and Elad, who are both men, decided to start a family, they did so using assisted reproductive technology ("ART"). As part of the ART process, Andrew and Elad provided their respective genetic material to create embryos using eggs from an anonymous egg donor (the "Donor"). In December 2015, Andrew and Elad entered into a written contract with a gestational surrogate (the "Gestational Surrogate") to carry a maximum of two embryos to term. Two embryos, one of which was created using genetic material from Elad and the Donor and the other of which was created using genetic material from Andrew and the Donor, were then implanted into the Gestational Surrogate, who became pregnant with twins.

On September 16, 2016, E.J. and his brother, A.J. (collectively, the "Twins"), were born four minutes apart in Ontario, Canada. Andrew, Elad, and the Twins have lived together as a family since the Twins' birth. On September 28, 2016, Andrew and Elad petitioned the Superior Court of Justice in Toronto, Ontario, to declare them to be the legal parents of E.J. and A.J. The court granted the application, and directed the Deputy Registrar General for the Province of Ontario to register the birth of the children and to show Andrew and Elad as the legal parents of the children.

On January 24, 2017, four months after the Twins were born, Andrew, Elad, and the Twins appeared in person at the U.S. Consulate in Toronto (the "Toronto Consulate") in connection with applications for documents evidencing each Twin's U.S. citizenship – specifically, a Consular Report of Birth Abroad ("CRBA") and a U.S. passport.[3] The applications submitted to the Toronto Consulate disclosed that the children had been born using ART. Andrew and Elad provided the required documentation for E.J. and A.J., including their Ontario Statements of Live Birth, which identified Andrew and Elad as A.J.'s and E.J.'s parents; evidence of Andrew's U.S. citizenship and residency history; and Andrew's and Elad's marriage certificate.

Vice Consul Frances Terri Day ("Day") was assigned to adjudicate the applications. Day accepted Andrew's and Elad's Ontario marriage license as proof of their marriage and A.J.'s and E.J.'s Statements of Live Birth as timely filed Canadian birth certificates. Day also accepted the Statements of Live Birth, which identified Andrew and Elad as A.J.'s and E.J.'s parents, as proof of A.J.'s and E.J.'s parentage. During the interview, and after consulting with her colleagues, Day informed Andrew and Elad that, absent evidence of a biological relationship with Andrew, neither Twin would qualify for U.S. citizenship. Day told Andrew and Elad that, if they opted to proceed

---

objections because the disputed evidence was not relied on by the Court.

[2] Andrew holds dual U.S. and Canadian citizenship.

[3] CRBAs and passports prove the citizenship status of their holders. 22 U.S.C. § 2705.

with the Twins' applications, they would have to provide additional evidence demonstrating the existence of a biological relationship required by the State Department.  Day provided the family the option of submitting DNA evidence to prove such relationship, and a letter outlining relevant steps should they choose to pursue that option.  Andrew and Elad arranged to have DNA testing conducted and submitted in support of E.J.'s and A.J.'s applications.

Following the interview, Andrew underwent DNA testing, the results of which established that A.J. was the biological child of Andrew, and E.J. was not.  On March 2, 2017, the Toronto Consulate issued a CRBA for A.J.  By letter to Andrew dated that same day, Day informed the Dvash-Banks family that the State Department had denied E.J.'s applications for a CRBA and a U.S. passport.[4]  The basis for the denial of E.J.'s applications for a CRBA and a U.S. passport was the lack of evidence of a biological connection between Andrew and E.J.  To arrive at this determination, Day applied State Department policies memorialized in the State Department's internal Foreign Affairs Manual ("FAM") for adjudicating U.S. citizenship applications for children born through the use of ART.  Day's letter constituted a final adjudication of E.J.'s applications.

### B. Procedural History

On January 22, 2018, Andrew filed this action on behalf of himself and E.J.[5], challenging Defendants' decisions to deny E.J.'s applications for a CRBA and a U.S. passport.  On January 14, 2019, Plaintiffs filed a First Amended Complaint, alleging three claims: (1) a claim under the Declaratory Judgment Act alleging a violation of Plaintiffs' substantive due process rights; (2) a claim alleging a violation of the Administrative Procedure Act ("APA"); and (3) a claim under 8 U.S.C. § 1503 seeking an order that E.J. is a U.S. citizen.

In their Motion for Partial Summary Judgment, Plaintiffs move for summary judgment on their first claim alleging a violation of their substantive due process rights and their third claim for a declaration pursuant to 8 U.S.C. § 1503 that E.J. is a U.S. citizen.  In their Motion for Partial Summary Judgment, Defendants move for summary judgment on Plaintiffs' first claim alleging a violation of Plaintiffs' substantive due process rights and Plaintiffs' second claim for violation of the APA.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)

---

[4]  In addition to issuing CRBA, the State Department also grants and issues U.S. passports. *See* 22 U.S.C. § 211a.

[5]  On December 4, 2018, Elad was appointed guardian *ad litem* for E.J. in this action.

("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III.     Discussion

### A.     The Immigration and Nationality Act and Its Enforcement by the State Department and the Department of Homeland Security

The Immigration and Nationality Act ("INA") specifies the eligibility requirements for U.S. citizenship at birth. For children born abroad, these requirements differ for children born to married parents, who are subject to 8 U.S.C. § 1401 ("Section 301"), and children "born out of wedlock," who are subject to 8 U.S.C. § 1409 ("Section 309"). Section 301(g) provides, in part, that a person born outside the United States

> of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States . . . not less than five years, at least two of which were after attaining the age of fourteen

shall be a U.S. citizen. 8 U.S.C. § 1401(g); *see also Tuan Anh Nguyen v. INS*, 533 U.S. 53, 59 (2001).

Section 309 of the INA, which is entitled "Children born out of wedlock," provides several additional means by which a child born outside the United States may acquire U.S. citizenship at birth in addition to those described in Section 301. Specifically, Section 309(a) provides that a person born outside the United States and "out of wedlock" shall be a U.S. citizen if

    (1)  a blood relationship between the person and the father is established by clear and convincing evidence,
    (2)  the father had the nationality of the United States at the time of the person's birth,
    (3)  the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and
    (4)  while the person is under the age of 18 years –
        (A)  the person is legitmated under the law of the person's residence or domicile,
        (B)  the father acknowledges paternity of the person in writing under oath, or
        (C)  the paternity of the person is established by adjudication of a competent court.

8 U.S.C. § 1409(a). Although the word "wedlock" does not appear anywhere in Section 301, courts have consistently interpreted that section as applying to children born abroad to married parents, in part, because of the differences between Sections 301 and 309, including the fact that Section 309 is entitled "Children born out of wedlock." *See, e.g., Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 (2017) (referring to Section 301(g) as "[a]pplicable to married couples"). In comparing the two statutes, Section 301(g) does not contain the express language of Section 309(a) requiring a "blood relationship between the person and the father" in order for citizenship to be acquired at birth.

      State Department guidance regarding interpretation and administration of the INA can be found in its FAM.[6] Despite Section 301's silence on the issue, the FAM purports to impose a biological relationship test under Section 301 on applicants for a CRBA. It does so by requiring that, to be considered born "in wedlock" (and, thus, to be covered by Section 301), a child born outside of the United States must have a biological relationship with both of his or her married parents. For example, the FAM states that "[t]o say a child was born 'in wedlock' means that the child's biological parents were married to each other at the time of the birth of the child." 8 FAM § 304.1-2. The basis for the State Department's imposition of a biological requirement is its strained interpretation of the language in Section 301(g) "a person . . . born . . . of parents one of whom is a . . . citizen of the United States."[7]

---

    [6] The State Department is responsible for U.S. citizenship determinations for individuals born abroad. 8 U.S.C. § 1104(a); 22 C.F.R. § 50.7; *see also* 22 U.S.C. § 2705. However, the Department of Homeland Security ("DHS") is responsible for citizenship determinations made in the United States. *See* 8 U.S.C. § 1103(a)(1). Specifically, the U.S. Citizenship and Immigration Services ("USCIS") within DHS adjudicates applications for certificates of citizenship. *See* 8 U.S.C. § 1452.

    [7] The FAM states that "[s]ince 1790, there have been two prerequisites for transmitting U.S. citizenship at birth to children born abroad." 7 FAM 1131.2. First, "at least one biological parent must have been a U.S. citizen when the child was born." *Id.* Second, the "U.S. citizen parent(s) must have resided or been physically present in the [U.S.] for the time required by the law in effect when the child was born." *Id.* Therefore, Defendants interpret the phrase "born … of parents" in Section 301 to include a biological connection between the child and the referenced parents. The

The FAM represents the State Department's unilateral declarations and is not the product of a formal adjudication or notice-and-comment rulemaking or congressional action. *See Scales v. INS*, 232 F.3d 1159, 1166 (9th Cir. 2000); *Jaen v. Sessions*, 899 F.3d 182, 187 n.4 (2d Cir. 2018). For example, in 2014, the State Department decided to change its interpretation of born "in wedlock" to include children born of a gestational mother who is the child's legal parent, even if she did not provide the egg from which the child was conceived. This change was not occasioned by any corresponding amendments to the law or any other congressional action. Similarly, State Department employees began drafting a memorandum exploring possible ways to further modify the State Department's definition of "in wedlock" to cover other children born through the use of ART, but ultimately the State Department did not make that change.

### B. Defendants Are Entitled to Summary Judgment on Plaintiffs' APA Claim.

In their second claim, brought under Section 706(2)(A) of the APA, Plaintiffs allege that Defendants' denial of E.J.'s CRBA application – and more broadly an alleged exclusion of children born abroad in same-sex marriages from the category of children who qualify for citizenship at birth under 8 U.S.C. § 1401(g) – lacks a rational basis, is arbitrary, and is contrary to law. Defendants argue that APA review is not available for Plaintiffs because there is an adequate remedy at law, which precludes Plaintiffs' APA claim. Specifically, Defendants argue that E.J. can, and has, brought a separate claim under 8 U.S.C. § 1503 challenging the State Department's denials of the CRBA and passport applications, which provides a path by which E.J. may assert a claim that he is a U.S. citizen. In addition, Defendants argue that E.J. can also apply for a certificate of citizenship from USCIS, which provides equivalent proof of U.S. citizenship. Plaintiffs argue that asking E.J. to seek relief from a second agency, the USCIS, is not an adequate remedy under the APA. Plaintiffs also argue that the relief provided by Section 1503 is inadequate because it is limited to a declaration of E.J.'s citizenship status and does not provide all the remedies provided for under the APA, such as injunctive relief.

The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1813 (2016). "[T]he Supreme Court interpreted § 704 as precluding APA review where Congress has otherwise provided a special and adequate review procedure." *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (citation and internal quotation marks omitted); *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988); *Coos Cnty. Bd. of County Com'rs v. Kempthorne*, 531 F.3d 792, 810 (9th Cir. 2008).

In this case, Plaintiffs have brought a separate claim under Section 1503(a), which is the statute Congress specifically enacted to provide a remedy for an individual who is denied a "right or privilege as a national of the United States" by the federal government on "the ground that [s]he is not a national of the United States." *See* 8 U.S.C. § 1503(a). Where an applicant challenges the State Department's denial of a right or privilege of U.S. citizenship on the basis that the plaintiff

---

State Department argues that the "born . . . of parents" language in Section 301 has an inherently biological connotation, and can reasonably be read and understood to serve a similar function and purpose to the "blood relationship" language of Section 309(a) of ensuring a biological connection between a child and his or her parents.

is not a U.S. citizen, courts have consistently concluded that Section 1503(a) offers an adequate alternative remedy to APA review.  *See, e.g., Ortega-Morales v. Lynch*, 168 F. Supp. 3d 1228, 1233–34 (D. Ariz. 2016) ("Because 8 U.S.C. § 1503(a) affords Plaintiffs a right of action, the APA does not apply"); *Esparza v. Clinton*, 2012 WL 6738281, at *1 (D. Or. Dec. 21, 2012) (dismissing the plaintiff's APA claim and holding "[t]hat 'right or privilege as a national of the United States,' a passport as sought by plaintiff here, is exactly the relief provided for by 8 U.S.C. § 1503"); *Alsaidi v. U.S. Dep't of State*, 292 F. Supp. 3d 320, 326 (D.D.C. 2018) (dismissing the plaintiff's APA claim and holding that "[t]o renew her passport, plaintiff will require proof of citizenship, and under 8 U.S.C. § 1503(a), she may accomplish this directly through de novo review in the federal district court where she resides (i.e., the Northern District of California).  This constitutes an adequate alternative remedy to achieve plaintiff's desired relief").

In addition, although Plaintiffs argue that Section 1503's remedies are inadequate because Plaintiffs seek injunctive and declaratory relief under the APA and Plaintiffs are limited to declaratory relief and no injunctive relief under section 1503(a), the Court disagrees.  First, the APA does not allow Plaintiffs to seek the type of "wholesale improvement of [a] program by court decree," that they do in asking the Court to declare the State Department's policy of classifying the children of same sex married couples as "children born out of wedlock" unconstitutional and a violation of the INA.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).  Second, Plaintiffs seek to permanently enjoin Defendants from continuing to classify all children of same sex married couples as "children born out of wedlock" and denying those children the right to acquire citizenship at birth pursuant to Section 301(g) on that basis, but injunctions "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."  *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (*quoting Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see also Gill v. Whitford*, 138 S.Ct. 1916, 1933 (2018); *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018); *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018).  The injunction sought by Plaintiffs is well beyond that needed to provide Plaintiffs with complete relief, namely a declaration that E.J. is a U.S. citizen.

Accordingly, Defendants are entitled to summary judgment on Plaintiffs' second claim for violation of the APA.

### C.    Plaintiffs Are Entitled to Summary Judgment on Their Section 1503 Claim.

In their third claim, Plaintiffs seek a declaration pursuant to Section 1503 that E.J. is and was a U.S. citizen at birth.  In their Motion for Partial Summary Judgment, Plaintiffs argue that, pursuant to Section 1503, E.J. is entitled to a declaration that he acquired U.S. citizenship at birth under Section 301(g) of the INA because the State Department's biological relationship requirement is inconsistent with the text and legislative intent of Section 301(g).  Defendants argue that because Plaintiffs now live in the United States, Andrew can apply for a certificate of citizenship on behalf of E.J. from USCIS, and, thus, the Court should deny without prejudice Plaintiffs' Motion for Partial Summary Judgment with respect to the Section 1503 claim until Plaintiffs seek a certificate of citizenship for E.J. from USCIS.

Under Section 1503, any person who is within the United States who "claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency . . . may institute an action . . . for a judgment declaring him to be a national

of the United States." 8 U.S.C. § 1503(a). "A suit under section 1503(a) is not one for judicial review of the agency's action" but for "a de novo judicial determination of the status of the plaintiff as a United States national." *Richards v. Sec'y of State*, 752 F.2d 1413, 1417 (9th Cir. 1985); *Acosta v. United States*, 2014 WL 2216105, at *3 (W.D. Wash. May 29, 2014).

E.J. claims that he acquired U.S. citizenship at birth under Section 301(g) of the INA because he was born to his married parents, Andrew and Elad, on September 16, 2016, and Andrew is a U.S. citizen. Section 301(g) provides that the following individuals are nationals and citizens of the United States at birth:

> a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years . . . .

In this case, the material facts are not in dispute. Specifically, there is no dispute that: (1) Andrew is a U.S. citizen who satisfied Section 301's residency requirements at the time of E.J.'s birth; (2) E.J.'s legal parents, Andrew and Elad, were married at the time of E.J.'s birth; (3) E.J. was born outside of the United States; (4) Andrew and Elad are E.J.'s legal parents and have acted as his only parents since his birth; (5) E.J. now resides in California; and (6) E.J. does not share a biological relationship with Andrew but does with Elad. In addition, it is undisputed that the denial of E.J.'s CRBA and U.S. passport applications constitutes the denial of "a right or privilege as a national of the United States." 8 U.S.C. § 1503. Thus, the only issue is whether Section 301 requires E.J., who was born during the marriage of his parents, to demonstrate a biological relationship with both of his married parents.

The Court concludes that, under controlling Ninth Circuit authority, Section 301 does not require a person born during their parents' marriage to demonstrate a biological relationship with both of their married parents. For example, in *Scales v. INS*, the petitioner was born during the marriage of his Philippine citizen mother and U.S. citizen father, but was not the biological child of his U.S. citizen father. 232 F.3d at 1162. Following a conviction in Washington for possession with intent to deliver cocaine, the INS entered an order that the petitioner be deported as an alien convicted of an aggravated felony because the petitioner was a citizen of the Philippines. *Id.* at 1162. The petitioner appealed the deportation order to the Board of Immigration Appeals ("BIA"), arguing that he was a U.S. citizen because his mother had been married to his U.S. citizen father at the time he was born and, thus, he acquired U.S. citizenship at birth through his father, even though he was not his father's biological son. *Id.* The BIA dismissed the petitioner's appeal, holding that there must be a blood relationship between the child and the parent through whom citizenship is claimed to acquire U.S. citizenship at birth. *Id.* The petitioner then sought review of the BIA's decision in the Ninth Circuit. *Id.* The Ninth Circuit held that "[a] straightforward reading" of the "born of parents" language in Section 301 "indicates . . . that there is no requirement of a blood relationship." *Id.* at 1164. The Ninth Circuit also held that "[i]f Congress had wanted to ensure" that a person born to married parents only one of whom was a U.S. citizen "actually shares a blood relationship with an American citizen," "'it knew how to do so,'" as it had done in Section 309. *Id.* (*quoting Custis v. United States*, 511 U.S. 485, 492 (1994)). The Ninth Circuit expressly refused to defer to the FAM, concluding that it was so divergent from the statutory

language as to not even be appropriately considered "an interpretation of § 1401." *Id.* at 1165-66; *see also Jaen*, 899 F.3d at 187 n.4.

The Ninth Circuit followed *Scales* in *Solis-Espinoza v. Gonzales*, 401 F.3d 1090 (9th Cir. 2005). In *Solis-Espinoza*, the petitioner was born in Mexico and raised in the United States by his biological father, a Mexican citizen, and his father's wife, a U.S. citizen who was not the petitioner's biological mother. *Id.* The petitioner's father and the father's wife were married at the time of the petitioner's birth. *Id.* at 1091-92. The Board of Immigration Appeals held that the petitioner "'was born out of wedlock,' because his biological father was not married to his biological mother at the time of his birth." *Id.* at 1092. On appeal, the Ninth Circuit reversed, holding that the petitioner "was a legitimate child, not born out of wedlock, and . . . thus a United States citizen pursuant to 8 U.S.C. § 1401(g)." *Id.* at 1094. Thus, the Ninth Circuit held once again that Section 301 does not condition U.S. citizenship on the existence of a blood relationship with a U.S. citizen parent. *Id.* at 1093 (*citing Scales*, 232 F.3d at 1164).

Other than the gender of E.J.'s parents, the factual circumstances in *Scales* and *Solis-Espinoza* are indistinguishable from the facts in this case. Both *Scales* and *Solis-Espinoza* make clear that the word "parents" as used in Section 301(g) is not limited to biological parents and that the presumption of legitimacy that applies when a child is born to married parents – as codified in the INA – cannot be rebutted by evidence that the child does not have a biological tie to a U.S. citizen parent. In fact, in *Solis-Espinoza*, it was undisputed that the petitioner did not share a biological relationship with his U.S. citizen parent – his father's wife – but the Ninth Circuit nonetheless rejected the applicability of a biological relationship test. *See Solis-Espinoza*, 401 F.3d at 1091-92; *see also Jaen*, 899 F.3d at 185 (holding that under the INA, "a child born into a lawful marriage is the lawful child of those parents, regardless of . . . any biological link"). Therefore, it is clear under *Scales* and *Solis-Espinoza* that, in the Ninth Circuit, a biological relationship is not required under Section 301(g).

In addition, the dramatic difference in the language of Section 301 and Section 309 makes it clear that a biological relationship is not required between a child and his U.S. citizen parent if that child his born during the marriage of his parents to each other. Nothing in Section 301 references a biological relationship requirement or suggests that in using the words "parent" or "born . . . of parents," Congress intended to refer only to biological or genetic parents. However, by including a "blood relationship" requirement in Section 309, Congress made it clear that it intended children born in and out of wedlock to be treated differently for purposes of acquiring U.S. citizenship. *See Scales*, 232 F.3d at 1165; *Jaen*, 899 F.3d at 189 ("Congress clearly specified enhanced requirements for proof of parentage in the case of children born out of wedlock" and "the 'textual distinction' between the sections regarding children of married parents and children of unmarried parents is strongly suggestive of a clear Congressional intent to treat the two categories differently on this point"); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (internal quotation marks omitted).

Moreover, concluding that Section 301 does not impose a biological relationship requirement is consistent with the legislative history of the INA, which "clearly indicates that the Congress intended to provide for a liberal treatment of children and was concerned with the

problem of keeping families of United States citizens and immigrants united." H.R. Rep. No. 85-1199, at 7 (1957); *see also Nation v. Esperdy*, 239 F. Supp. 531, 538 (S.D.N.Y. 1965) ("'[T]hese provisions are designed to clarify or adjust existing provisions of law in the interest of reuniting broken families . . . .'") (quoting 103 Cong. Rec. 15,498 (1957) (statement of Sen. John F. Kennedy)). As the Ninth Circuit recognized in *Solis-Espinoza*, "[t]he [INA] was intended to keep families together [and] should be construed in favor of family units and the acceptance of responsibility by family members." *Solis-Espinoza*, 401 F.3d at 1094; *Sook Young Hong v. Napolitano*, 772 F. Supp. 2d 1270, 1278-79 (D. Haw. 2011) (collecting cases). In *Scales*, the Ninth Circuit also held that its interpretation of Section 301 was consistent with Congress's purpose in enacting the INA because the concerns necessitating a blood relationship requirement in Section 309 – that "'the unmarried male . . . need not participate in the decision to give birth rather than to choose an abortion; that he need not be present at the birth; and for at least 17 years thereafter he need not provide any parental support . . . in order to preserve his right to confer citizenship on the child pursuant to [Section 309]'" – are "not present if a child is born in wedlock." *Scales*, 232 F.3d at 1164 (*quoting Miller v. Albright*, 523 U.S. 420, 434 (1998)).

Accordingly, Plaintiffs are entitled to summary judgment on their third claim for a declaration pursuant to 8 U.S.C. § 1503 that E.J. acquired U.S. citizenship at birth.

### D.    Plaintiffs' Declaratory Judgment Claim is Moot.

In their first claim, Plaintiffs seek a declaration that the State Department's interpretation of Section 301 violates the due process guarantee of the Fifth Amendment by infringing on the fundamental right of same sex couples to marry. However, the parties agree that if Plaintiffs prevail on their Section 1503 claim that it would be unnecessary for the Court to decide Plaintiffs' declaratory judgment claim. Defendants' Motion for Partial Summary Judgment (Docket No. 92-1), 19:24-26 ("To the extent the court believes that Plaintiffs are entitled to relief on their due process claim, the court should defer ruling on Count I until it resolves Plaintiffs' statutory claim, which may provide sufficient relief without unnecessarily addressing a constitutional question"); Plaintiffs' Motion for Partial Summary Judgment (Docket No. 83-1), 22:4-6 and 26-28 (arguing that "E.J. is entitled to judgment as a matter of law on his claim under Section 1503 and a declaration that he is a U.S. citizen at birth" and noting that "[t]his result is necessary to avoid the serious constitutional questions raised by Plaintiffs under the Fifth Amendment"); and Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment (Docket No. 101), 6:25-28 ("The parties agree that to the extent this Court can resolve Plaintiffs' section 1503 claim, this Court need not reach Plaintiffs' constitutional claim"). Therefore, because the Court has decided Plaintiffs' Section 1503 claim in favor of Plaintiffs, the Court need not and will not reach the constitutional issue raised in Plaintiffs' declaratory judgment claim. *United States v. Kenney*, 789 F.2d 783, n. 2 (9th Cir. 1986) ("Because we decide on statutory grounds, we need not reach the constitutional issue"); *Campos v. Nail*, 43 F.3d 1285, 1288 (9th Cir. 1994) ("There is no reason, however, to explore the boundaries of the constitutional guarantee of procedural due process in the present context, and we do not do so"); *Baires v. I.N.S.*, 856 F.2d 89, 91 (9th Cir. 1988) ("[W]e need not reach the constitutional issue if we find that a statutory right was violated and that the violation caused prejudice to the alien"); *see also Massachusetts v. Westcott*, 431 U.S. 322, 323 (1977) (holding that granting relief on a statutory basis foreclosed the Court from reaching a constitutional issue); *Hagans v. Lavine*, 415 U.S. 528, 547 (1974) ("a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available").

Accordingly, Plaintiffs' first claim for declaratory judgment is **DISMISSED as moot**.

IV.     **Conclusion**

For all the foregoing reasons, Plaintiffs' and Defendants' Motions for Partial Summary Judgment are **GRANTED in part and DENIED in part**.  Defendants are granted summary judgment with respect to Plaintiffs' second claim and Plaintiffs are granted summary judgment with respect to Plaintiffs' third claim.  Plaintiffs' first claim is **DISMISSED as moot**.

The parties are ordered to meet and confer and agree on a joint proposed Judgment which is consistent with this Order.  The parties shall lodge the joint proposed Judgment with the Court on or before **February 28, 2019.**  In the unlikely event that counsel are unable to agree upon a joint proposed Judgment, the parties shall each submit separate versions of a proposed Judgment along with a Joint Statement setting forth their respective positions no later than **February 28, 2019.**

IT IS SO ORDERED.